SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.:    2008-0017/E    Surrogate Nora S. Anderson |

Dalia Genger, Trustee of the Orly Genger 1993 Trust,

    Petitioner,

 -against-

Orly Genger, et al.,

    Respondents.

## AFFIRMATION OF MICHAEL PAUL BOWEN

    MICHAEL PAUL BOWEN, duly admitted to practice law before the courts of the State of New York, affirms the following to be true under penalties of perjury pursuant to CPLR 2106:

    1.     I am counsel of record to respondent Orly Genger ("Orly"). I submit this affirmation in support of Orly's motion to dismiss the petition of petitioner Dalia Genger.

    2.     Attached hereto as Exhibit A is a true and correct copy of Dalia Genger's Petition for Turnover of Trust Property and Other Relief, dated June 13, 2016, which counsel for Dalia Genger has represented was filed in this Court. As of Friday, February 2, 2018, no proof of service had been filed with respect to service on Orly of either this petition or the corresponding Citation that Dalia purportedly obtained from the Court in December 2017.

    3.     Attached hereto as Exhibit B is a true and correct copy of an email from Dalia Genger's counsel, Judith Bachman, dated June 17, 2016. Upon information and belief, no

response to this email was ever sent to Ms. Bachman by me or any other of the recipients of the email.

4.      Attached hereto as <u>Exhibit C</u> is a true and correct copy of an email from Dalia Genger's counsel Judith Bachman, dated January 26, 2018.

5.      Attached hereto as <u>Exhibit D</u> is a demonstrative "redline" comparison between the June 2016 petition in this action and Dalia Genger's counter-petition against Orly from File No. 2008-0017, which Dalia filed in August 2017.  Included in this redline are all the fact allegations in each the 2016 petition and the 2017 cross-petition, as well as the causes of action which appear in both.

6.      Attached hereto as <u>Exhibit E</u> is a true and correct copy of the Stipulation and Proposed Order of Dismissal in the action *Dalia Genger, as Trustee of the Orly Genger 1993 Trust v. TR Investors, LLC, et al.*, Delaware Chancery Court, C.A. No. 6906-CS, ordered by Chancellor Strine on August 30, 2013.

7.      Attached hereto as <u>Exhibit F</u> is a true and correct copy of the First Department appellate Brief for Defendant-Appellant Dalia Genger, dated December 15, 2014, from the action *Arie Genger et al. v. Sagi Genger et al.*, Index No. 651089/10.

8.      Attached hereto as <u>Exhibit G</u> is a true and correct copy of the Settlement Agreement and Release entered into as of June 16, 2013 among Orly Genger and members of the so-called "Trump Group," and others.

Dated:  New York, New York
        February 5, 2018



Michael Paul Bowen

# EXHIBIT A

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------X

In the Matter of

      DALIA GENGER,
      Trustee of the Orly Genger 1993 Trust,

              Petitioner,                     Index No.

                      -against-

      ORLY GENGER, ARIE GENGER, GLENCLOVA       **PETITION FOR**
      INVESTMENT COMPANY, TR INVESTORS, LLC     **TURNOVER OF**
      NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,   **TRUST PROPERTY**
      TRANS-RESOURCES, INC., ARNOLD BROSER,     **AND OTHER RELIEF**
      DAVID BROSER, JOHN DOES. 1-20, and
      JANE DOES 1-20,

              Respondents,
-------------------------------------------------------------------------X

TO THE SURROGATE'S COURT, COUNTY OF NEW YORK:

      It is respectfully alleged:

<div align="center">

**The Parties**

</div>

    1.      Petitioner, Dalia Genger, resides and is domiciled at 200 E. 65th Street, in the City

of New York, County of New York and State of New York.

    2.      Petitioner is the Trustee of the Orly Genger 1993  Trust (the "Orly Trust").

    3.      Respondent Orly Genger ("Orly") is the only non-contingent beneficiary of the

Orly Trust.  The remaining respondents ("Respondents") are interested parties who wrongfully

aided and abetted Orly in the misappropriation of Orly Trust assets.

<div align="center">

**Jurisdiction and Venue**

</div>

    4.      This Court has subject matter jurisdiction pursuant to the Surrogate's Court

Procedure Act, inter alia, SCPA 103(50), SCPA 207(1), and SCPA 209(6).

<div align="center">

-1-

</div>

5.     Venue in this County is proper pursuant to, inter alia, SCPA 207(1).

### The Orly Trust

6.     On or around December 13, 1993, Arie Genger ("Arie") settled the Orly Trust pursuant to a written Trust Agreement executed by Arie, as Grantor, the two prior Trustees, Lawrence M. Small and Sash A. Spencer (the "Trust Agreement").  (Ex. 1.)

7.     Pursuant to Article ELEVENTH, Section C of the Trust Agreement, all trust funds are to be held in the name of the Orly Trust, and no Orly Trust assets are to be used for the benefit of Orly's creditors (the "Trust Agreement Obligations").

8.     The Respondents were aware of the Trust Agreement Obligations.

### Orly Trust Derivative Litigation

9.     In July 2010, Orly instituted a derivative action the Supreme Court, New York County entitled Arie Genger, et al. v. Sagi Genger, et al., Index No. 651089/2010, by which she brought claims "on behalf of the Orly Trust as the beneficiary of the Orly Trust" (the "Orly Trust Derivative Litigation").  The Complaint sought to assert claims for the Orly Trust's ownership in shares of stock in a company called Trans-Resources, Inc. ("TRI").  Orly later amended her pleading to assert claims against, inter alia, the purchasers of those TRI shares, Respondents Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, and New TR Equity II, and TRI (collectively, the "Trump Group Entities").  (Ex. 2.)

10.    On January 2, 2013, in the Orly Trust Derivative Litigation, Justice Jaffe of the Supreme Court, New York County adopted Orly's position that she "has legal standing to represent the Orly Trust" and "may act on behalf of the Orly Trust unless and until the Surrogate's Court rules otherwise in an appropriate action there." (Ex. 3.)

11.    Earlier on in the same Orly Trust Derivative Litigation, Orly moved to restrain

Petitioner from pursuing what Orly characterized as a "duplicative" action as Trustee of the Orly Trust before the Delaware Chancery Court, by which Petitioner was seeking a declaration of obtain ownership of the same TRI shares. According to Orly: "In the instant action …, I seek, among other things, the return of those [same] TRI Shares to the Orly Trust." Also according to Orly, Petitioner's "contention that the Orly Trust is not a party to this action … is meritless. Orly is prosecuting this action on behalf of the Orly Trust." The Supreme Court, New York County, agreed, restraining Petitioner from pursuing the action in the Delaware Chancery Court by which the Orly Trust had sought the TRI shares. (Ex. 4.)

12.    As a derivative plaintiff for the Orly Trust, having prevented the 'duplicative litigation' brought by Petitioner herself on behalf of the Orly Trust, Orly became the de facto trustee of the Orly Trust and owed fiduciary duties to the Orly Trust.

13.    Respondents knew that Orly owed fiduciary duties to the Orly Trust.

### Discontinuance With Prejudice of The Orly Trust Claims

14.    In June 2013, Orly disclosed that she had "entered into a confidential settlement agreement to resolve all issues among the stipulating parties," which included the Trump Group Entities. However, the settlement terms were left undisclosed. Petitioner sought production of the settlement agreement, but Orly refused to produce it, claiming the document was too "confidential." When it was proposed that the document be produced under "Attorney's Eye's Only" limitation, Orly refused that proposal as well. Instead, Orly submitted the Settlement Agreement to Justice Jaffe, unsolicited, for in camera inspection.

15.    By letter dated June 28, 2013, counsel to the Trump Group Entities wrote to the Court on behalf of all settling parties "including … Orly Genger" confirming that: "A material term of the agreement among the settling parties was the dismissal of *all* claims presently

pending against one another, in whatever capacity they were brought. [If the settlement stipulation was drafted so as to] have the effect of *not* dismissing Orly Genger's derivative claims against the Trump Group [Entities], contrary to the agreement of the settling parties. Excluding such claims from the claims that are to be dismissed is not what the Trump Group [Entities] bargained and paid for in the settlement . . ." (Ex. 5, emphases in original.)

16.    Neither Orly nor any of the other settling parties disagreed with counsel's statements regarding the scope of the settlement.  Accordingly, on July 1, 2013, Justice Jaffe signed the requested Stipulation and Order of Discontinuance with Prejudice. (Ex. 6.)

## The Trump Group Entities Settlement Agreement

17.    Months later, as part of a parallel proceeding, the United States District Court directed Orly to produce her settlement agreement with the Trump Group Entities (the "Trump Group Entities Settlement Agreement"). (Ex. 7.) The document revealed that Orly had settled her claims against the Trump Group Entities both "in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust" – the latter being the very capacity by which this Court permitted Orly to assert derivative claims.  According to its signatories, the purpose of the agreement was "to resolve all issues, disputes and disagreements between [Orly and the other Settling Parties], including but not limited to the issue of ownership of all [TRI] shares," most significantly those TRI shares claimed by the Orly Trust.

18.    In exchange, the Trump Group Entities agreed to pay $32.3 million to the so-called "AG Group," consisting of Orly, her father Arie, and Respondents Arnold and David Broser (collectively, "the Brosers"). Upon information and belief, the Brosers are creditors of Orly personally, to whom Orly owes many millions of dollars. The payments were broken up into: (a) an immediate payment of $17.3 million and (b) two follow-up payments of $7.5 million.

-4-

According to the federal court, which reviewed the document, "Orly monetized her beneficial interest in the Orly Trust['s] [TRI] shares for $32.3 million ...." (Ex. 8.)

19.     The Trump Group Entities have since reaffirmed that the federal court construed the Trump Group Entities Settlement Agreement correctly:

> "[Any suggestion] that the confidential settlement agreement *might* only dis-miss Orly's individual claims against the Trump Group [Entities], but not resolve the Orly Trust's claims against the Trump Group [Entities] and the TPR Group . . . is counterfactual. This Court has already held that certain of Orly's claims in this action, including the remaining claims, are derivative in nature, and may be maintained by Orly on behalf of the Orly Genger 1993 Trust. ... In settling the claims among them, the Trump Group [Entities], Trans-Resources, Orly and Arie agreed to the dismissal of all claims presently pending against one another. This agreement is memorialized in the Second Amended Stipulation of Discontinuance.

20.     Evidencing this intent, in Section 6(a) of the Trump Group Entities Settlement Agreement, Orly settled  and released all of her claims in the Trump Group Entities Settlement in both her derivative and individual capacities. (Ex. 7, p. 10: Orly releasing the Trumps "in all capacities.")  In Section 8(a) thereof, Orly further agreed to "cause" the Orly Trust to do the same, which she later did, advising the Delaware Chancery Court that she favored dismissal of Petitioner's action on behalf of the Orly Trust.  The case was dismissed.

### The Settlement Proceeds

21.     Under applicable law, the proceeds of a settlement obtained in a derivative lawsuit belong to the direct plaintiff (in this case, the Orly Trust), not the derivative plaintiff (in this case, Orly personally).  Nonetheless, to date, none of the aforementioned $32.3 million (the "Settlement Proceeds") has been remitted to the Orly Trust, nor have any of the settling parties indicated an intention to do so in the future.

22.     At a hearing before Justice Jaffe on March 25, 2015, counsel to the Trump Group Entities confirmed that $17.3 million of the Settlement Proceeds has already been paid, but that

-5-

$15 million remains to be paid, less possible "set-offs" and subject to possible acceleration or extension of those payment dates. (Ex. 9, pp. 10-11.)

23.     In a recent brief, Orly has alleged that, to date, she has not personally received any of the Settlement Proceeds. If true, this means $17.3 million of the Settlement Proceeds has been paid to other members of the "AG Group," i.e., the Brosers and Arie (the "Initial Payment"). Orly has not disclosed the intended recipients of the remaining $15 million.

24.     Consistent with her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations, Orly was required to ensure that the Trump Group Entities Settlement proceeds were paid to the Orly Trust. Orly failed to comply with these duties and obligations. Respondents were aware of, and aided and abetted, Orly's breaches of her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations.

25.     In addition to the named Respondents, Orly was further aided and abetted in her breaches of her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations was aided and abetted by other attorneys, advisors and other professionals who were aware of her duties and obligations and profited from the breach thereof. Petitioner reserves her right to amend her Petition to add these John Does and Jane Does as additional Respondents, as further facts become available through discovery and otherwise.

### Petitioner's Substitution Motion

26.     In order to protect the rights of the Orly Trust, Petitioner moved in the Supreme Court, New York County, for an order permitting it to substitute for Orly as plaintiff in the Orly Trust Derivative Litigation and compelling the settling parties to deposit the Settlement Proceeds into Court. Orly vigorously opposed the Petitioner's motion, on the ground, inter alia, that she is seeking to remove the Petitioner as Trustee of the Orly Trust. By Interim Order dated May 7,

2015, Justice Jaffe neither granted nor denied the motion, but rather held it in abeyance pending this Court's determination of Orly's removal petition. (Ex. 10.)

27.    At the March 25, 2015 hearing on Petitioner's motion, Justice Jaffe suggested it might already be too late to deposit the Initial Payment into Court, as the $17.3 million apparently has already been paid out to non-parties. (Ex. 9, p. 28: "it sounds like that ship has sailed").    Accordingly, Petitioner brings this Petition seeking, inter alia, monetary damages for misappropriation of Orly Trust assets.  To the extent such Settlement Proceeds are recoverable, Petitioner seeks turnover of those funds for the Orly Trust.

### Count I: Aiding and Abetting Breach of Fiduciary Duty
### Against All Respondents

28.    The allegations contained in paragraphs 1 through 27 hereinbefore are realleged as if fully set forth herein.

29.    Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

30.    Orly owed a fiduciary duty to the Orly Trust.

31.    Consistent with her fiduciary duty to the Orly Trust, Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

32.    Orly did not so do.  Instead, she entered into the Trump Group Entities Settlement Agreement, which provided for the Settlement Proceeds to be paid to parties other than the Orly Trust, and she authorized payment of the Settlement Proceeds to such other parties.

33.    Orly's actions constitute a breach of fiduciary duty.

34.    Respondents were aware of Orly's fiduciary duty to the Orly Trust.

35.    Respondents knowingly induced and/or participated in Orly's breach of her fiduciary duty to the Orly Trust by, inter alia, taking the Settlement Proceeds which belong to the

Orly Trust, by drafting and entering into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, by advising and inducing Orly to enter into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, and/or by directing and authorizing payment of the Settlement Proceeds to parties other than the Orly Trust.

36.     In doing so, Respondents aided and abetted Orly's breach of fiduciary duty.

37.     The Orly Trust has been injured by Respondents' aiding and abetting of Orly's breach of her fiduciary duty to the Orly Trust in the amount of $32.3 million, plus statutory interest.

## Count II: Tortious Interference with Contract
## Against All Respondents

38.     The allegations contained in paragraphs 1 through 37 hereinbefore are realleged as if fully set forth herein.

39.     The Trust Agreement is a valid contractual agreement by the Orly Trust.

40.     Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

41.     Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

42.     Respondents were aware of the Trust Agreement Obligations.

43.     The Orly Trust, acting through its de facto trustee Orly in the Orly Trust Derivative Litigation, breached the Trust Agreement Obligations by causing the Settlement Trustees to not be held in the name of the Orly Trust, and to instead use the Settlement Proceeds for the benefit of Orly's creditors, including the Brosers.

-8-

44.     Respondents caused the Orly Trust's breach of the Trust Agreement Obligations by, inter alia, taking the Settlement Proceeds which belong to the Orly Trust, by drafting and entering into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, by advising and inducing Orly to enter into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, and/or by directing and authorizing payment of the Settlement Proceeds to parties other than the Orly Trust.

45.     In doing so, Respondents tortiously interfered with the Trust Agreement Obligations.

46.     Respondents' interference with the Trust Agreement Obligations was both intentional and improper.

47.     The Orly Trust has been injured by Respondents' tortious interference with contract in the amount of $32.3 million, plus statutory interest.

## Count III: Money Had and Received
## Against All Respondents

48.     The allegations contained in paragraphs 1 through 47 hereinbefore are realleged as if fully set forth herein.

49.     Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

50.     Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

51.     Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

-9-

52.     Respondents knew that Orly was required to ensure that the Trump Group Entities Settlement proceeds were paid to the Orly Trust.

53.     However, pursuant to the terms of the Trump Group Entities Settlement Agreement, the Settlement Proceeds were and are to be paid by the Trump Group Entities to parties other than the Orly Trust.

54.     None of the Settlement Proceeds have been paid to the Orly Trust.

55.     Respondents received and/or are currently holding the Settlement Proceeds instead of the Orly Trust.

56.     Respondents received a benefit from the Settlement Proceeds which belongs to the Orly Trust.

57.     Under principles of good conscience, Respondents should not be allowed to retain the Settlement Proceeds which belong to the Orly Trust, but rather should be compelled to return all $32.3 million to the Orly Trust, plus statutory interest.

## Count IV: Unjust Enrichment
### Against All Respondents Except Trump Group Entities

58.     The allegations contained in paragraphs 1 through 57 hereinbefore are realleged as if fully set forth herein.

59.     Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

60.     Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

61.     Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

-10-

62.     Respondents knew that Orly was required to ensure that the Settlement Proceeds were required to be paid to the Orly Trust.

63.     Respondents (except the Trump Group Entities) received the Settlement Proceeds instead of the Orly Trust.

64.     Respondents (except the Trump Group Entities) received a benefit from receiving the Settlement Proceeds which belong to the Orly Trust.

65.     The benefit Respondents (except the Trump Group Entities) received from payment of the Settlement Proceeds was at the expense of the Orly Trust.

66.     Under principles of equity and good conscience, Respondents (except the Trump Group Entities) must make restitution to the Orly Trust in the amount of $32.3 million, plus statutory interest.

### Count V: Turnover
### Against All Respondents

67.     The allegations contained in paragraphs 1 through 66 hereinbefore are realleged as if fully set forth herein.

68.     Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

69.     Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

70.     Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

71.     Respondents knew that Orly was required to ensure that the Settlement Proceeds were required to be paid to the Orly Trust.

-11-

72.     Respondents (except the Trump Group Entities) received the Settlement Proceeds instead of the Orly Trust.

73.     Respondents (except the Trump Group Entities) have in their possession the Settlement Proceeds which should be delivered to the Orly Trust.

74.     Respondents have refused to turn over the Settlement Proceeds to the Orly Trust or pay it into Court.

75.     Respondents should be compelled to turn over to the Orly Trust all Settlement Proceeds in their possession, custody or control.

**Count VI: Accounting**
**Against Respondent Orly**

76.     The allegations contained in paragraphs 1 through 75 hereinbefore are realleged as if fully set forth herein.

77.     Orly has never provided an accounting of the Settlement Proceeds, which are an asset of the Orly Trust.

78.     As a matter of law and equity, Orly should provide an accounting of the Settlement Proceeds.

**Interested Parties**

79.     The names and addresses of all persons, other than the Petitioner, interested in the obtaining a determination of the issues presented in this Petition, and all other persons interested in this proceeding who are required to be cited upon this application or concerning whom this Court is required to have information, are:

(a)     The following who are of full age and sound mind or are corporations or associations:

ORLY GENGER
780 Greenwich Street, Apt. 4P

-12-

New York, New York

Interest: Beneficiary and Respondent

ARIE GENGER
17001 Collins Avenue,
Sunny Isles Beach, Florida

Interest: Respondent

GLENCLOVA INVESTMENT COMPANY
41 Madison Ave,
New York, New York

Interest: Respondent

TR INVESTORS, LLC
41 Madison Ave,
New York, New York

Interest: Respondent

NEW TR EQUITY I, LLC
41 Madison Ave,
New York, New York

Interest: Respondent

NEW TR EQUITY II, LLC,
41 Madison Ave,
New York, New York

Interest: Respondent

TRANS-RESOURCES, INC.
41 Madison Ave,
New York, New York

Interest: Respondent

ARNOLD BROSER
5371 Fisher Island Drive,
Miami Beach, Florida

Interest: Respondent

DAVID BROSER
104 West 40th Street, 19th Floor
New York, New York

Interest: Respondent

SAGI GENGER 1993 TRUST
C/O John Dellaportas
Morgan, Lewis
101 Park Avenue,
New York, New York

Interest: Contingent Remainderman

(b) The following who are persons under disability:
    Infants: None
    Others under a disability: None

(c) The following persons who are confined in prison: None
(d) The following persons whose names or whereabouts are unknown: None

80.    There are no persons, corporations or associations other than those mentioned who are interested in this proceeding.

81.    No previous application for this or similar relief has been made to this or any other court except Motion Seq. 42 (for payment into Court) in the Orly Trust Derivative Litigation, entitled Arie Genger, et al. v. Sagi Genger, et al., Index No. 651089/2010 in New York Supreme Court, New York County. Motion Seq. 42 was held in abeyance by the Supreme Court pending a determination by this Court.

-14-

WHEREFORE, Petitioner requests the following relief against all Respondents:

a.    damages in in the amount of $32.3 million, plus statutory interest;

b.    imposition of a constructive trust on the Settlement Proceeds;

c.    an order directing the delivery of the Settlement Proceeds to her as Trustee;

d.    an accounting of the Settlement Proceeds; and

e.    such other relief as to the Court seems just and necessary.

Dated: June 13, 2016

_(Signature of Petitioner)_

(Signature of Petitioner)

Dalia Genger

(Print Name)

STATE OF NEW YORK           )

                            )    ss:

COUNTY OF NEW YORK  )

## VERIFICATION

I, the undersigned the petitioner named in the foregoing petition, being duly sworn, say:

VERIFICATION: I have read the foregoing petition subscribed by me and know the contents thereof, and the same is true of my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true.

_____
(Signature of Petitioner)

Dalia Genger

(Print Name)

On the _____ 13th _____ day of ____ Jan ____, 20 16, before me personally came Dalia Genger to me known to be the person described in and who executed the foregoing instrument. Such person duly swore to such instrument before me and duly acknowledged that he/she executed the same.

_____
Notary Public

Judith Bachman
Notary Public, State of New York
No. 02-BA6048319
Qualified in Rockland County
Commission Expires Sept. 25, 2018

_____
JUDITH BACHMAN
LAW OFFICES OF JUDITH BACHMAN
254 S. Main Street, Suite 306
New City, New York 10956
(845) 639-3210
jlbesq_99@yahoo.com
*Attorneys for Petitioner Dalia Genger*

# EXHIBIT B

| | |
|---|---|
| **From:** | Judy Bachman <jlbesq_99@yahoo.com> |
| **Sent:** | Friday, June 17, 2016 4:40 PM |
| **To:** | John Dellaportas; John Dellaportas; ygriver@zeklaw.com; john.boyle@skadden.com; pjanovsky@zeklaw.com; ljw@msk.com; pdm@msk.com; william.frank@skadden.com; bleinbach@zeklaw.com; Eric D. Herschmann; Herrmann Douglas D (WIL); Herrmann Douglas D (WIL); mitchell@oglaw.net; Michael P. Bowen; Andrew R. Kurland |
| **Subject:** | Petition for Turnover of Trust Property in the Orly Genger 1993 Trust |
| **Attachments:** | Ex 10(abayance order).pdf; Ex 7 (Orly Settlement Agreement) .pdf; Ex 6 (So-Ordered Stipulation).pdf; Ex 8 (1-5-15 Forrest opinion).pdf; Ex 3 (1.2.13 Amended Decision).pdf; Ex 4 (4.9.12 Order).pdf; Ex 1 (Trust Agreement).pdf; Ex 5 (Allingham Ltr).pdf; Ex 9(transcript).pdf; Ex 2 (Orly's revised complaint).pdf; Petitionforturnover.pdf; petitioncitation.pdf; petitionfilingreceipt.pdf |

Dear Gentlemen:

The attached Petition for Turnover of Trust Property in the Orly Genger 1993 Trust was filed on June 14, 2016.

Please advise if you will either accept service of the citation (once it is completed by the Court) or waiver such service.

Judith Bachman, Esq.
254 S. Main Street, Suite 306
New City, New York 10956
845-639-3210 Office
845-300-1595 Cell
jlbesq_99@yahoo.com
http://www.yourlegaldepartment.net/

1

# EXHIBIT C

| | |
|---|---|
| **From:** | Judith Bachman <judith@thebachmanlawfirm.com> |
| **Sent:** | Friday, January 26, 2018 4:02 PM |
| **To:** | Michael P. Bowen |
| **Cc:** | jlbesq_99@yahoo.com; Eric D. Herschmann; Andrew R. Kurland |
| **Subject:** | Re: Genger - Surrogate's Citation |

**External Email**

Dear Mr. Bowen:

We expect to appear and proceed on February 6, 2018.

Although I do not believe any substantive responsive is necessary to your comments, you are advised as below.

As for service of process, your client is a party to this action and in fact has filed a petition with the Court seeking affirmative relief. You and your firm have appeared in the action.

While I do not believe it is necessary, in an abundance of caution, I have directed service to be made on your client's address in Texas. I understand that she has a Texas driver's license, Texas bank account, owns a home there and is registered to vote there.

With regard to the timing of the service of the citation, the citation was not issued by the Court until December 21, 2017. The delay in the issuance of the citation, and subsequent service, was due to the Court's own internal processing.

Moreover, all of the parties in this matter were on notice of this petition via courtesy copy at the time of the filing and by reference to it in the cross-petition in your application to remove Dalia Genger.

Finally, as directed by the Court clerk, it was not necessary to serve a copy of the petition with the citation.

Very truly yours,

1

**THE BACHMAN**
**LAW FIRM**

**Judith Bachman, Esq.**
*Trusted Legal Counsel for You and Your Business*

**P:** 845.639.3210   **C:** 845.300.1595
Judith@thebachmanlawfirm.com
thebachmanlawfirm.com

254 S. Main Street  |  Suite 306  |  New City, NY 10956

On Fri, Jan 26, 2018 at 12:13 PM, Michael P. Bowen <MBowen@kasowitz.com> wrote:

We received no response to our email below.  Please advise today whether you are withdrawing the defective citation.  We reserve all rights.  If you continue to just ignore our demand, you leave us no choice but to seek sanctions.

Michael P. Bowen
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-1903
Fax. (212) 500-3403
MBowen@kasowitz.com

**From:** Michael P. Bowen
**Sent:** Wednesday, January 24, 2018 1:16 PM
**To:** 'judith@thebachmanlawfirm.com' <judith@thebachmanlawfirm.com>; 'jlbesq_99@yahoo.com'
<jlbesq_99@yahoo.com>
**Cc:** Eric D. Herschmann <EHerschmann@kasowitz.com>; Andrew R. Kurland <AKurland@kasowitz.com>
**Subject:** Genger - Surrogate's Citation

Ms. Bachman -- We recently learned that, acting as counsel to Dalia Genger, your office has been trying to serve on various parties a two-page citation that Dalia obtained from the Surrogate's Court on December 21, 2017 in File No. 2008-0017/E, pertaining to Dalia's purported Petition filed on or about June 14, 2016 – over a year and a half ago.  As you no doubt are aware, the 120-day time limitation to serve that pleading expired in the fourth quarter of 2016 – over a year ago.  *See* SCPA § 301; CPLR § 306-b.  That renders that so-called

2

petition and the related citation a nullity. What authority do you have to try to effect service now, so long after the relevant time period expired? We further understand that the service attempts are defective in that no copy of the petition was served with the citation, and in any event not all parties have been served (e.g. Orly Genger has not been served, nor, as far as we are aware, has any attempt been made). Despite these fatal defects, the citation purports to demand certain parties to appear in Court on February 6, 2018. If you have any authority for what you are doing, please provide that to us immediately. If you do not (as we believe), we demand that you formally withdraw the citation and cancel the February 6 hearing date immediately. Given that your attempted service is a clear-cut violation of the rules of court and that the citation was obtained in bad faith, we intend to seek sanctions, pursuant to 22 NYCRR § 130-1.1, against you and your client, including an award of attorney's fees associated with this bogus citation and frivolous and improper court date.

# EXHIBIT D

It is respectfully alleged:

## The Parties

1. Respondent/Cross-Petitioner, Dalia Genger, ("Dalia"), resides and is domiciled at 200 E. 65th Street, in the City of New York, County of New York and State of New York.

2. ~~Petitioner is~~Dalia the Trustee of the Orly Genger 1993 Trust (the "Orly Trust").

3. Petitioner/Cross-Respondent Orly Genger ("Orly") is the only non-contingent beneficiary of the Orly Trust. ~~The remaining respondents ("Respondents") are interested parties who wrongfully aided and abetted Orly in the misappropriation of Orly Trust assets.~~

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction pursuant to the Surrogate's Court Procedure Act, inter alia, SCPA 103(50), SCPA 207(1), and SCPA 209(6).

5. Venue in this County is proper pursuant to, inter alia, SCPA 207(1). The

## Orly Trust

6. On or around December 13, 1993, Arie Genger ("Arie") settled the Orly Trust pursuant to a written Trust Agreement executed by Arie, as Grantor, and the two prior Trustees, Lawrence M. Small and Sash A. Spencer (the "Trust Agreement") ~~(Ex. 1.)~~.

7. Pursuant to Article ELEVENTH, Section C of the Trust Agreement, all trust funds are to be held in the name of the Orly Trust, and no Orly Trust assets are to be used for the benefit of

Orly's creditors (the "Trust Agreement Obligations").

~~The Respondents were aware of the Trust Agreement Obligations.~~

### Orly Trust Derivative Litigation

8.  In July 2010, Orly instituted a derivative action in the Supreme Court, New York County entitled <u>Arie Genger, et al. v. Sagi Genger, et al.,</u> Index No. 651089/2010, by which she brought claims "on behalf of the Orly Trust as the beneficiary of the Orly Trust" (the "Orly Trust Derivative Litigation"). The Complaint sought to assert claims for the Orly Trust's ownership in shares of stock in a company called Trans-Resources, Inc. ("TRI"). Orly later amended her pleading to assert claims against, <u>inter alia,</u> the purchasers of those **TRI** shares, ~~Respondents~~ Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, and New TR Equity II, and TRI (collectively, the "Trump Group Entities") ~~(Ex. 2.)~~.

9.  On January 2, 2013, in the Orly Trust Derivative Litigation, Justice Jaffe of the Supreme Court, New York County adopted Orly's position that she "has legal standing to represent the Orly Trust" and "may act on behalf of the Orly Trust unless and until the Surrogate's Court rules otherwise in an appropriate action there." ~~(Ex. 3.)~~

    Earlier on in the same Orly Trust Derivative Litigation, Orly moved to restrain

10. ~~Petitioner~~ Dalia from pursuing what Orly characterized as a "duplicative" action as

Trustee of the Orly Trust before the Delaware Chancery Court, by which ~~Petitioner~~Dalia was seeking a declaration of obtain ownership of the same TRI shares. According to Orly: "In the instant action ..., I seek, among other things, the return of those [same] TRI Shares to the Orly Trust." Also according to Orly, ~~Petitioner's "~~Dalia's "contention that the Orly Trust is not a party to this action ...

is meritless. Orly is prosecuting this action on behalf of the Orly Trust." The Supreme Court, New York County, agreed, restraining ~~Petitioner~~Dalia from pursuing the action in the Delaware Chancery Court by which the Orly Trust had sought the TRI shares.~~(Ex. 4.)~~

11. As a derivative plaintiff for the Orly Trust, having prevented the 'duplicative litigation' brought by ~~Petitioner herself~~Dalia on behalf of the Orly Trust, Orly became the de facto trustee of the Orly Trust and owed fiduciary duties to the Orly Trust.

~~12.    Respondents knew that Orly owed fiduciary duties to the Orly Trust.~~

**Discontinuance With Prejudice of**
**The Orly Trust Claims**

12. In June 2013, Orly disclosed that she had "entered into a confidential settlement agreement to resolve all issues among the stipulating parties," which included the Trump Group Entities. However, the settlement terms were left undisclosed. ~~Petitioner~~Dalia sought production of the settlement agreement, but Orly refused to produce it, claiming the document was too "confidential." When it was proposed that the document be

produced under "Attorney's Eye's Only" limitation, Orly refused that proposal as well. Instead, Orly submitted the Settlement Agreement to Justice Jaffe, unsolicited, for <u>in camera</u> inspection.

13.  By letter dated June 28, 2013, counsel to the Trump Group Entities wrote to the Court on behalf of all settling parties "including ... Orly Genger" confirming that: "A material term of the agreement among the settling parties was the dismissal of *all* claims presently pending against one another, in whatever capacity they were brought. [If the settlement stipulation was drafted so as to] have the effect of *not* dismissing Orly Genger's derivative claims against the Trump Group [Entities], contrary to the agreement of the settling parties. Excluding such claims from the claims that are to be dismissed is not what the Trump Group [Entities] bargained and paid for in the settlement . . ." ~~(Ex. 5, emphases in original.)~~

14. Neither Orly nor any of the other settling parties disagreed with counsel's statements regarding the scope of the settlement. Accordingly, on July 1, 2013, Justice Jaffe signed the requested Stipulation and Order of Discontinuance with Prejudice. ~~(Ex. 6.)~~

## The Trump Group Entities Settlement Agreement

15. Months later, as part of a parallel proceeding, the United States District Court directed Orly to produce her settlement agreement with the Trump Group Entities (the "Trump Group Entities Settlement Agreement"). ~~(Ex. 7.)~~ The document revealed that Orly had settled her

claims against the Trump Group Entities both "in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust" – the latter being the very capacity by which ~~this~~the Supreme Court permitted Orly to assert derivative claims. According to its signatories, the purpose of the agreement was "to resolve all issues, disputes and disagreements between [Orly and the other Settling Parties], including but not limited to the issue of ownership of all [TRI] shares," most significantly those TRI shares claimed by the Orly Trust.

16. In exchange, the Trump Group Entities agreed to pay $32.3 million to the so-called "AG Group," consisting of Orly, her father Arie, and ~~Respondents~~ Arnold and David Broser (collectively, "the Brosers"). Upon information and belief, the Brosers are creditors of Orly personally, to whom Orly owes many millions of dollars. The payments were broken up into: (a) an immediate payment of $17.3 million and (b) two follow-up payments of $7.5 million. According to the federal court, which reviewed the document, "Orly monetized her beneficial interest in the Orly Trust['s] [TRI] shares for $32.3 million ...."
~~(Ex. 8.)~~

17. The Trump Group Entities have since reaffirmed that the federal court construed the Trump Group Entities Settlement Agreement correctly:

"[Any suggestion] that the confidential settlement agreement *might* only dismiss Orly's individual claims against the Trump Group [Entities], but not resolve the Orly Trust's claims against the Trump Group [Entities] and the TPR Group . . . is

counterfactual. This Court has already held that certain of Orly's claims in this action, including the remaining claims, are derivative in nature, and may be maintained by Orly on behalf of the Orly Genger 1993 Trust. ... In settling the claims among them, the Trump Group [Entities], Trans-Resources, Orly and Arie agreed to the dismissal of all claims presently pending against one another. This agreement is memorialized in the Second Amended Stipulation of Discontinuance.

18. Evidencing this intent, in Section 6(a) of the Trump Group Entities Settlement Agreement, Orly settled and released all of her claims in the Trump Group Entities Settlement in both her derivative and individual capacities. (Ex. 7, p. 10: Orly releasing the Trumps "in all capacities.") In Section 8(a) thereof, Orly further agreed to "cause" the Orly Trust to do the same, which she later did, advising the Delaware Chancery Court that she favored dismissal of Petitioner's action on behalf of the Orly Trust. The case was dismissed.

## The Settlement Proceeds

19. Under applicable law, the proceeds of a settlement obtained in a derivative lawsuit belong to the direct plaintiff (in this case, the Orly Trust), not the derivative plaintiff (in this case, Orly personally). Nonetheless, to date, none of the aforementioned $32.3 million (the "Settlement Proceeds") has been remitted to the Orly Trust, nor have any of the settling parties indicated an intention to do so in the future.

20. At a hearing before Justice Jaffe on March 25, 2015, counsel to the Trump Group Entities confirmed that $17.3 million of the Settlement Proceeds has already been paid,

but that $15 million remains to be paid, less possible "set-offs" and subject to possible acceleration or extension of those payment dates. ~~(Ex. 9, pp. 10-11.)~~

21. In a recent brief, Orly has alleged that, to date, she has not personally received any of the Settlement Proceeds. If true, this means $17.3 million of the Settlement Proceeds has been paid to other members of the "AG Group," i.e., the Brosers and Arie (the "Initial Payment"). Orly has not disclosed the intended recipients of the remaining $15 million.

22. Consistent with her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations, Orly was required to ensure that the Trump Group Entities Settlement proceeds were paid to the Orly Trust. However, Orly failed to comply with these duties and obligations. ~~Respondents were aware of, and aided and abetted, Orly's breaches of~~ Orly breached her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations.

~~23. In addition to the named Respondents, Orly was further aided and abetted in her breaches of her fiduciary duty to the Orly Trust and the express terms of the Trust Agreement Obligations was aided and abetted by other attorneys, advisors and other professionals who were aware of her duties and obligations and profited from the breach thereof. Petitioner reserves her right to amend her Petition to add these John Does and Jane Does as additional Respondents, as further facts become available through discovery and otherwise.~~

**Petitioner's~~Cross-Petitioner's Substitution Motion~~**

23. In order to protect the rights of the Orly Trust, ~~Petitioner~~Dalia moved in the Supreme Court, New York County, for an order permitting ~~it~~ her to substitute for Orly as plaintiff in the Orly Trust Derivative Litigation and compelling the settling parties to deposit the Settlement Proceeds into Court. Orly vigorously opposed ~~the Petitioner's~~Dalia's motion, on the ground, inter alia, that she is seeking to remove ~~the Petitioner~~Dalia as Trustee of the Orly Trust. By Interim Order dated May 7, 2015, Justice Jaffe neither granted nor denied the motion, but rather held it in abeyance pending this Court's determination of ~~Orly's removal petition. (Ex. 10.)~~Orly's Petition.

24. At the March 25, 2015 hearing on ~~Petitioner's~~Dalia's motion, Justice Jaffe suggested it might already be too late to deposit the Initial Payment into Court, as the $17.3 million apparently has already been paid out to non-parties. ~~(Ex. 9, p. 28: "it sounds like that ship has sailed").~~ Accordingly, ~~Petitioner~~Dalia brings this Cross- Petition seeking, inter alia,: retention of Dalia as the only non-contingent Trustee of the Orly Trust; monetary damages for misappropriation of Orly Trust assets. ~~To the extent such Settlement Proceeds are recoverable, Petitioner seeks turnover of those funds for the Orly Trust.~~

   and turnover of the Settlement Proceeds for the Orly Trust, to the extent such funds are recoverable.

Count I: ~~Aiding and Abetting~~ Breach of Fiduciary Duty

~~**Against All Respondents**~~

~~28~~25. The allegations contained in paragraphs 1 through ~~27~~24 hereinbefore are realleged as if fully set forth herein.

~~29~~26. Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the " Settlement Proceeds therefrom belong to the Orly Trust.

~~30~~27. Orly owed a fiduciary duty to the Orly Trust.

~~31~~28. Consistent with her fiduciary duty to the Orly Trust, Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

~~32~~29. Orly did not so do. Instead, she entered into the Trump Group Entities Settlement Agreement, which provided for the Settlement Proceeds to be paid to parties other than the Orly Trust, and she authorized payment of the Settlement Proceeds to such other parties.

~~33. Orly's~~30. Orly's actions constitute a breach of fiduciary duty.

~~34. Respondents were aware of Orly's fiduciary duty to the Orly Trust.~~

~~35. Respondents knowingly induced and/or participated in Orly's breach of her fiduciary duty to the Orly Trust by, inter alia, taking the Settlement Proceeds which belong to the Orly Trust, by drafting and entering into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, by advising and inducing Orly to enter into the Trump Group Entities Settlement Agreement which failed to direct payment of the Settlement Proceeds to the Orly Trust, and/or by directing and authorizing payment of the Settlement Proceeds to parties other than the Orly Trust.~~

~~36. In doing so, Respondents aided and abetted Orly's breach of fiduciary duty.~~

~~37~~31. The Orly Trust has been injured by ~~Respondents' aiding and abetting of Orly's~~Orly's breach of her fiduciary duty to the Orly Trust in the amount of $32.3 million, plus statutory interest.

<div align="center">

Count ~~V~~III: Turnover

~~Against All Respondents~~

</div>

~~67~~39. The allegations contained in paragraphs 1 through ~~66~~38 hereinbefore are realleged as if fully set forth herein.

~~68~~40. Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of ~~Orly's~~Orly's creditors.

~~69~~41. Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

~~70~~42. Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

~~71. Respondents knew that Orly was required to ensure that the~~43. The Settlement Proceeds should be delivered to the Orly Trust. ~~were required to be paid to the Orly Trust.~~

~~72. Respondents (except the Trump Group Entities) received the Settlement Proceeds instead of the Orly Trust.~~

~~73. Respondents (except the Trump Group Entities) have in their possession the Settlement Proceeds which~~

~~74. Respondents have refused to turn over the Settlement Proceeds to the Orly Trust or pay it into Court.~~

~~75. Respondents~~44. Orly should be compelled to turn over to the Orly Trust all Settlement Proceeds in ~~their~~her possession, custody or control.

Count ~~VII~~IV: Accounting

~~Against Respondent Orly~~

~~76~~45. The allegations contained in paragraphs 1 through ~~75~~44 hereinbefore are realleged as if fully set forth herein.

~~77~~46. Orly has never provided an accounting of the Settlement Proceeds, which are an asset of the Orly Trust.

~~78~~47. As a matter of law and equity, Orly should provide an accounting of the Settlement Proceeds.


Count ~~IV~~V: Unjust Enrichment

~~Against All Respondents Except Trump Group Entities~~

~~58~~48. The allegations contained in paragraphs 1 through ~~57~~47 hereinbefore are realleged as if fully set forth herein.

~~59~~49. Pursuant to the Trust Agreement Obligations, all trust funds were to be held in the name of the Orly Trust, and no Orly Trust assets were to be used for the benefit of Orly's creditors.

~~60~~50. Because the Orly Trust Derivative Litigation was brought on behalf of the Orly Trust, the Settlement Proceeds therefrom belong to the Orly Trust.

~~61~~51. Orly was required to ensure that the Settlement Proceeds were paid to the Orly Trust.

~~62. Respondents knew that Orly was required to ensure that the Settlement Proceeds were required to be paid to the Orly Trust.~~

~~63. Respondents (except the Trump Group Entities)~~52. Orly's creditors received the Settlement Proceeds instead of the Orly Trust.

64. Respondents (except the Trump Group Entities)53. Orly received a benefit from receiving the Settlement Proceeds which belong to the Orly Trust.

65. The54. Orly received such benefit Respondents (except the Trump Group Entities) received from payment of the Settlement Proceeds was at the expense of the Orly Trust.

6655. Under principles of equity and good conscience, Respondents (except the Trump Group Entities)Orly must make restitution to the Orly Trust in the amount of $32.3 million, plus statutory interest.


Interested Parties

7973. The names and addresses of all persons, other than the Petitioner, interested in the obtaining a determination of the issues presented in this Petition, and all other persons interested in this proceeding who are required to be cited upon this application or concerning whom this Court is required to have information, are:

(a) The following who are of full age and sound mind or are corporations or associations:

      ORLY GENGER
      780 Greenwich Street, Apt. 4P
      New York, New York 10014
      Interest: Beneficiary and Petitioner, Cross-Respondent

      ARIE GENGER
      17001 Collins Avenue,
      Sunny Isles Beach, Florida
      Interest: Respondent

      GLENCLOVA INVESTMENT COMPANY
      41 Madison Ave,
      New York, New York
      Interest: Respondent

      TR INVESTORS, LLC
      41 Madison Ave,
      New York, New York

~~Interest: Respondent~~

~~NEW TR EQUITY I, LLC~~
~~41 Madison Ave,~~
~~New York, New York~~
~~Interest: Respondent~~

~~NEW TR EQUITY II, LLC,~~
~~41 Madison Ave,~~
~~New York, New York~~
~~Interest: Respondent~~

~~TRANS-RESOURCES, INC.~~
~~41 Madison Ave,~~
~~New York, New York~~
~~Interest: Respondent~~

~~ARNOLD BROSER~~
~~5371 Fisher Island Drive,~~
~~Miami Beach, Florida~~
~~Interest: Respondent~~

~~DAVID BROSER~~
~~104 West 40th Street, 19th Floor~~
~~New York, New York~~
~~Interest: Respondent~~

SAGI GENGER 1993 TRUST
C/O John Dellaportas
~~Morgan, Lewis~~
Kelley Drye & Warren
101 Park Avenue~~,~~
New York, New York
Interest: Contingent Remainderman

(b) The following who are persons under disability:

Infants: None

Others under a disability: None

(c) The following persons who are confined in prison: None

(d) The following persons whose names or whereabouts are unknown: None

~~80~~74. There are no persons, corporations or associations other than those mentioned who are

interested in this proceeding.

~~81~~75. No previous application for this or similar relief has been made to this or any other court

except:

a. Motion Seq. 42 (for payment into Court) in the Orly Trust Derivative Litigation, entitled Arie

Genger, et al. v. Sagi Genger, et al., Index No. 651089/2010 in New York Supreme Court, New

York County. Motion Seq. 42 was held in abeyance by the Supreme Court pending a

determination by this Court.

b. Petition before this Court filed June 14, 2016, citation not yet issued.

WHEREFORE, Petitioner requests the following relief ~~against all Respondents~~:

a. declaratory judgment that Dalia is, and will remain, the only non-contingent Trustee of

the Orly Trust;

b. damages in in the amount of $32.3 million, plus statutory interest;

~~b~~c. imposition of a constructive trust on the Settlement Proceeds;

~~c~~d. an order directing the delivery of the Settlement Proceeds to ~~her~~Dalia as Trustee of

the Orly Trust;

~~d~~e. an accounting of the Settlement Proceeds;

~~e~~f. if Dalia is removed as Trusee of the Orly Trust, then authorizing Dalia to name the

successor Trustee;

g. if Dalia is removed as Trusee of the Orly Trust, then having the Court name a third

party successor Trustee from an independent list; and

h. such other relief as to the Court seems just and necessary.

Dated: ~~June 13, 2016~~New City, New York
August 12, 2017

# EXHIBIT E



| **GRANTED** |
| --- |

**IN THE COURT OF CHANCERY FOR THE STATE OF DELAWARE**

DALIA GENGER, as Trustee of the      :
Orly Genger 1993 Trust,           :
                                 :
         Plaintiff,             :
     v.                       :
                                 :
TR INVESTORS, LLC, GLENCLOVA   :
INVESTMENT CO., NEW TR EQUITY I, :
LLC, NEW TR EQUITY II, LLC,     :
TRANS-RESOURCES, INC., and    :
TPR INVESTMENT ASSOCIATES, INC. :
                                 :
         Defendants.          :

                                              C.A. No. 6906-CS

                                 :
TR INVESTORS, LLC, GLENCLOVA   :
INVESTMENT CO., NEW TR EQUITY I, :
LLC, NEW TR EQUITY II, LLC, and   :
TRANS-RESOURCES, INC.,        :
                                 :
         Counterclaim and Crossclaim :
         Plaintiffs,           :
     v.                       :
                                 :
DALIA GENGER, as Trustee of the    :
Orly Genger 1993 Trust,          :
                                 :
         Counterclaim Defendant,    :
                                 :
    and                        :
                                 :
TPR INVESTMENT ASSOCIATES, INC., :
                                 :
         Crossclaim Defendant      :

                                                                                                                                            
TPR INVESTMENT ASSOCIATES, INC., :
         Counterclaim and Crossclaim :
         Plaintiff,             :

v.                                          :
                                            :
DALIA GENGER, as Trustee of the             :
Orly Genger 1993 Trust,                     :
                                            :
              Counterclaim Defendant,       :
                                            :
       and                                  :
                                            :
TR INVESTORS, LLC, GLENCLOVA               :
INVESTMENT CO., NEW TR EQUITY I,           :
LLC, NEW TR EQUITY II, LLC, and            :
TRANS-RESOURCES, INC.,                     :
                                            :
              Crossclaim Defendant          :

---

## STIPULATION AND PROPOSED ORDER OF DISMISSAL

Plaintiff/Counterclaim Defendant Dalia Genger, as Trustee of the Orly Genger 1993 Trust (the "Trustee of the Orly Trust"), Defendants/Counterclaim and Crossclaim Plaintiffs/Crossclaim Defendants TR Investors, LLC, Glenclova Investment Co., New TR Equity I, LLC, New TR Equity II, LLC and Trans-Resources, Inc. (collectively, the "Trump Group") and Defendant/Counterclaim and Crossclaim Plaintiff/Crossclaim Defendant TPR Investment Associates, Inc. ("TPR"), through the undersigned counsel, pursuant to Chancery Court Rules 41(a)(1)(ii) and 41(1)(c), hereby stipulate and agree as follows:

1. In the action styled *TR Investors, LLC, et al. v. Genger*, C.A. No. 3994-CS (the "3994 Action"), the Court found that (i) the transfers in October 2004 of Trans-Resources, Inc. ("Trans-Resources) stock out of TPR were in violation of the March 2001 Stockholders Agreement among Trans-Resources, TPR, TR Investors, LLC and Glenclova Investment Co., (ii) the transfers were void and the

stock reverted to TPR, and (iii) the Trump Group had the right to buy all of the improperly transferred Trans-Resources stock from TPR. These determinations and findings were essential to the Court's determinations and findings in the 3994 Action.

2. The Trump Group, having closed on the purchase of the so-called Orly Trust Shares (representing 1102.8 shares of Trans-Resources stock) pursuant to and under the terms of the Side Letter Agreement between TPR and the Trump Group entered into in August 2008, as was the Trump Group's right under that agreement, owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to the shares of Trans-Resources purportedly transferred by TPR to the Orly Genger 1993 Trust. As a result, the Trump Group owns, for all purposes, all right, title and interest (beneficially, of record and otherwise) to all authorized and issued shares of Trans-Resources.[1]

3. The $10,314,005 plus accrued interest in proceeds from the sale referenced in paragraph 2 above currently held in escrow (the "Sale Proceeds") shall remain in escrow, pursuant to that Escrow Agreement between and among all of the parties hereto, Orly Genger, as beneficiary of the Orly Trust, and Pedowitz & Meister LLP, as escrow agent, until such time as a court in New York shall direct the disposition of the Sale Proceeds, or as the parties to such Escrow Agreement shall otherwise jointly agree, provided that the escrow agent may interplead the Sale

---

[1] This amount equals 5,676.4428 Trans-Resources shares and includes all of the shares that were determined to be owned by the Trump Group in the 3994 Action, in the action captioned *TR Investors v. Genger*, C.A. No. 6697-CS (Del. Ch.) and that are the subject of the above-captioned litigation.

Proceeds into a court in New York at any time.   Upon the so-ordering of paragraphs 1-2 above concerning beneficial ownership, the Trump Group shall disclaim any and all claims to the Sale Proceeds and any and all rights under the Escrow Agreement.  Nothing herein shall constitute an adjudication of any claim for monetary damages pending in any other Court.

4.  The claims brought on behalf of the Orly Genger 1993 Trust by the Trustee of the Orly Trust against the Trump Group are dismissed with prejudice and the claims brought by the Trump Group against the Orly Trust and TPR are dismissed with prejudice.

5.  The claims brought by TPR for the Sale Proceeds against the Trustee of the Orly Trust and the Trump Group have already been dismissed without prejudice.

This document constitutes a ruling of the court and should be treated as such.

| | |
|---|---|
| **Court:** | DE Court of Chancery Civil Action |
| **Judge:** | Leo E Strine |
| **File & Serve Transaction ID:** | 53943155 |
| **Current Date:** | Aug 30, 2013 |
| **Case Number:** | 6906-CS |
| **Case Name:** | Genger, Dalia vs T R Investors LLC |
| **Court Authorizer:** | Strine, Leo E |

/s/ Judge Strine, Leo E

# EXHIBIT F

*To Be Argued By*:
JUDITH BACHMAN

New York County Clerk's Index No. 651089/10

# New York Supreme Court

## APPELLATE DIVISION—FIRST DEPARTMENT

◆━◆━━

ARIE GENGER and ORLY GENGER, in her individual capacity
and on behalf of THE ORLY GENGER 1993 TRUST,

*Plaintiffs-Respondents,*

—against—

SAGI GENGER, TPR INVESTMENT ASSOCIATES, INC., THE SAGI GENGER 1993
TRUST, ROCHELLE FANG, individually and as trustee of THE SAGI GENGER 1993
TRUST, GLENCLOVA INVESTMENT COMPANY, TR INVESTORS, LLC, NEW TR
EQUITY I, LLC, NEW TR EQUITY II, LLC, JULES TRUMP, EDDIE TRUMP and
MARK HIRSCH,

*Defendants-Respondents,*

DALIA GENGER,

*Defendant-Appellant.*

*(Caption continued on inside cover)*

## BRIEF FOR DEFENDANT-APPELLANT

JUDITH BACHMAN
LAW OFFICES OF JUDITH BACHMAN
254 S. Main Street, Suite 306
New City, New York 10956
(845) 639-3210
jlbesq_99@yahoo.com

*Attorneys for Dalia Genger*

REPRODUCED ON RECYCLED PAPER

SAGI GENGER, individually and as assignee of
THE SAGI GENGER 1993 TRUST, and TPR INVESTMENT ASSOCIATES, INC.,

*Cross-Claimants, Counterclaimants, and Third-Party Claimants-Respondents,*

—against—

ARIE GENGER, ORLY GENGER, GLENCLOVA INVESTMENT COMPANY, TR
INVESTORS, LLC, NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC, JULES
TRUMP, EDDIE TRUMP, MARK HIRSCH, TRANS-RESOURCES, INC., WILLIAM
DOWD, and THE ORLY GENGER 1993 TRUST,

*Cross-Claim, Counterclaim and/or Third-Party Defendants-Respondents.*

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ................................................. ii

QUESTION PRESENTED ................................................... 1

STATEMENT OF FACTS AND NATURE OF CASE .................. 1

ARGUMENT ............................................................... 4

    IT WAS ERROR FOR AN IAS COURT WITH INCOMPLETE
    INFORMATION AND NO BASIS TO DISMISS LIVE CLAIMS
    WITH PREJUDICE WHICH DISMISSAL CONTRADICTED
    A PRIOR ORDER AND A PENDING MOTION.................... 4

CONCLUSION............................................................. 7

i

## TABLE OF AUTHORITIES

PAGE(S)

**Cases**

James v. Bernhard,
106 A.D.3d 435, 965 N.Y.S.2d 56 (1st Dep't 2013) ................. 3

Kaiser v. J & S Realty, Inc.,
173 A.D.2d 920 (3d Dep't 1991) ........................................ 5

People v. Evans,
94 N.Y.2d 499 (2000) ..................................................... 6

People v. Putziger,
22 A.D.2d 821 (2d Dep't 1964) ......................................... 5

Samuels v. Consol. Edison Co. of N.Y.,
96 A.D.3d 685 (1st Dep't 2012) ......................................... 5

QUESTION PRESENTED

1. When an IAS Court has incomplete information and no basis, may it issue an Order dismissing live claims with prejudice based on a one-paragraph letter which contradicts a prior order of the IAS Court as well as a pending motion? The IAS Court answered yes.

STATEMENT OF FACTS AND NATURE OF CASE

In 2010, plaintiff Arie Genger and his daughter, co-plaintiff Orly Genger ("Orly") (collectively, "Plaintiffs"), commenced this action against, among other defendants, those collectively known as the "Trump Group". (R. 134). Orly brought her claims in this action both in her individual capacity and on behalf of the Orly Genger 1993 Trust ("Orly Trust") (collectively, the "Orly Individual and Orly Trust Claims"). (R. 134). Dalia Genger ("Dalia") is the trustee of the Orly Trust. (R. 134). In 2013, the action was assigned to Justice Barbara Jaffe of the Supreme Court, New York County (the "IAS Court").

On January 2, 2013, the IAS Court dismissed some, but not all, of the Orly Individual and Orly Trust Claims against the Trump Group. The IAS Court found that certain of those claims stated a viable cause of action, including ones for aiding and abetting breach of fiduciary duty and unjust enrichment (collectively, the "Remaining Claims"). That partial dismissal was set forth in an Amended Decision and Order of the IAS Court ("January Order"). (R. 10).

1

The Trump Group filed a notice of appeal from the January Order but never perfected that appeal. Instead, in June 2013, the Trump Group entered into a settlement with Plaintiffs ("Settlement"). (R. 288). Plaintiffs refused to share the terms of the Settlement with Dalia or anyone else. (R. 288). Instead, they filed a proposed Second Amended Stipulation of Discontinuance with Prejudice in which each of the settling parties initialed and scratched out (from a prior Stipulation) the words "on behalf of" before the words "the Orly Genger 1993 Trust" and replaced them with the words "as beneficiary of" – thereby making clear that the parties were only discontinuing the claims that Orly had brought against the Trump Group individually and as a trust beneficiary, but not any of the claims she had brought on behalf of the Orly Trust. The IAS Court "so-ordered" the Stipulation. (R. 288).

Consistent with the Second Amended Stipulation of Discontinuance, for the next year, in multiple submissions, Orly's attorneys represented to the IAS Court that her Settlement with the Trump Group "only dismisses Orly's individual claims against the Trump Group, but does not resolve or dismiss any claims of the Orly Trust against the Trump Group". (R. 61). Orly's attorneys further represented that the Settlement (which they still declined to share) left Dalia Genger, as Trustee of the Orly Trust, free to "pick up the cudgel if she so [chose]" to prosecute the Remaining Claims. Id. (emphasis added). The Trump Group did not notify the Court that they took issue with Orly's characterizations.

2

With that representation, and following certain other rulings from the IAS

Court which further crystallized the issue, in August 2014, Dalia moved, in part, to

be substituted for Orly on behalf of the Orly Trust ("Substitution Motion") against

the Trump Group to "pick up the cudgel" and use that cudgel to prosecute some or

all of the Remaining Claims on behalf of the Orly Trust. (R. 52).[1]

Plaintiffs thereafter sought multiple extensions of their time to respond to the

Substitution Motion, the last of which Dalia's objected but the IAS Court granted

over that objection. Before they had even submitted any oppositions to the

Substitution Motion, Plaintiffs' submitted a one paragraph letter requesting that the

IAS Court enter a proposed order of dismissal and severance: (1) dismissing all of

Plaintiffs' claims (necessarily including the never-dismissed Remaining Claims)

and (2) severing the cross-claims, counterclaims and third-party claims of another

party (the "Letter"). (R. 48).

Upon receipt of the Letter, Dalia's counsel objected to the entry of the

proposed order of dismissal and severance because of Dalia's pending Substitution

Motion which sought, inter alia, to prosecute the Remaining Claims. (R. 51).

Without any meaningful, let alone complete, information in the form of papers,

motion, hearing, or argument, however, the IAS Court entered the Order of

---

[1]     Such substitution is appropriate, and indeed necessary, when a derivative
plaintiff, like Orly Genger, is no longer an appropriate representative plaintiff.
James v. Bernhard, 106 A.D.3d 435, 965 N.Y.S.2d 56 (1st Dep't 2013).

3

dismissal and severance dated November 3, 2014 and entered November 25, 2014 (Jaffe, J.) (the "Order") that purportedly dismissed the Remaining Claims. That Order contradicted the IAS Court's own January Order leaving the Remaining Claims and ignored the pending Substitution Motion seeking, inter alia, to prosecute the Remaining Claims (R. 10).

Appellant, Dalia Genger , Trustee of the Orly Trust, now appeals that Order because it purportedly dismisses the Remaining Claims in contravention of the January Order and the Substitution Motion.

After entry of the Order and filing to the Notice of Appeal of it, the parties completed briefing on the Substitution Motion. (R. 144 - 545). The Appellees cited the Order as justification for the denial of the Substitution Motion claiming that the IAS Court had dismissed the Remaining Claims. (R. 290). After argument, the IAS Court held the Substitution Motion in abeyance until the Surrogate's Court determined whether Dalia should remain as trustee. (R. 579).

## ARGUMENT

### IT WAS ERROR FOR AN IAS COURT
### WITH INCOMPLETE INFORMATION AND NO BASIS
### TO DISMISS LIVE CLAIMS WITH PREJUDICE
### WHICH DISMISSAL CONTRADICTED A PRIOR ORDER
### AND A PENDING MOTION

When an order, such as the one at bar, is issued without complete information provided in the form of papers, motion, hearing or argument, it should

4

be reversed.  <u>E.g.</u>, <u>Samuels v. Consol. Edison Co. of N.Y.</u>, 96 A.D.3d 685 (1st

Dep't 2012).  Without the submission of complete information in support of an

application, a court cannot grant an order.  <u>Kaiser v. J & S Realty, Inc.</u>, 173

A.D.2d 920 (3d Dep't 1991); <u>People v. Putziger</u>, 22 A.D.2d 821 (2d Dep't 1964).

Thus for instance in <u>Kaiser v. J & S Realty, Inc.</u>, 173 A.D.2d 920 (3d Dep't

1991), the Third Department reversed an order issued on an oral motion because

the movant had failed to present affidavits or other competent evidence in support

of its factual assertions.  The court reasoned:

> Here, it appears that defendant made no
> evidentiary showing. In any event, the record on appeal,
> stipulated to by defendant, contains no affidavits, sworn
> testimony or other competent evidence in support of
> defendant's motion to vacate the default judgment. As
> such, Supreme Court's determination may not be
> sustained.

Likewise in <u>People v. Putziger</u>, 22 A.D.2d 821 (2d Dep't 1964), the Second

Department held that "it was error for the trial court to enter an order without a

hearing and without a judicial determination on the issues of fact and law raised by

the petition and return."

Here too, the Order must be reversed because "it was error for the [IAS

Court] to enter an [O]rder without a hearing and without a judicial determination

on the issues of fact and law raised . . . ."

The IAS Court entered the Order in response to the one-paragraph Letter. Plaintiffs submitted no papers, motion, affidavits, sworn testimony or other competent evidence justifying the request for the Order purportedly dismissing the Remaining Claims, nor were any of the other parties afforded the opportunity to oppose entry of the Order through their own submissions.

Among other things, the IAS Court had no information, papers, motion or hearing on the interplay between the requested Order and the January Order. Nor did the IAS Court have any information, papers, motion or hearing on the interplay between the requested Order and the Substitution Motion. In fact, the Substitution Motion had not been fully briefed, heard or decided, at the time the Order was entered. The IAS Court had woefully incomplete information before it – merely a one-paragraph Letter and nothing else – when it entered the Order.

Even assuming arguendo that the Court did have complete information about the Order, it was error to enter the Order dismissing the Remaining Claims. There was no basis to dismiss the Remaining Claims. That purported dismissal was in direct contravention of the January Order which determined the Remaining Claims to be viable, which ruling remained the law of the case. See, People v. Evans, 94 N.Y.2d 499, 503 (2000) (holding that law of the case doctrine "expresses the practice of courts generally to refuse to reopen what has been decided") (quoting Messenger v. Anderson, 225 U.S. 436, 444 (1912)). Additionally, the Order was

6

issued notwithstanding the pendency of the Substitution Motion which sought to

prosecute the Remaining Claims.

<div align="center">CONCLUSION</div>

Because the IAS Court had incomplete information and no basis to issue the

Order, the Order must be reversed.

Dated:  November 6, 2015
        New City, New York

<div style="text-align:center">/s/</div>
_____

Judith Lisa Bachman, Esq.
Attorney for Appellant, Dalia Genger
254 South Main Street, Suite 306
New City, New York 10956
845-639-3210

<div align="center">7</div>

## PRINTING SPECIFICATION STATEMENT

This computer generated brief was prepared using a proportionally spaced typeface.

    Name of typeface: Times New Roman

    Point size: 14 Points

    Line spacing: Double

The total number of words in the brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of authorities, proof of service, printing specification statement, or any authorized addendum is 1,472.

FILED: NEW YORK COUNTY CLERK 12/15/2014 04:35 PM
NYSCEF DOC. NO. 1156

INDEX NO. 651089/2010
RECEIVED NYSCEF: 12/15/2014

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------x
ARIE GENGER and ORLY GENGER, in her          :
individual capacity and on behalf of
THE ORLY GENGER 1993 TRUST,                  :     Index No. 651089/2010
                                                   (Jaffe, B. JSC)
                                             :
                    Plaintiffs,
                                             :

                    -against-               :

SAGI GENGER, TPR INVESTMENT                  :
ASSOCIATES, INC., DALIA GENGER, THE
SAGI GENGER 1993 TRUST, ROCHELLE             :
FANG, individually and as trustee of THE SAGI
GENGER 1993 TRUST, GLENCLOVA                 :
INVESTMENT COMPANY, TR INVESTORS,
LLC, NEW TR EQUITY I, LLC, NEW TR            :
EQUITY II, LLC, JULES TRUMP, EDDIE
TRUMP AND MARK HIRSCH,                       :

                    Defendants.             :
-----------------------------------------------------------------x
SAGI GENGER, individually and as assignee of :     PREARGUMENT STATEMENT
THE SAGI GENGER 1993 TRUST, and TPR
INVESTMENT ASSOCIATES, INC.                  :

         Cross-Claimants, Counterclaimants, and :
         Third-Party Claimants,

                                             :
                    -against-
                                             :

ARIE GENGER, ORLY GENGER,                    :
GLENCLOVA INVESTMENT COMPANY,
TR INVESTORS, LLC, NEW TR EQUITY I, LLC,     :
NEW TR EQUITY II, LLC, JULES TRUMP,
EDDIE TRUMP, MARK HIRSCH,                     :
TRANS-RESOURCES, INC., WILLIAM
DOWD, and THE ORLY GENGER 1993 TRUST,        :

         Cross-Claim, Counterclaim and/or      :
         Third-Party Defendants.
-----------------------------------------------------------------x

1.  TITLE OF ACTION:                  As set forth in caption.

2.  FULL NAMES OF                     The original parties are as set forth in the
    ORIGINAL PARTIES AND              caption above.
    ANY CHANGE IN PARTIES

3.  NAME OF COUNSEL FOR               Judith Bachman, Esq.
    DEFENDANT- APPELLANT              254 S. Main Street, Suite 306
    DALIA GENGER                      New City, New York 10956
                                      845-639-3210

4.  NAME OF COUNSEL FOR
    PLAINTIFF-RESPONDENTS

                                      Yoav M. Griver, Esq.
                                      Bryan D. Leinbach, Esq.
                                      ZEICHNER ELLMAN & KRAUSE LLP
                                      575 Lexington Avenue
                                      New York, New York 10022
                                      212-223-0400
                                      Attorneys for Orly Genger

                                      William Wachtel, Esq.
                                      Elliot Silverman, Esq.
                                      WACHTEL MASYR & MISSRY LLP
                                      One Dag Hammarskjold Plaza
                                      885 Second Avenue
                                      New York, New York 10017
                                      212-909-9595
                                      Attorneys for Orly Genger

                                      Lauren J. Wachtler, Esq.
                                      Paul D. Montclare, Esq.
                                      MITCHELL SILBERBERG & KNUPP LLP
                                      12 East 49th Street
                                      New York, New York 10017
                                      212-509-3900
                                      Attorney for Arie Genger

5.  NAME OF COUNSEL FOR
    DEFENDANT-RESPONDENTS

                                      John Dellaportas
                                      Morgan, Lewis & Bockius LLP
                                      101 Park Avenue
                                      New York, NY 10178-0060

212-309-6690
Attorneys for Defendants Sagi Genger,
The Sagi Genger 1993 Trust, and
TPR Investment Associates, Inc

Douglas Herrmann
William P. Frank
John Boyle
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Attorneys for Defendants Glenclova
Investment Co., TR Investors, LLC, New
TR Equity I, LLC, New TR Equity II, LLC,
Jules Trump, Eddie Trump, Mark Hirsch
and Trans-Resources, Inc.

Brian T. Stapleton
GOLDBERG SEGALLA
11 Martine Avenue, Suite 1700
White Plains, New York 10606
(914) 79805470
Attorneys for Third-Party Defendant William Dowd

Ira Tokayer, Esq.
The Chrysler Building
405 Lexington Avenue, 7th Floor
New York 10174
(212) 695-5250
Attorney for Rochelle Fang

6.  COURT AND COUNTY        SUPREME COURT, NEW YORK COUNTY
    FROM WHICH APPEAL       (Barbara Jaffe, J.S.C.)
    IS TAKEN

7.  THE NATURE AND OBJECT
    OF THE CAUSE OF ACTION:

                            By her pending motion Dalia Genger, as trustee,
                            sought an order substituting her as plaintiff on Orly
                            Genger's Trump Group claims and for an order

pursuant to CPLR 2701 directing that the Trump Group settlement fund be paid into Court.

The Plaintiffs sought an order dismissing certain claims including those for which Dalia Genger sought to be substituted while the motion for substitution was pending

Dalia Genger objected to the issuance of the order while the substitution motion was still pending

8. RESULT REACHED IN THE COURT BELOW:

The IAS Court issued the order requested by Plaintiffs' dismissing certain claims including those for which Dalia Genger sought to be substituted while the motion for substitution was pending

9. GROUNDS FOR SEEKING REVERSAL:

The Court erred in issuing the order requested by Plaintiffs' dismissing certain claims including those for which Dalia Genger sought to be substituted while the motion for substitution was pending

10. RELATED ACTIONS:

Orly Genger et al. v. Dalia Genger et al., Index No. 109749/2009. Pending

Orly Genger v. Sagi Genger, Index No. 100697/2008. Pending

In the Matter of the Application of Orly Genger, as a person interested, for the removal of Dalia Genger, as Trustee of the Orly Genger Trust, File No. 0017/2008 N.Y. Surr. Ct. (Anderson, N. Surrogate. Pending.

Dalia Genger, et al. v. TR Investors LLC, C.A. No. 6906-CS Del. Chan. Ct., Stayed

11. OTHER APPEALS:

None pending by Dalia Genger.

## ATTORNEY'S CERTIFICATION

The undersigned hereby certifies that, to the best of the undersigned's knowledge, information

and belief, formed after a reasonable inquiry under the circumstances, the Presentation of the

within PRE-ARGUMENT STATEMENT or the contentions contained herein is/are not frivolous

as defined in 22 NYCRR § 130-1.1

Dated:  December 15, 2014
        New City, New York

                              _____/s/_____
                              Judith Lisa Bachman, Esq.
                              Attorney for Dalia Genger
                              254 South Main Street, Suite 306
                              New City, New York 10956
                              845-639-3210

## SETTLEMENT AGREEMENT AND RELEASE

This settlement agreement and release (this "Agreement") is entered into as of June 16, 2013, by and between Arie Genger and Orly Genger (in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust), Arnold Broser, David Broser, (in their individual capacity and on behalf of all entities managed, owned or controlled in any way by Arnold Broser or David Broser and which are in any way related to the subject matter hereof ("Broser Entities" and collectively with Arie Genger and Orly Genger in all capacities referenced above, the "AG Group"), and TR Investors, LLC ("TR Investors"), Glenclova Investment Co. ("Glenclova"), New TR Equity I, LLC ("New TR I"), New TR Equity II, LLC ("New TR II" and, together with TR Investors, Glenclova and New TR I, the "Trump Entities"), Trans-Resources, LLC (the successor to Trans-Resources, Inc. and together with its predecessor entities referred to herein as, "Trans-Resources"), Jules Trump, Eddie Trump and Mark Hirsch (collectively, with the Trump Entities and Trans-Resources, the "Trump Group"). The members of the AG Group and the Trump Group are each referred to herein individually as a "Party" and together as the "Parties".

WHEREAS, in March 2001, TR Investors, Glenclova, Trans-Resources and TPR Investment Associates, Inc. ("TPR") entered into a stockholders agreement with respect the common stock of Trans-Resources (the "Stockholders Agreement");

1

**WHEREAS**, since August 2008, Arie Genger, Orly Genger, the Trump Group and others have been engaged in various litigations (described below) concerning the ownership and control of Trans-Resources; and

**WHEREAS**, the Parties wish to resolve all issues, disputes and disagreements between them, including but not limited to the issue of ownership of all Trans-Resources shares;

**NOW, THEREFORE**, in consideration of the promises and representations contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1.  **Recitals.**    The above recitals are incorporated into and made a part of this Agreement and are binding on all Parties hereto.

2.  **Initial Consideration from the Trump Group.**    Upon dismissal with prejudice of the claims, counterclaims, cross-claims, third-party claims, issues and matters as provided in Paragraph 4 below, the Trump Group shall promptly:

    (a)    release all claims they may have to the (i) $7,428,994.00 plus interest held by Skadden, Arps, Slate, Meagher & Flom LLP as escrow agent (the "Skadden Escrow") and (ii) $10,314,005.00 plus interest held by with Pedowitz & Meister as escrow agent (the "P&M Escrow");

    (b)    pay to Wachtel, Masyr & Missry, LLP as attorneys for the AG Group ("Wachtel") an amount in cash equal to $35,000,000.00 minus (i) the amount held in the Skadden Escrow, and (ii) the amount held in the P&M Escrow.

2

3.    **Further Consideration from the Trump Group.**  Trans-Resources on behalf of the Trump Group shall pay: (i) $7,500,000 to Wachtel on the third anniversary of the Effective Date (defined below), and (ii) $7,500,000 to Wachtel 364 days following the third anniversary of the Effective Date The payments provided under this paragraph shall be (a) subject to the terms and conditions herein and (b) evidenced by two (2) promissory notes that are substantially in the form attached as Exhibit A hereto (the "Notes").  Notwithstanding anything else herein, the maturity of the two $7,500,000 Notes shall be delayed beyond their due date until the earlier (the "Extended Maturity Date") of (A) such time as all pending claims, cross-claims and counter-claims brought by any of TPR, Sagi Genger, the Sagi Genger 1993 Trust, the Orly Genger 1993 Trust (other than the Orly Trust Action (as defined below)), D&K Limited Partnership, D&K GP LLC, Rochelle Fang, and/or David Parnes (collectively, the "Sagi Group") against any member of the Trump Group have been dismissed with prejudice and the statute of limitations shall have run with respect to any other potential claims of the Sagi Group that might be the subject of the Indemnification provided for by Paragraph 5 below or (B) such time as each member of the Sagi Group shall have provided the Trump Group with a release of the Trump Group Released Parties (as defined below) and covenant not to sue in form and substance that is the same as the AG release and covenant not to sue contained in Paragraph 6(a) below (the "Sagi Group Release").

Subject to the foregoing, the Notes shall become immediately due and payable upon the occurrence of any transaction or series of transactions which shall result in the Trump Group owning or controlling neither (i) a majority of the voting stock of Trans-Resources or its successors or each of its two principal subsidiaries, Haifa Chemicals, Ltd. and Na-Churs Plant

3

Food Company or their successors, nor (ii) directly or indirectly, a majority of the assets currently owned by Trans-Resources and its subsidiaries; provided, however, that in such event, at the request of the Trump Group, the amounts then payable on the Notes shall be placed in escrow for the duration of their original term or until the Extended Maturity Date (if applicable) under the provisions of an escrow agreement on reasonable terms to be negotiated at such time in good faith between Trans-Resources, the payee and an escrow agent selected by their mutual consent, which shall provide for their release to the Trump Group in payment of Indemnification Amounts, AG Group Release Amounts and Discovery Costs (as such terms are defined below), if any, and payment to the payee of such amounts after reduction for Indemnification Amounts, AG Group Release Amounts and Discovery Costs, if any, upon their original maturity date or the Extended Maturity Date (if applicable).  If Trans-Resources is unable to pay the Notes as and when they mature, the Trump Group will be obligated to make payment thereon in an amount equal to the lesser of (x) the outstanding amounts not paid by the obligor thereunder and (y) any amount by which cash payments received by members of the Trump Group (other than Trans-Resources) from Trans-Resources and its subsidiaries since the Effective Date (whether in the form of dividends, distributions, compensation or otherwise) exceeds reasonable compensation for services rendered plus payments for goods, services and assets provided by such persons in amounts that would have been paid for such goods, services and assets in arms' length transactions with unaffiliated third parties; provided, however, that in neither case shall the Trump Group be obligated to pay any amount that exceeds the outstanding amounts not paid by Trans-Resources on the Notes (subject to any Indemnification Amounts, AG Group Release Amounts or Discovery Costs).

4

4.     **Dismissal of Claims with Prejudice**.  Within two (2) business days of the Effective Date (defined below), the AG Group and the Trump Group shall take all actions necessary or desirable to:  (i) effect the dismissal with prejudice of all claims, counterclaims, cross-claims, third-party claims, issues and matters between them, and to vacate all court orders which restrain, enjoin or in any way limit actions by any members of the Trump Group, in each pending action in which members of the AG Group and the Trump Group are parties (whether or not service of process with respect thereto has been effected), including, without limitation, each of the following pending actions (collectively, the "Litigation"):  *Genger v. TR Investors, LLC*, No. 168, 2013 (Del.); *TR Investors, LLC v. Genger*, C.A. No. 6697-CS (Del. Ch.); *Trans-Resources, Inc. v. Genger*, C.A. No. 4391-CS (Del. Ch.) (with respect to Arie Genger only); *TR Investors, LLC, et al. v. Genger*, C.A. No. 3994-CS (Del. Ch.); *Glenclova Investment Co. v. Trans-Resources, Inc., at al.*, No. 08 Civ. 7140 (JFK) (S.D.N.Y.); *Arie Genger and Orly Genger v. Sagi Genger, et al.*, Index No. 651089/2010 (N.Y. Supr.); and (ii) have the New York State Supreme Court enter a definitive non-appealable order declaring that members of the Trump Group own all right, title and interest (beneficially, of record and otherwise) to the shares of Trans-Resources purportedly transferred by TPR in October 2004 to Arie Genger (the ("Arie Shares") and to the Orly Genger 1993 Trust (the "Orly Trust Shares"),  with the understanding and agreement that should the request for the entry of such an order with respect to the "Orly Trust Shares" be denied or not entered in a reasonably timely fashion,  then the AG Group and the Trump Group shall take all action necessary or desirable to have the New York State Supreme Court vacate all court orders which restrain, enjoin or in any way limit actions by the

5

parties to the pending action captioned *Dalia Genger, as Trustee of the Orly Genger 1993 Trust v. TR Investors, LLC, et al.,* C.A. No. 6906-CS (Del. Ch.) (the "Orly Trust Action"), to prosecute, defend, compromise, settle and otherwise deal with all claims, counterclaims, cross-claims, third-party claims, issues and matters asserted therein; provided, however, that nothing in this Agreement is intended to require or permit the dismissal of any claims, counterclaims, cross-claims, third-party claims, issues and matters, (i) in *Trans-Resources, Inc. v. Genger,* C.A. No. 4391-CS (Del. Ch.) (the "Breach of Fiduciary Duty Case"), as between the Trump Group and Avi Pelossof and/or William Dowd (subject to the exchange of general releases between the members of the Trump Group and William Dowd as contemplated below) and (b) against TPR, the Sagi Genger 1993 Trust, the Orly Genger 1993 Trust, D&K Limited Partnership, D&K GP LLC, Sagi Genger or Dalia Genger.  Any member of the AG Group  including, without limitation, Orly Genger, who is called to testify in the Litigation or the Orly Trust Action, agrees to testify that he, she (in her individual capacity, ~~on behalf of the Orly Genger 1993 Trust,~~ and as beneficiary of the Orly Genger 1993 Trust) or it has waived all claims he, she (in her individual capacity, ~~on behalf of the Orly Genger 1993 Trust,~~ and as beneficiary of the Orly Genger 1993 Trust) or it had or may have to ownership (record, beneficial or otherwise) of any shares of Trans-Resources and that he, she (in her individual capacity, ~~on behalf of the Orly Genger 1993 Trust,~~ and as beneficiary of the Orly Genger 1993 Trust) or it is opposed to the Orly Genger 1993 Trust seeking any remedy of any kind against any member of the Trump Group. Notwithstanding the foregoing, upon receipt by the Trump Group of a general release in form and substance reasonably satisfactory to it, the Trump Group shall provide the same general

6

release to William Dowd and cause the dismissal of the Breach of Fiduciary Duty Case as between the Trump Group and him.

     5.    **Indemnification.**

       (a)    Upon closing of this Agreement, each of the members of the AG Group with the exception of Arnold Broser and David Broser and the Broser Entities, jointly and severally, agrees to indemnify and hold harmless (i) each of the members of the Trump Group, and their respective past and present affiliates and direct and indirect subsidiaries, and (ii) each of the past and present agents, representatives, officers, directors, advisors, employees, general partners, limited partners, shareholders, members, predecessors, successors, heirs, executors, administrators and assigns of each person and entity referenced in clause (i), from all reasonable costs, expenses, attorneys' fees of counsel selected by the Trump Group (it being agreed that the Trump Group will cooperate with the AG Group in all reasonable respects to cause the amount of such costs, expenses and its attorneys' fees to be minimized), settlements and/or judgments (whether direct or related to joint and several liability) (the "Indemnification Amounts") incurred as a result of, in connection with, or relating in any way to any (x) claims, counterclaims, cross-claims or third-party claims raised or that could have been raised in the Litigation, and (y) claims that are pending, have been brought, or that may in the future be brought by or on behalf of any of TPR, the Sagi Genger 1993 Trust, the Orly Genger 1993 Trust (other than those claims currently pending in the Orly Trust Action), D&K Limited Partnership, D&K GP LLC, Sagi Genger, David Parnes or Dalia Genger, regardless of whether they were or could have been raised in the Litigation or the Orly Trust Action, relating in any way, whether directly or indirectly, to (A) the Shareholders Agreement entered into by Trans-Resources

shareholders and Trans-Resources on March 30, 2001, (B) the transfer of interests in TPR or the

purported transfer of shares of Trans-Resources by TPR in October 2004, (C) any activities or

developments relating to or conducted by Trans-Resources or any of its direct or indirect

subsidiaries that occurred prior to September 26, 2008, (D) the acquisition by the Trump Group

of all interests (record, beneficial or otherwise) of the so called "Arie Shares", "Orly Trust

Shares" and the shares of Trans-Resources purportedly transferred by TPR in October 2004 to

the Sagi Genger 1993 Trust (the "Sagi Trust Shares") (including, without limitation, the

negotiations for the ownership or acquisition of such shares), (E) the control of Trans-Resources

or any of its direct or indirect subsidiaries by the Trump Group through its acquisition of the

aforementioned shares, (F) records and documents (including but not limited to electronic files)

in the possession, custody or control of Trans-Resources or any of its direct or indirect

subsidiaries, (G) misrepresentations made or improper acts conducted prior to September 26,

2008 by any officer or director of Trans-Resources, (H) this Agreement,  (I) the business or

operations of Trans-Resources or any of its direct or indirect subsidiaries conducted prior to

September 26, 2008 arising from or in any way related to the conduct of any member of the AG

Group, Avi Pelossof or William Dowd, or (J) the conduct of any other individual to the extent

Arie Genger is aware, or should have been aware, thereof. Notwithstanding the foregoing, the

indemnity provided for above shall not apply to any claims which may be brought subsequent to

the Effective Date (and which are entirely unrelated to any claim brought prior to such date) by

any of Sagi Genger, the Sagi Genger 1993 Trust or TPR and which arise solely out of actions

taken or not taken by members of the Trump Group which actions or inactions no member of the

AG Group was aware of or should have been aware of; provided, however, that such claim was

8

not encouraged or solicited by any member of the AG Group and no member thereof cooperates in asserting, instituting or prosecuting such claim. Notwithstanding anything herein to the contrary, the undertaking of William Wachtel hereunder shall not exceed under any circumstance an amount greater than $5,000,000.

(b)    The Trump Group may request payment or reimbursement of the Indemnification Amounts at any time by providing a written statement or copy of an underlying invoice or expense documentation to any member of the AG Group at the addresses set forth in Paragraph 16 below, and the AG Group shall pay such indemnified expenses in full and in cash within five (5) business days of the date such request is made. The supporting documentation submitted with any payment or reimbursement request hereunder may be redacted as necessary to preserve attorney-client privilege, attorney work product, or confidential information the Trump Group may, in its reasonable determination, need to protect. The Trump Group will provide the AG Group with reasonable notice prior to making any motion or taking any appeal with respect to, or in, any past, present or future action or claim for which the Trump Group is seeking indemnification, and such notice will be accompanied by a non-binding estimate of the legal fees and costs associated with such motion or appeal. The Trump Group authorizes the AG Group and their respective counsel to discuss directly with the Trump Group's appointed counsel the amount and scope of any invoice for which the Trump Group is seeking indemnification. The AG Group in its sole discretion may settle any indemnified claim so long as there is no monetary contribution to be paid by the Trump Group, and the Trump Group is released, in form and substance reasonably satisfactory to it, from any liability relating to any such indemnified

9

claim. The Trump Group shall not enter into any settlement of any indemnified claim, or discussions with respect thereto, without the express written consent of the AG Group.

(c)     With respect to each Indemnification Amount, until such time as it has been paid over to the Trump Group, the members of the AG Group shall remain jointly and severally liable for such Indemnification Amount and, the Trump Group may at its option pursue all legal remedies available to it and/or withhold an amount equal to such unreimbursed Indemnification Amount from any payments by Trans-Resources to be made pursuant to the Notes.

6.     **Releases.**

(a)     **The AG Group Release.**  Effective on the Effective Date, each of the members of the AG Group, for itself, himself or herself, and in all capacities, and on behalf of its (and its respective affiliates' and direct and indirect subsidiaries'), his or her respective agents, representatives, officers, directors, advisors, employees, general partners, limited partners, shareholders, members, subsidiaries and affiliates, and each of their respective predecessors, successors, heirs, executors, administrators and assigns, and any other persons or entities acting in concert with any of them including, without limitation, any member of the Sagi Group which he, she or it shall at any time directly or indirectly control or be deemed authorized to act on behalf of (individually, an "AG Group Releasing Party" and collectively, the "AG Group Releasing Parties"):  (i) fully, finally, irrevocably and unconditionally waives, releases and discharges each of the members of the Trump Group and its (and its respective past and present affiliates' and direct and indirect subsidiaries'), his or her respective past and present agents

10

(including Skadden, Arps, Slate, Meagher & Flom LLP in any capacity, including as Escrow Agent for the Skadden Escrow or for any escrow in which it held, holds, or may hold, any dividends or distributions from Trans-Resources), representatives, officers, directors, advisors, employees, general partners, limited partners, shareholders, members, subsidiaries and affiliates, and each of their respective predecessors, successors, heirs, executors, administrators and assigns (collectively, the "Trump Group Released Parties"), from any and all claims, counterclaims, demands, proceedings, actions, causes of action, orders, obligations, damages, debts, costs, expenses and other liabilities whatsoever and however arising, whether known or unknown, past, present or future, suspected or unsuspected, contingent or actual, both at law and in equity, including without limitation, claims for fraud or fraud in the inducement (collectively, "Claims"), which such AG Group Releasing Party now has, has ever had or may hereafter claim to have against any Trump Group Released Party or its, his or her assets, liabilities or operations from the beginning of the world through the Effective Date (individually, an "AG Group Released Claim" and collectively, the "AG Group Released Claims"); and (ii) agrees not to assert, institute or prosecute, or encourage, solicit or cooperate with any other person or entity in asserting, instituting or prosecuting, any proceeding against any of the Trump Group Released Parties in any jurisdiction (domestic or foreign, including, without limitation, the State of Israel) with respect to any AG Group Released Claim or any other Claim relating in any way, directly or indirectly, to Trans-Resources or any of its direct or indirect subsidiaries, the ownership or acquisition of Trans-Resources shares (including any dividends or distributions relating thereto or any escrow in which such dividends or distributions may currently be or in the past have been held), the Litigation, the Orly Trust Action, control of Trans-Resources or any of its direct or

11

indirect subsidiaries, the business or operations of Trans-Resources or any of its direct or indirect subsidiaries, or arising out of this Agreement including, without limitation, the negotiation and execution of this Agreement or the AG Group Releases provided hereunder; provided, however, that this AG Group Release shall not apply to any Claims (x) seeking equitable relief to enforce the terms of this Agreement or claims seeking payment of the Notes or any indemnification payments required to be paid hereunder, (y) relating solely to events that transpired in their entirety subsequent to the Effective Date and that could not, under any circumstances, have possibly been pursued prior to the Effective Date whether or not then known, and (z) between any of the AG Group Releasing Parties and TPR, and/or any other member of the Sagi Group.

If an AG Releasing Party brings an AG Group Released Claim or other Claim in violation of the immediately preceding paragraph, the AG Group, jointly and severally, agrees to indemnify the Trump Group for any and all settlements, judgments, costs and fees, including legal fees and disbursements of counsel chosen by the Trump Group, incurred in working on, preparing for or defending such claim ("AG Group Release Amounts"). With respect to each AG Group Release Amount, until such time as such AG Group Release Amount has been paid over to the Trump Group, the members of the AG Group shall remain jointly and severally liable for such AG Group Release Amount, and the Trump Group may at its option pursue all legal remedies available to it and/or withhold an amount equal to such unreimbursed AG Group Release Amount from any payments to be made by Trans-Resources pursuant to the Notes. For purposes of the removal of all doubt, it is the parties' intention that no claims shall be brought or pursued by any member of the AG Group against any member of the Trump Group for any

reason whatsoever (other than claims permitted under clause (x), (y) and (z) of the immediately preceding paragraph).

(b)     **The Trump Group Release.**  Effective on the Effective Date, each of the members of the Trump Group, for itself or himself, and in all capacities, and on behalf of its (and its respective affiliates' and direct and indirect subsidiaries'), or his respective agents, representatives, officers, directors, advisors, employees, general partners, limited partners, shareholders, members, subsidiaries and affiliates, and each of their respective predecessors, successors, heirs, executors, administrators and assigns, and any other persons or entities acting in concert with any of them (individually, a "Trump Group Releasing Party" and collectively, the "Trump Group Releasing Parties"):  (i) fully, finally, irrevocably and unconditionally waives, releases and discharges each of the members of the AG Group and its (and its respective past and present affiliates' and direct and indirect subsidiaries'), his or her respective past and present agents, representatives, officers, directors, advisors, employees, general partners, limited partners, shareholders, members, subsidiaries and affiliates, and each of their respective predecessors, successors, heirs, executors, administrators and assigns (collectively, the "AG Group Released Parties"), from any and all claims, counterclaims, demands, proceedings, actions, causes of action, orders, obligations, damages, debts, costs, expenses and other liabilities whatsoever and however arising, whether known or unknown, past, present or future, suspected or unsuspected, contingent or actual, both at law and in equity including, without limitation, claims for fraud or fraud in inducement, ("Claims"), which such Trump Group Releasing Party now has, has ever had or may hereafter claim to have against any AG Group Released Party or its, his or her assets, liabilities or operations from the beginning of the world through the Effective Date (individually,

13

a "Trump Group Released Claim" and collectively, the "Trump Group Released Claims"); and (ii) agrees not to assert, institute or prosecute, or encourage, solicit or cooperate with any other person or entity in asserting, instituting or prosecuting, any proceeding against any member of the AG Group Released Parties with respect to any Trump Group Released Claim or any other Claim relating in any way, directly or indirectly, to Trans-Resources or any of its direct or indirect subsidiaries, the ownership or acquisition of Trans-Resources shares, control of Trans-Resources or any of its direct or indirect subsidiaries, the business or operations of Trans-Resources or any of its direct or indirect subsidiaries, or the negotiation and execution of this Agreement or the Trump Group Releases provided hereunder; provided, however, that this Trump Group Release shall not apply to any Claims (x) seeking equitable relief to enforce the terms of this Agreement or claims seeking payment of any indemnification payments required to be paid hereunder, (y) relating solely to events that transpired in their entirety subsequent to the Effective Date and that could not, under any circumstances, have possibly been pursued prior to the Effective Date whether or not then known, and (z) between any of the Trump Group Releasing Parties and Avi Pelossof, William Dowd (unless and until the exchange of mutual general releases between the Trump Group and William Dowd referred to above) and/or TPR.

If a Trump Group Releasing Party brings a Trump Group Released Claim or other Claim in violation of the immediately preceding paragraph, the Trump Group, jointly and severally, agrees to indemnify the AG Group for any and all settlements, judgments, costs and fees, including legal fees and disbursements of counsel chosen by the AG Group, incurred in working on, preparing for or defending such claim ("Trump Group Release Amounts"). With respect to each Trump Group Release Amount, until such time as such Trump Group Release Amount has

14

been paid over to the AG Group, the members of the Trump Group shall remain jointly and severally liable for such Trump Group Release Amount, and the AG Group may at its option pursue all legal remedies available to it.  For purposes of the removal of all doubt, it is the parties intention that no claims shall be brought or pursued by any member of the Trump Group against any member of the AG Group for any reason whatsoever (other than claims permitted under clause (x), (y) and (z) of the immediately preceding paragraph).

       7.    **Discovery Obligations**.    Effective on the Effective Date (defined below), to the extent that a member of the AG Group or the Orly Genger 1993 Trust seeks discovery or testimony from any member of the Trump Group, or if any member of the Trump Group is subpoenaed by any party to an action in which any member of the AG Group or the Orly Genger 1993 Trust is a party, each of the members of the AG Group, jointly and severally, agrees that to the extent indemnities of the Trump Group provided for elsewhere in this Agreement do not apply, they shall indemnify the Trump Group for any and all costs and fees, including reasonable legal fees and disbursements of counsel to be chosen by the Trump Group (it being understood that for the purposes of this Discovery Obligation indemnity only, the indemnification for legal fees shall be limited to $750 per hour of legal services), incurred in working on, preparing for or defending such claim, it being agreed that the Trump Group will cooperate with the AG Group in all reasonable respects to cause the amount of such costs and fees, including its attorneys' fees and disbursements to be minimized ("Discovery Costs").  With respect to each Discovery Cost, until such time as such Discovery Cost has been paid over to the Trump Group, the members of the AG Group shall remain jointly and severally liable for such Discovery Cost, and the Trump Group may at its option pursue all legal remedies available to it

15

and/or withhold an amount equal to such unreimbursed Discovery Cost from any payments to be made by Trans-Resources pursuant to the Notes.

8. **Cooperation.**

(a) Each member of the AG Group shall take all actions necessary or desirable, as promptly as practicable and as may be requested by the Trump Group from time to time including, without limitation, testifying in the Orly Trust Action, to (i) effectuate the release of the AG Group Released Claims and to prevent or preclude any other person or entity from asserting, instituting or prosecuting, or encouraging, soliciting or cooperating with any other person or entity in asserting, instituting or prosecuting, any proceeding or claims against any of the Trump Group Released Parties with respect to any AG Group Released Claim or any other Claim relating in any way, directly or indirectly, to Trans-Resources or any of its direct or indirect subsidiaries, the ownership or acquisition of Trans-Resources shares, the control of Trans-Resources or any of its direct or indirect subsidiaries, records and documents (including but not limited to electronic files) in the possession, custody or control of Trans-Resources or any of its direct or indirect subsidiaries or the business or operations of Trans-Resources or any of its direct or indirect subsidiaries brought by any party without regard to whether such party is a signatory hereto and (ii) cause the Orly Genger 1993 Trust to release any and all claims against the Trump Group Released Parties, including, without limitation, any claims pending in the Orly Trust Action.

(b) As a condition to any settlement that any member of the AG Group shall enter into with any member of the Sagi Group, the AG Group parties to such settlement shall cause each Sagi Group party to such settlement to (i) dismiss with prejudice all pending claims, cross-claims and counter claims against any of the Trump Group Released Parties (as defined below)

16

and to provide the Sagi Group Release, and (ii) if the Orly Genger 1993 Trust is a party to such

settlement, cause it to agree in writing to become an AG Group member for purposes of

providing the indemnity contained in Paragraph 5. Likewise, as a condition to any agreement by

the AG Group to a replacement trustee for the Orly Genger 1993 Trust, the AG Group shall use

its best efforts to cause such trustee to agree in writing on behalf of the Orly Genger 1993 Trust

that it shall be a member of the AG Group for purposes of providing the indemnity contained in

Paragraph 5.

      (c)     Each member of the AG Group covenants that for so long as the indemnity

contained in Paragraph 5 remains in effect, he, she or it shall not contribute or deposit any

amounts, or permit to be contributed or deposited any amounts (including, without limitation,

any payments made under Paragraphs 2 and 3), to or with the Orly Genger 1993 Trust or to any

other trust or entity that any of them directly or indirectly controls or is or was established at

their direction, or that is or was established or exists for any of their direct or indirect benefit,

unless such trust or entity has agreed in writing to being a member of the AG Group for purposes

of providing the indemnity contained in Paragraph 5. The foregoing shall not restrict members

of the AG Group from investing in or with such entities provided that that such investment may

be liquidated, without restriction, by such member of the AG Group from time to time as may be

necessary to comply with the terms of the indemnity contained in Paragraph 5.

      (d)     The AG Group covenants that, subject to any confidentiality orders of any court

or other restrictions imposed by law (i) with respect to any court filing made or received by it

concerning the Orly Genger 1993 Trust, it shall contemporaneously provide a copy thereof to the

Trump Group, and (ii) contemporaneously with its becoming aware of any changes or

17

contemplated material changes to the Orly Genger 1993 Trust including, without limitation, the resignation of its trustee and/or the appointment of a replacement trustee, it shall provide written notice thereof to the Trump Group.

        9. **Confidentiality.**  The Parties and their counsel shall not disclose the terms of this Agreement, except if, upon written advice of counsel, it is required to do so by law. Notwithstanding the foregoing, disclosure may be made by the Parties: (i) to their respective accountants, financial advisors or attorneys (collectively, "Advisors") as required to obtain tax or legal advice, it being agreed that each Party shall apprise its Advisors of the obligation to maintain such confidentiality and that each Party shall be accountable for any breach of this provision by its respective Advisors, and (ii) notwithstanding anything to the contrary in this Agreement, the Parties may disclose the terms of this Agreement if necessary in any action to enforce this Agreement or as may be required to respond to a valid subpoena, court order or other legal process.  Each Party agrees that he, she or it will promptly give notice of any attempt to compel disclosure of the terms of this Agreement to each of the other Parties, at least five (5) days before compliance is required.

        10.    **Third Party Beneficiaries.**  This Agreement shall have no third party beneficiaries except for those persons and entities that are not Parties hereto but are covered by the releases set forth in Paragraph 6 above, who may enforce those releases.

        11.    **Binding Effect**

This Agreement shall be binding upon and inure to the benefit of each of the Parties hereto and (where applicable) their respective current and former agents, representatives, officers, directors, advisors, employees, general partners, limited partners, shareholders, members, subsidiaries and

18

affiliates, and each of their respective predecessors, successors, heirs, executors, administrators and assigns.

12.    **Representations and Warranties.**

(a)    Each Party represents that it, he or she is authorized to enter into this Agreement and to grant the rights granted by it, him or her in this Agreement.  Each Party further represents that, to the extent any non-party consents are required for the performance of any of its, his or her obligations under this Agreement (including, without limitation, with any entity controlled by any Party, including any of its partners or equity holders), it, he or she has obtained such consents.

(b)    Each Party has the benefit of the advice of counsel chosen and employed by it, him or her concerning this Agreement.

(c)    Each Party is the sole owner and holder of the Claims it is releasing under this Agreement, and represents that none of the Claims released herein have been assigned, pledged, encumbered, or otherwise transferred in whole or in part, to any other person or entity.

(d)    Each member of the AG Group represents that he, she or it is knowledgeable, sophisticated and experienced in business, financial and other matters relevant to his, her or its entry into this Agreement and the transactions contemplated hereby, and has engaged advisors, experienced in the matters contemplated by this Agreement.  Each member of the AG Group has undertaken such investigation and has been provided with and has evaluated such documents and information as he, she or it has deemed necessary to enable him, her or it to make an informed decision with respect to the execution, delivery and performance of this Agreement and the transactions contemplated hereby.  Each member of the AG Group is

19

consummating the transactions contemplated hereby without reliance upon any express or

implied representations or warranties of any nature, whether in writing, orally or otherwise, made

by or on behalf of or imputed to any of the Trump Group Released Parties, except as expressly

set forth in this Agreement, and no member of the AG Group shall make any Claim with respect

thereto. Each member of the AG Group acknowledges that he, she or it is taking full

responsibility for making his, her or its own evaluation of the adequacy and accuracy of all

documents or information that may have been furnished to him, her or it, and that no member of

the AG Group shall have any Claim against any of the Trump Group Released Parties with

respect thereto, including for Claims relating to the accuracy or completeness of the information

that may have been furnished to him her or it. Each member of the AG Group acknowledges and

understands that each member of the Trump Group Released Parties expressly disclaims any and

all liability that may be based on any of the documents and information that may have been

furnished to any member of the AG Group and all liability based on such documents or

information or errors therein or omissions therefrom. Accordingly, each member of the AG

Group acknowledges that none of the Trump Group Released Parties has made any

representation or warranty with respect to (i) any historical information, financial or otherwise,

including without limitation results of operations (or any component thereof), cash flows, or

financial condition (or any component thereof), of Trans-Resources and/or any of its subsidiaries,

(ii) any valuations or projections or estimates of future revenues, future results of operations (or

any component thereof), future cash flows or future financial condition (or any component

thereof) of Trans-Resources and/or any of its subsidiaries or the future business and operations of

Trans-Resources and/or any of its subsidiaries, (iii) any Claims any member of the AG Group

20

may have against any of the Trump Group Released Parties or (iv) any other information or documents that may have been made available to any member of the AG Group or their respective counsel, accountants or advisors with respect to any of the Trump Group Released Parties any of their respective businesses, assets, liabilities or operations, except as expressly set forth in this Agreement. In addition to the foregoing, each member of the AG Group acknowledges that his, her or its entry into this Agreement and the transactions contemplated hereby is based solely on his, her or its respective assessment and valuation of all Claims that he, she or it may have against any of the Trump Group Released Parties and the likelihood of success of such Claims in a court of competent jurisdiction. Each member of the AG Group acknowledges that the consideration to be received by the AG Group pursuant to this Agreement constitutes full and fair consideration for the release of all Claims contemplated hereunder.

(e)     Each member of the Trump Group represents that he, she or it is knowledgeable, sophisticated and experienced in business, financial and other matters relevant to his, her or its entry into this Agreement and the transactions contemplated hereby, and has engaged advisors, experienced in the matters contemplated by this Agreement. Each member of the Trump Group has undertaken such investigation and has been provided with and has evaluated such documents and information as he, she or it has deemed necessary to enable him, her or it to make an informed decision with respect to the execution, delivery and performance of this Agreement and the transactions contemplated hereby. Each member of the Trump Group is consummating the transactions contemplated hereby without reliance upon any express or implied representations or warranties of any nature, whether in writing, orally or otherwise, made by or on behalf of or imputed to any of the AG Group Released Parties, except as expressly set forth in this

21

Agreement, and no member of the Trump Group shall make any Claim with respect

thereto. Each member of the Trump Group acknowledges that he, she or it is taking full

responsibility for making his, her or its own evaluation of the adequacy and accuracy of all

information that may have been furnished to him, her or it, and that no member of the Trump

Group shall have any Claim against any of the AG Group Released Parties with respect thereto,

including for Claims relating to the accuracy or completeness of the information that may have

been furnished to him her or it. Each member of the Trump Group acknowledges and

understands that each member of the AG Group Released Parties expressly disclaims any and all

liability that may be based on any of the documents and information that may have been

furnished to any member of the Trump Group and all liability based on such documents or

information or errors therein or omissions therefrom. Accordingly, each member of the Trump

Group acknowledges that none of the AG Group Released Parties has made any representation or

warranty with respect to (i) any historical information, financial or otherwise, including without

limitation results of operations (or any component thereof), cash flows, or financial condition (or

any component thereof), of Trans-Resources and/or any of its subsidiaries, (ii) any valuations or

projections or estimates of future revenues, future results of operations (or any component

thereof), future cash flows or future financial condition (or any component thereof) of Trans-

Resources and/or any of its subsidiaries or the future business and operations of Trans-Resources

and/or any of its subsidiaries, (iii) any claims any member of the Trump Group may have against

any of the AG Group Released Parties or (iv) any other information or documents that may have

been made available to any member of the Trump Group or their respective counsel, accountants

or advisors with respect to any of the AG Group Released Parties any of their respective

22

businesses, assets, liabilities or operations, except as expressly set forth in this Agreement. In addition to the foregoing, each member of the Trump Group acknowledges that his, her or its entry into this Agreement and the transactions contemplated hereby is based solely on his, her or its respective assessment and valuation of all Claims that he, she or it may have against any of the AG Group Released Parties and the likelihood of success of such Claims in a court of competent jurisdiction. Each member of the Trump Group acknowledges that the consideration to be received by the Trump Group pursuant to this Agreement constitutes full and fair consideration for the release of all claims contemplated hereunder.

13.     **Attorneys' Fees.** The Parties agree to be responsible for their own attorneys' fees and costs incurred in connection with this Agreement and negotiations related to and preparation of this Agreement and not to seek from each other reimbursement of any such costs, expenses or attorneys' fees.

14.     **Governing Law.**

This Agreement, and all disputes arising under this Agreement or related thereto, shall be governed by, construed and interpreted in accordance with the laws of the State of Delaware, applicable to instruments made, delivered and performed entirely in such state, without regard to the choice of law provisions thereof.

15.     **Arbitration.** UNLESS THIS AGREEMENT SPECIFICALLY PROVIDES FOR ANOTHER TYPE OF DISPUTE RESOLUTION WITH RESPECT TO A PARTICULAR KIND OF DISPUTE, ANY AND ALL CONTROVERSIES AND CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH, TERMINATION OR VALIDITY THEREOF, SHALL BE EXCLUSIVELY SETTLED BY FINAL AND BINDING

23

being given a limited number of strikes, except for cause.  Any arbitrator appointed by the AAA shall be a retired judge that presided over a state or federal court located in Delaware or a practicing attorney licensed in Delaware with no less than fifteen years of experience with large commercial cases.  Any such arbitration proceedings shall be and remain confidential.  The place of arbitration shall be in Manhattan, New York or elsewhere if otherwise agreed to.

(c)     Discovery will be limited to the request for and production of documents, directly related to the issues in dispute, limited depositions of limited duration, and interrogatories.  Interrogatories will be allowed only as follows: a Party may request the other Party to identify by name, last known address and telephone number (i) all persons having knowledge of facts relevant to the dispute and a brief description of that person's knowledge, and (ii) any experts who may be called as an expert witness, the subject matter about which the expert is expected to testify, the mental impressions and opinions held by the expert and the facts known by the expert.  All issues concerning discovery upon which the parties cannot agree will be submitted to the arbitrator for determination.

(d)     Each of the Parties agrees that it will use commercially reasonable efforts to join (and will allow the other party to join) any third party that the Parties have agreed is indispensable to the arbitration.  If any such third party does not agree to be joined, the arbitration will proceed nonetheless.

(e)     The arbitrators are not empowered to award damages not permitted by the terms of this Agreement and if so permitted, then not in excess of compensatory damages, except with respect to indemnification obligations for punitive damages as provided hereunder, and

25

each Party irrevocably waives the right to recover punitive, exemplary or multiple damages with respect to any dispute other than with respect to indemnification obligations for such punitive damages as provided hereunder. The decision of, and award rendered by, the arbitrator will be final and binding on the Parties, will be in writing and will include the findings of fact and conclusions of law upon which it is based, if any.

(f)     The Parties specifically acknowledge that this Agreement evidences a transaction involving, affecting, affected by, and a part of, interstate commerce and that this agreement to arbitrate is governed by and enforceable under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.

(g)     Except to the extent that any of the indemnification provisions contained herein shall be applicable (i) the Parties shall each be responsible for their own costs and expenses (including legal fees and disbursements) incurred in any arbitration, and (ii) the AG Group on the one hand and the Trump Group on the other shall each be responsible for 50% of the fees and disbursements of the arbitrator and of any costs and expenses payable to the AAA.

(h)     With respect to the enforcement, modification or vacating of any arbitration award (it being reconfirmed hereby that the arbitration award shall itself be final and binding on the Parties), the Parties submit to the exclusive jurisdiction of one or the other of (i) the United Stated District Court of the Southern District of New York sitting in the Borough of Manhattan in the City of New York and (ii) the Commercial Division of the New York State Supreme Court sitting in the Borough of Manhattan in the City of New York.

16.     **Notice.** If any Party is required to give notice to any other Party under this Agreement, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery, one business day following its being sent to the recipient via Federal Express or another

26

nationally recognized over-night courier,  or by e-mail with confirmation of receipt to the following individuals or to such other address or person as such Parties may from time to time specify by written notice given in the manner provided above:

**If to the Trump Group:**

Mark S. Hirsch, Esq.

The Trump Group

41 Madison Avenue, Suite 4101

New York, NY 10010

Phone: (212) 838-1000

E-mail: mhirsch@trumpgroup.com

**With Copy to:**

Thomas J. Allingham II, Esq.

Anthony W. Clark, Esq.

Douglas D. Herrmann, Esq.

Skadden, Arps, Slate, Meagher & Flom LLP

One Rodney Square

P.O. Box 636

Wilmington, DE 19899

Phone: (302) 651-3000

E-mail:  thomas.allingham@skadden.com

27

E-mail: anthony.clark@skadden.com

E-mail: douglas.herrmann@skadden.com

**If to Arie Genger:**

Arie Genger

104 West 40th Street, 19th Floor

New York, NY 10018

E-mail: wachtel@wmllp.com

**With Copy to:**

Stephen P. Lamb, Esq.

Paul Weiss

500 Delaware Avenue, Suite 200

Wilmington, DE 19889

**If to Orly Genger:**

Orly Genger

104 West 40th Street, 19th Floor

New York, NY 10018


E-mail: wachtel@wmllp.com

**With Copy to:**

28

William Wachtel

Wachtel Masyr & Missry LLP

885 second ave.

New York, NY 10017


[]


**If to Arnold Broser or David Broser:**

David Broser

104 West 40th, 19th FloorNew York, NY 10018

E-mail:  wachtel@wmll.com

**With Copy to:**

William Wachtel

Wachtel Masyr & Missry LLP

885 second ave.
New York, NY 10017

29

17.    **Entire Agreement.** This Agreement contains the entire agreement between the Parties concerning the subject matter hereof. Neither this Agreement nor any of its terms or provisions shall be binding on any Party until all the Parties hereto have signed. The Parties agree that all drafts of this Agreement are strictly confidential and shall supplement and complement any protection, which may attach to the exchange of confidential information in settlement discussions, whether by common law or statute including, but not limited to, Federal Rule of Evidence 408 and comparable state laws. Any and all prior discussions and agreements between the Parties concerning the subject matter of this Agreement are merged into this Agreement when signed. This Agreement may not be modified or amended, nor any of its provisions waived, except by an instrument in writing signed by all Parties. No Party has made any warranty or representation to the other Parties that is not set forth expressly herein. In entering into this Agreement, no Party has relied on any statement or representation made by or on behalf of any other Party, by or on behalf of any affiliate of such other Party, or by counsel for such other Party that is not set forth expressly in this Agreement.

18.    **No Drafting Presumption.** This Agreement shall be interpreted or construed without any presumption that the provisions hereof should be strictly construed against the drafter, it being agreed that the Parties and their respective counsel and other agents have fully and equally participated in the preparation, negotiation, review and approval of all provisions of this Agreement.

19.    **No Admissions.** The Parties have executed this Agreement for the sole purpose of settling and disposing of all Claims between them, and it is expressly understood and agreed that no Party hereto admits any wrongdoing on its, his or her part by executing this Agreement.

30

20.    **Binding Effect.** It is the intention of the parties to extinguish all AG Group Released Claims and all Trump Group Released Claims and, consistent with such intention, each of the Parties hereby waives any and all rights, to the extent permitted by law, to assert that the Release provided by it in Paragraph 6 hereunder is unenforceable as to any claim whatsoever and for any reason including, without limitation, any and all rights under section 1542 of the California Civil Code, if applicable, or any other applicable similar law or principle of common law, which may have the effect of limiting the Releases herein. Section 1542 of the California Civil Code provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

21.    **Headings.** The section headings contained in this Agreement are for reference purposes only and shall not in any way effect or control the meaning or interpretation of this Agreement.

22.    **Execution in Counterparts and by PDF e-mail.** This Agreement may be executed in multiple counterparts and by fax or PDF e-mail, each of which, when so executed and delivered, shall be an original, but such counterparts shall together constitute one and the same instrument and agreement.

23.    **Effective Date.** This Agreement shall be effective immediately upon execution and delivery by all Parties hereto (the "Effective Date").

31

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be duly executed as follows:

**TR Investors, LLC**                          **Arie Genger**

By: _____

Print: _____       Date: ___6/15/13___

Title: _____

Date: _____


**Glenclova Investment Co.**                **Orly Genger (in her individual capacity and**

**in her capacity as beneficiary of the**

By: _____        **Orly Genger 1993 Trust)**

Print: _____

Title: _____

Date: ___6/15/13___

Date: _____

32

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as follows:

**TR Investors, LLC**                                    **Arie Genger**

By: _~Mark S Hirsch~_                    _____

Print: MARK J. HIRICH                    Date: _____

Title: Executive VP/General Counsel

Date: June 16, 2013


**Glenclova Investment Co.**                    **Orly Genger (in her individual capacity and**

                                                **in her capacity as beneficiary of the**

By: _~Mark S Hirsch~_                    **Orly Genger 1993 Trust)**

Print: MARK S. HIRICH

Title: Executive VP/General Counsel        _____

Date: June 16, 2013                      Date: _____

**New TR Equity I, LLC**

By: _____

Print: _____

Title: _____

Date: _____

**Arnold Broser**

_(signature)_

Date: ____6/11/13____

**New TR Equity II, LLC**

By: _____

Print: _____

Title: _____

Date: _____

**David Broser**

_(signature)_

Date: ____6/16/13____

33

**New TR Equity I, LLC**                    **Arnold Broser**

By: _Mark S Hirsch_____                    _____

Print: _MARK S. Hirsch_____                   Date: _____

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_____


**New TR Equity II, LLC**                   **David Broser**

By: _Mark S Hirsch_____                    _____

Print: _MARK S. Hirsch_____                   Date: _____

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_____

33

**Trans-Resources, LLC**

By: _Mark S Hirsch_

Print: _MARK S. HIRSCH_

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_

34

**Jules Trump**

_____

Date: __6 | 16 | 2013__

**Eddie Trump**

_____

Date: _____

**Mark Hirsch**

_____

Date: _____

35

**Jules Trump**

_____

Date: _____


**Eddie Trump**

_____

Date: June 16, 2013


**Mark Hirsch**

_____

Date: _____

35

**Jules Trump**

_____

Date: _____

**Eddie Trump**

_____

Date: _____

**Mark Hirsch**

_~~Mark Hirsch~~_ _____

Date: _June 16, 2013_____

35

EXHIBIT A

*6/16/13*
*Draft - Confidential*

## [FORM OF SUBORDINATED NOTE]

**THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY APPLICABLE STATE SECURITIES LAWS AND MAY NOT BE SOLD OR TRANSFERRED WITHOUT COMPLIANCE WITH THE REGISTRATION OR QUALIFICATION PROVISIONS OF APPLICABLE FEDERAL AND STATE SECURITIES LAWS OR APPLICABLE EXEMPTIONS THEREFROM.**

TRANS-RESOURCES

**SUBORDINATED NOTE**

$7,500,000.00                                                        June __, 2013

      **FOR VALUE RECEIVED**, Trans-Resources, LLC a Delaware entity (the successor to Trans-Resources, Inc. and referred to herein as the "Maker"), hereby promises to pay to the order of [_____] (the "Payee"), the principal sum of Seven Million, Five-Hundred Thousand Dollars ($7,500,000.00) pursuant to the terms and conditions of and at the times provided in the Settlement Agreement (as defined below).

      1.   Notes. This Subordinated Note (this "Note") is issued pursuant to, and is subject to the terms and conditions of, the Settlement Agreement and Release, dated as of June __, 2013 by and among the AG Group and the Trump Group, as amended, restated, supplemented or otherwise modified from time to time (the "Settlement Agreement"). Terms used herein and not otherwise defined herein shall have the respective meanings ascribed thereto in the Settlement Agreement.

      2.   No Interest. This Note will not accrue interest, pursuant to the terms of the Settlement Agreement.

      3.   Maturity. Subject to the terms and conditions of the Settlement Agreement and this Paragraph 3, this Note shall mature and be redeemed or satisfied in full by the Maker in one installment, which shall be paid by the Maker no later than the ___ anniversary of the Effective Date (the "Maturity Date"). Notwithstanding the foregoing, the Maturity Date shall automatically be extended until the earlier (the "Extended Maturity Date") of (i) such time as all pending claims, cross-claims and counter-claims brought by any of TPR, Sagi Genger, the Sagi Genger 1993 Trust, the Orly Genger 1993 Trust (other than the Orly Trust Action), D&K Limited Partnership, D&K GP LLC, Rochelle Fang, and/or David Parnes (collectively, the "Sagi Group") against any member of the Trump Group have been dismissed with prejudice and the statute of limitations shall have run with respect to any other potential claims of the Sagi Group that might be the subject of the indemnification obligations provided for by Paragraph 5 of the Settlement Agreement and (ii) such time as each member of the Sagi Group shall have provided the Trump Group with a release of the Trump Group Released Parties and covenant not to sue in form and substance that is the same as the AG Group Release and covenant not to sue contained in Paragraph 6(a) of the Settlement Agreement. Subject to the foregoing, this Note shall become immediately due and payable upon the occurrence of any transaction or series of transactions which shall result in the Trump Group owning or controlling neither (i) a majority of the voting stock of Trans-Resources or its successors or each of its two principal subsidiaries, Haifa

Chemicals, Ltd. and Na-Churs Plant Food Company or their successors, nor (ii) directly or indirectly, a majority of the assets currently owned by Trans-Resources and its subsidiaries; provided, however, that in such event, at the request of the Trump Group, the amounts then payable on this Note shall be placed in escrow until the Maturity Date or until the Extended Maturity Date (if applicable) under the provisions of an escrow agreement on reasonable terms to be negotiated at such time in good faith between the Maker, the Payee and an escrow agent selected by mutual consent of the Maker and the Payee (such consent, not to be unreasonably withheld, conditioned or delayed), which shall provide for the release of funds from such escrow to the Maker in satisfaction of any and all Indemnification Amounts, AG Group Release Amounts and Discovery Costs owing to Maker, if any, and payment to the Payee of any amounts remaining in escrow after payment to Maker of all Indemnification Amounts, AG Group Release Amounts and Discovery Costs, if any, upon the Maturity Date hereunder or the Extended Maturity Date (if applicable).

4.    Optional Prepayments.  The Maker may voluntarily prepay this Note prior to the Maturity Date, in whole or in part, at any time, without premium or penalty.

5.    Adjustment.  In accordance with the terms of the Settlement Agreement, in the event that at any time Indemnification Amounts, Discovery Costs, AG Group Release Amounts, or other amounts due and payable by the AG Group to the Trump Group pursuant to the Settlement Agreement (the "Costs") have not been paid to the Trump Group in accordance with the terms of the Settlement Agreement, the Maker may, upon written notice to the Payee, set off and apply as a credit against the amount due under this Note any and all due, unpaid and outstanding Costs.  The rights and remedies described herein are in addition to any other rights and remedies the Parties may have under the Settlement Agreement or other applicable law.

6.    Subordination.  Pursuant to the terms of the Settlement Agreement, this Note is unsecured and shall be fully subordinated to any obligation of Trans-Resources, including, but not limited to, outstanding credit facilities, bonds, loans, tax obligations and payables.

7.    Enforcement.  The Maker hereby agrees to pay on demand all reasonable costs and expenses, including without limitation attorneys' fees and costs of collection, incurred or paid by the Payee in enforcing this Note in accordance with the Settlement Agreement.

8.    Amendments.  No failure or delay on the part of the Maker or the Payee in exercising any right, power, privilege or remedy shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power, privilege or remedy preclude any other or further exercise thereof or the exercise of any other right, power, privilege or remedy.  This Note may not be amended and the provisions hereof may not be waived, except in accordance with the terms of the Settlement Agreement.

9.    Lost Notes, etc.  If this Note is mutilated, destroyed, lost or stolen, upon receipt of evidence satisfactory to the Maker of such loss, theft, destruction or mutilation of this Note and, if requested in the case of any such loss, theft or destruction, upon delivery of an indemnity agreement reasonably satisfactory to the Maker, or, in the case of any such mutilation, upon surrender and cancellation of this Note, the Maker shall issue a new Note of like tenor and amount, in lieu of this Note.

- 2 -

Error! Unknown document property name.

10.     ASSIGNMENT.  THIS NOTE, INCLUDING THE RESPECTIVE RIGHTS AND OBLIGATIONS OF THE MAKER AND THE PAYEE PURSUANT THIS NOTE, MAY NOT BE ASSIGNED, TRANSFERRED, SOLD OR OTHERWISE DISPOSED OF BY EITHER THE MAKER OR THE PAYEE WITHOUT THE PRIOR WRITTEN CONSENT OF THE OTHER WHICH CONSENT MAY BE WITHHELD IN SUCH PARTY'S SOLE DISCRETION.

11.     Binding Effect.  The provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns permitted hereby.

*[signature page follows]*

- 3 -

Error! Unknown document property name.

**IN WITNESS WHEREOF**, the Maker has caused this Subordinated Note to be duly executed under seal on the date set forth above by a duly authorized representative of the Maker.

TRANS-RESOURCES, LLC

By:_____
    Name:
    Title:

4