SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------------
In the Matter of DALIA GENGER, trustee of the OLRY
GENGER 1993 TRUST,

                              Petitioner,

         -against-                                    File No. 2008-0017E

ORLY GENGER, ARIE GENGER, GLENCOVA INVESTMENT
COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC,      Hon. Nora S. Anderson
NEW TR EQUITY II, LLC, TRANS-RESOURCES, INC, ARNOLD
BROSER, DAVID BROSER, JOHN DOES 1-20 AND JANE
DOES 1-20,
                              Respondents.
-------------------------------------------------------------------------------

MEMORANDUM OF LAW IN OPPOSITION
TO RESPONDENTS' MOTIONS TO DISMISS
AND IN SUPPORT OF PETITIONER'S
CROSS-MOTION



Judith Bachman, Esq.
The Bachman Law Firm
Attorney for Petitioner
254 S. Main Street, Suite 306
New City, New York 10956
845-639-3210

Table of Contents

Table of Authorities                                                                                     ii

Preliminary Statement                                                                                    1

Background Facts and Procedural History                                                                  1

    Argument

        Point I     Court Delay in Issuing Citation
                    does not Require Dismissal of Proceeding
                    for Late Service or Statute of Limitations Issues          9

        Point II    Service of a Copy of the Petition
                    is Not Required                                            12

        Point III  Service was Proper and if it Was Not
                    an Extension of Time Should be Granted                     13

        Point IV  There is No Duplicative Prior Action Pending
                    Because there are Different Parties and Different Claims    14

        Point V   Doctrines of Res Judicata/Collateral Estoppel
                    Do Not Bar Turnover Proceeding
                    Because No Court Has Ever Ruled on
                    the Disposition of the Settlement Proceeds                 17

        Point VI  The Claims in the Turnover Proceeding
                      Are Pled Sufficiently

                    A.  Breach of Fiduciary Duty                              21

                    B.  Claims of Tortious Interference Are Well Pled          26

                    C.  Claims of Money Had and Received are Well Pled         27

        Point VII Petitioner's Cross-motion for
                    the Appointment of a Guardian Ad Litem and a
                    Supplemental Citation                                      27

        Point VIII  Sanctions against Petitioner and/or Petitioner's Counsel
                    are Unwarranted and Improper                              28

Conclusion                                                                                               29

Table of Authorities

Brown v. Ingersoll, 226 N.Y.S.2d 479 (Sup. Ct. Monroe Cnty. 1962)                                10

Burke v. Nationwide Ins. Co., 108 A.D.2d 1098, 485 N.Y.S.2d 666 (3d Dep't 1985)         11

Chinatown Apartments, Inc. v. New York City Transit Authority,
100 A.D.2d 824 (3rd Dep't 1984)                                                                                    16

Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949)                                        21, 23

Clarke v. Greenberg, 296 N.Y. 146 , 71 N.E.2d 443 (1947)                                         18, 21

DDJ Management LLC v. Rhone Group LLC,
78 A.D.3d 442, 911 N.Y.S.2d 7 (1st Dep't 2010)                                                         25

Gusinsky v. Bailey,
21 Misc.3d 1107(A), 873 N.Y.S.2d 234 (Table) (Sup. Ct. N.Y. Cnty. 2008),
rev'd on other grounds, 66 A.D.3d 614, 887 N.Y.S.2d 585 (1st Dep't 2008)             21

Hess v. Hess, 233 N.Y. 164 (1922)                                                                                    27

In re Bradley, 70 Hun. 104, 109 (Sup. Ct. Gen. Term 5th Dep't 1893)                        10

In re DeRidder's Will, 183 A.D.657, 170 N.Y.S. 756 (1918)                                          9

In re Estate of Lange, 72 Misc. 437, 16 N.Y.S. 312 (Surr. Ct. N.Y. 1939)                   10

In re Estate of Van Vleck, 32 Misc. 419, 66 N.Y.S. 727 (Surr. Ct. N.Y 1900)            10

In re Gouraud, 95 N.Y. 256, 261 (1884)                                                                          10

In re Hoerter, 15 Misc.3d 1101(A) (Sup. Ct. Nassau County 2007)                              22

In re Nyenhuis, 225 A.D.2d 395 (1st  Dep't 1996)                                                          22

In re Peter's Will, 20 Misc. 2d 1082, 195 N.Y.S.2d 325 (Surr. Ct. 1959)                     11

In re Phalen's Will, 4 N.Y.S. 408 (Sup. Ct. N.Y. Gen. Term 1st Dep't 1889)              10

Island Properties, LLC v. Calabretta,
Index No. 2011-33520 (Sup. Ct. Nassau Cnty. Dec. 14, 2011)                                    16

James ex rel. National Arts Club v. Bernhard,
34 Misc.3d 1242(A), 950 N.Y.S.2d 608 (Sup. Ct. N.Y. Cnty. 2012)                          16

Kronish Live Weiner & Hellman LLP v. Tahair, Ltd.,
35 A.D.3d 317, 829 N.Y.S.2d 7 (1st Dep't 2006)                                                          26

Luxury Autos of Huntington, Inc. v. Volkswagen Group of Am., Inc.,
49 Misc.3d 1207(A), 26 N.Y.S.3d 725 (Sup. Ct. Nassau Cnty. 2015)  26

Mideal Homes Corp. v. L & C Concrete Work, Inc., 90 A.D.2d 789 (2d Dep't 1982) 16

Monaghan v. Ford Motor Co., 71 A.D.3d 848, 897 N.Y.S.2d 482 (2d Dep't 2010) 25

Mokhiber v. Cohn, 783 F.2d 26 (2d Cir. 1986)  17, 21

Ovari v. Maultasch, 17 Misc.2d 597, 182 N.Y.S.2d 871 (Sup. Ct. N.Y. 1959) 11

Pludeman v. Northern Leasing Systems, Inc.,
40 A.D.3d 366, 837 N.Y.S.2d 10 (1st Dep't 2007),
aff'd, 10 N.Y.3d 486, 890 N.E.2d 184, 860 N.Y.S.2d 422  (2008)  24

Toulouse v. Chandler,
5 Misc. 3d 1005(A), 798 N.Y.S.2d 714 (Sup. Ct. Westchester Cnty. 2004) 15

Whitney v. Whitney, 57 N.Y.2d 731 (1982)  16

Rules of Procedure

CPLR 306(b)  passim

CPLR 2103(b)  13

CPLR 3016(b)  24

CPLR 3211(a)(4)  14, 16

SCPA § 301(b)  passim

SCPA §311  27

SCPA §312  27

SCPA §315  27

SCPA §402  27

SCPA §403  27

SCPA § 2106  27

Preliminary Statement

Petitioner Dalia Genger ("Dalia" or "Petitioner"), trustee of the Orly Genger 1993 Trust ("Orly Trust"), opposes the respondents' respective motions to dismiss Dalia's turnover proceeding ("Turnover Proceeding") because Dalia must be allowed to protect the Orly Trust and the proceeding is timely, the citation was properly served, and the claims are well pled.

To the extent necessary, Dalia also cross-moves for (i) an extension of time to serve process and/or permission to make substituted service (or nunc pro tunc) and to file an affidavit of service, (ii) the appointment of a Guardian ad Litem for Orly's infant daughter and unborn children and the issuance of a supplemental citation, and (iii) to consolidate this turnover proceeding with the removal proceeding also pending in this Court.

Background Facts and Procedural History

On or around December 13, 1993, Arie Genger ("Arie") settled the Orly Trust pursuant to a written Trust Agreement executed by Arie, as Grantor, and the two prior Trustees, Lawrence M. Small and Sash A. Spencer (the "Trust Agreement"). Turnover Proceeding Petition ("P.") ¶6, Ex. 1.

Orly Genger ("Orly") is the beneficiary of the Orly Trust. Id., Ex. 1. Her daughter, and that of her attorney Eric Herschmann is also a beneficiary of the Orly Trust. Id. To complicate matters further, Mr. Herschmann (Orly's husband, father of her child, and her attorney), is also representing Arie in another one of the Genger family litigations; and presumably being paid to do so, perhaps using the settlement proceeds, discussed below.

Dalia is the trustee of the Orly Trust. Dalia and Arie set up the Orly Trust as part of their effort to safeguard assets for their daughter and their grand-children. Specifically, pursuant to Article ELEVENTH, Section C of the Trust Agreement, all trust funds are to be held in the name of the Orly Trust, and no Orly Trust assets are to be used for the benefit of Orly's creditors (the

1

"Trust Agreement Obligations"). P. ¶ 7. This is in place to protect Orly and her children against the reach of creditors and misguided financial choices. This is at the heart of every trust, including the Orly Trust.

In July 2010, Orly instituted a derivative action in the Supreme Court, New York Cnty. entitled Arie Genger, et al. v. Sagi Genger, et al., Index No. 651089/2010, by which she brought claims "on behalf of the Orly Trust as the beneficiary of the Orly Trust" (the "Orly Trust Derivative Litigation"). P. ¶ 9. The Complaint sought to assert claims for the Orly Trust's ownership in shares of stock in a company called Trans-Resources, Inc. ("TRI"). Orly later amended her pleading to assert claims against, inter alia, the purchasers of those TRI shares, Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, and New TR Equity II, and TRI (collectively "TR"). P., Ex. 2.

As Orly declared in the second paragraph of her derivative complaint (P.2, Ex. 2), she brought "this action on behalf of the Orly Trust as the beneficiary of the Orly Trust to protect her interests thereunder." (Id. at 1, emphases added.). Although Orly purported to also bring claims in her "individual capacity," the only harm she identified in her Complaint is to the Orly Trust. As she described her own "NATURE OF THE CASE" in her Complaint:

> In this case, Plaintiffs Arie and Orly, in her individual capacity and on behalf of the Orly Trust, are seeking declaratory, injunctive, and other equitable relief, as well as additional compensatory damages in an amount yet to be determined arising from, inter alia, the loss of Arie's voting control of TRI and the tortious conduct of the defendants as set forth herein, in connection with the Trump Parties' campaign to take over and dilute the value of plaintiffs' interests in TRI, a company founded by Arie nearly three decades ago, including the defendants' wrongful, concerted efforts to strip Arie of his ownership and control of 52.85% of the shares of TRI's common stock, including the Orly Trust's interest in a portion of this TRI stock, and to oust Arie from his management control of TRI—all in an audacious series of breaches of contractual, fiduciary and legal obligations giving rise to each of the causes of action alleged in this Complaint.

NYSCEF Doc. No. 112 at 4.

It is undisputed that Orly has never had a direct interest in TRI stock. Her only interest was an indirect one as a beneficiary of the Orly Trust, which bought TRI shares in 2004 from TPR Investment Associates, Inc.  Accordingly, her claims in her Complaint were exclusively derivative in nature. Logically then, on January 2, 2013, in the Orly Trust Derivative Litigation, Justice Jaffe of the Supreme Court, New York Cnty. adopted Orly's position that she "has legal standing to represent the Orly Trust" and "may act on behalf of the Orly Trust unless and until the Surrogate's Court rules otherwise in an appropriate action there." P. ¶ 10.

Earlier on in the same Orly Trust Derivative Litigation, Orly moved to restrain Dalia from pursuing what Orly characterized as a "duplicative" action as Trustee of the Orly Trust before the Delaware Chancery Court, by which Dalia was seeking a declaration to obtain ownership of the same TRI shares. P. ¶ 11. According to Orly: "[i]n the instant action ..., I seek, among other things, the return of those [same] TRI Shares to the Orly Trust." Also, according to Orly, Dalia's "contention that the Orly Trust is not a party to this action ... is meritless. Orly is prosecuting this action on behalf of the Orly Trust." The Supreme Court, New York Cnty., agreed, restraining Dalia from pursuing the action in the Delaware Chancery Court by which the Orly Trust had sought the TRI shares. P., Ex. 4.

In June 2013, Orly disclosed that she had "entered into a confidential settlement agreement to resolve all issues among the stipulating parties," ("TR Settlement") which included the TR respondents. P. ¶ 14. However, the settlement terms were left undisclosed. Dalia sought production of the settlement agreement, but Orly refused to produce it, claiming the document was too "confidential." When it was proposed that the document be produced under "Attorney's Eye's Only" limitation, Orly refused that proposal as well. Instead, Orly submitted the Settlement Agreement to Justice Jaffe, unsolicited, for in camera inspection. Notwithstanding Orly's reluctance to produce the settlement agreement, it became clear, now as a In re collateral

3

estoppel, the Orly had settled both her direct claims and the derivative claims on behalf of the Orly Trust.

First, by letter dated June 28, 2013, counsel to TR wrote to the Court on behalf of all settling parties "including … Orly Genger" confirming that: "A material term of the agreement among the settling parties was the dismissal of *all* claims presently pending against one another, in whatever capacity they were brought. [If the settlement stipulation was drafted so as to] have the effect of *not* dismissing Orly Genger's derivative claim against [TR], contrary to the agreement of the settling parties. Excluding such claims from the claims that are to be dismissed is not what [TR] bargained and paid for in the settlement . . ." P. ¶ 15, Ex. 5. Neither Orly nor any of the other settling parties disagreed with counsel's statements regarding the scope of the settlement. P. ¶ 16. Accordingly, on July 1, 2013, Justice Jaffe signed the requested Stipulation and Order of Discontinuance with Prejudice.  P., Ex. 6.

Months later, as part of a parallel proceeding, the United States District Court directed Orly to produce her settlement agreement with TR. P. ¶ 17, Ex. 7. The document revealed that Orly had settled her claims against TR both "in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust" – the latter being the very capacity by which the Supreme Court permitted Orly to assert derivative claims. P. ¶ 17. According to its signatories, the purpose of the agreement was "to resolve all issues, disputes and disagreements between [Orly and the other Settling Parties], including but not limited to the issue of ownership of all [TRI] shares," most significantly those TRI shares claimed by the Orly Trust.

In exchange, TR agreed to pay $32.3 million ("Settlement Proceeds") to the so-called "AG Group," consisting of Orly, her father Arie, and Arnold and David Broser (collectively, "the Brosers"). P. ¶ 18. Upon information and belief, the Brosers are creditors of Orly personally or her father, to whom Orly and Arie owe many millions of dollars. The payments were broken up into: (a) an immediate payment of $17.3 million and (b) two follow-up payments of $7.5 million.

4

On May 15, 2014, U.S. District Judge Keenan held that: "Pursuant to [the TR] [S]ettlement, Orly acknowledged that [TR] is the record and beneficial owner of the Orly Trust Shares. ... At long last, the dispute regarding ownership of the Orly Trust Shares is over." P., Ex. 8. And moreover, "Orly monetized her beneficial interest in the Orly Trust['s] [TRI] shares for $32.3 million ...." Id.

TR has since reaffirmed that the federal court construed the TR Settlement correctly: [Any suggestion] that the confidential settlement agreement *might* only dismiss Orly's individual claims against [TR], but not resolve the Orly Trust's claims against [TR] and the TPR Group . . . is counterfactual. This Court has already held that certain of Orly's claims in this action, including the remaining claims, are derivative in nature, and may be maintained by Orly on behalf of the Orly Genger 1993 Trust. ... In settling the claims among them, [TR], Trans-Resources, Orly and Arie agreed to the dismissal of all claims presently pending against one another. This agreement is memorialized in the Second Amended Stipulation of Discontinuance. P. ¶ 19.

And in this Turnover Proceeding, TR has reaffirmed that the TR Settlement was as claims "brought by Orly, both individually and as beneficiary of the Trust." TR Brief, p. 5. And that the TR Settlement was made "in reliance upon the prior determination of the court that Orly, as beneficiary, was authorized to act on behalf of the Trust, that the TR Entities, Orly (both individually and as beneficiary of the Trust), and other parties entered in the Settlement Agreement and into the NY Dismissal with Prejudice." TR Brief, p. 6.

Evidencing this intent to settle the Orly Trust derivative claims, in Section 6(a) of the TR Settlement, Orly settled and released all of her claims in the TR Settlement in both her derivative and individual capacities. (Orly releasing the Trumps "in all capacities.") P. ¶ 18.

In Section 8(a) thereof, Orly further agreed to "cause" the Orly Trust to do the same, which she later did, advising the Delaware Chancery Court that she favored dismissal of Dalia's

action on behalf of the Orly Trust. To that end, Orly's attorneys issued an August 2013 directive to Dalia that Dalia should dismiss the Orly Trust's declaratory judgment action in Delaware Chancery Court, which Dalia had commenced seeking a judgment that the Orly Trust is the beneficial owner of the TRI shares. See Dalia Genger v. TR Investors, LLC, et al., C.A. No. 6906-CS (Del. Ch.). Orly's attorneys advised the Delaware Chancery Court that Orly was "acknowledg[ing] individually and in her capacity as the beneficiary of her trust that [TR] are the record and beneficial owners of the TRI shares which had been distributed to the Orly Trust." In other words, by virtue of her TR Settlement, Orly had mooted the Chancery Court proceeding. The case was dismissed. P. ¶ 20.

And most tellingly, under Section 8(b) of her settlement agreement, Orly agreed as a condition to any agreement by the AG Group to a replacement trustee for the Orly Trust to "use [her] best efforts to cause [any replacement] trustee to agree in writing on behalf of the Orly Genger 1993 Trust that it shall be a member of the AG Group for purposes of providing the indemnity contained in Paragraph 5."  P., Ex. 7.

At a hearing before Justice Jaffe on March 25, 2015, counsel to TR confirmed that $17.3 million of the Settlement Proceeds has already been paid, but that $15 million remains to be paid, less possible "set-offs" and subject to possible acceleration or extension of those payment dates. P. ¶ 22, Ex. 9, pp. 10-11.

None of the aforementioned Settlement Proceeds has been remitted to the Orly Trust, nor will any of the proceeds be in the future, per Section 8(b) of her settlement agreement. P., Ex. 7. Orly has testified that she has not personally received any of the Settlement Proceeds. P. ¶ 23.. This means $17.3 million of the Settlement Proceeds has been paid to other members of the "AG Group," i.e., the Brosers and Arie (the "Initial Payment"). P. ¶ 23.

This is exactly contrary to language and purposes of the Orly Trust, to protect her and her

Court to have the citation issued in this matter, including repeated phone calls, visits to the Clerk's office, emails, written correspondence, and affirmations. Bachman Aff. , ¶¶ 7-16. The file number of the Turnover Proceeding is 2008-0017/E.

While the Respondents knew this Petition was pending, Orly filed a petition to remove Dalia as trustee of the Orly Trust ("Removal Action"). Orly is doing so to satisfy her father's creditors and as she promised in the TR Settlement to "use [her] best efforts to cause [any replacement] trustee to agree in writing on behalf of the [Orly Trust] that it shall be a member of the AG Group for purposes of providing the indemnity contained in Paragraph 5." The Removal is filed under file number 2008-0017.

After a series of delays in the Surrogate's Court, the clerk finally issued the citation in this Turnover Proceeding. Bachman Aff. , ¶ 16. Immediately thereafter, Dalia's counsel arranged to serve the respondents in this Turnover Proceeding. Bachman Aff. , ¶ 17. Dalia's counsel did so, inter alia, by delivery of the citation to Orly's counsel (who had appeared in the Removal Action under the same file number) and by delivery to TR at their business address. Bachman Aff. , ¶ 18.

When Orly's counsel objected to the service upon them, in an abundance of caution, Dalia's counsel mailed the citation to Orly at her address in Texas. Bachman Aff. , ¶ 19. That address was one in which Orly had claimed a homestead exemption, owns a home, has a driver's license and votes.[1] Bachman Aff. , ¶ 19. Such service was made at a time immediately before the return date of the citation so that affidavit has not been filed with the Court. Bachman Aff. , ¶ 20.

---

[1] In an action in Federal Court, Orly has attempted to evade service claiming that she lives in Israel notwithstanding her definitive contacts in Texas. Bachman Aff. , ¶ 19.

On February 5, 2018, respondents Orly and TR, respectively, moved to dismiss the Turnover Proceeding on the grounds, inter alia, of delay and deficiencies in service, and other relief.

These motions are a smokescreen to block Dalia's efforts to ensure that the Settlement Proceeds go to their rightful place - - the Orly Trust.

Dalia therefore opposes these motions and, as necessary, cross-moves for (i) an extension of time to serve process and permission to serve substituted service (or nunc pro tunc) and file the affidavit of service, (ii) the appointment of a Guardian ad Litem for Orly's infant daughter and the issuance of a supplemental citation for that Guardian ad litem, and (iii) to consolidate this turnover proceeding with the Removal Proceeding with this Turnover Proceeding.

## Argument

## Point I

### Court Delay in Issuing Citation does not Require Dismissal of Proceeding for Late Service or Statute of Limitations Issues

The movants argue that the Turnover Proceeding should be dismissed because of a delay in serving the citation and a statute of limitations question.

What the movants conveniently ignore is that where, as here, the delay in serving the citation stems from the Court's own delay in *issuing* the citation, dismissal is not warranted.

That it took a significant period of time for the Clerk to issue the citation should not, and indeed cannot, result in the dismissal of the Turnover Proceeding. "The right to bring a legal action is never made dependent upon the will of a judicial officer." In re DeRidder's Will, 183 A.D.657, 658, 170 N.Y.S. 756, 766 (1918).

Indeed, how could the Petitioner's time to serve the citation run when she did not have the citation from the Court to serve? Obviously, this cannot be correct.

9

The triggering event requiring service of the citation is, and must be, the actual ***issuance*** of the citation, and not the filing of the Petition.

"It is claimed that the citation must be served within [120] days after the presentation of the petition. We do not so understand the provision. It must, however, be served within [120] days after the citation is issued by the court." In re Bradley, 70 Hun. 104, 109 (Sup. Ct. Gen. Term 5th Dep't 1893)

"[W]hen these allegations have been filed, then certainly the contest has been instituted. It then becomes the duty of the surrogate … to issue the citations and to appoint a time for the hearing." In re Gouraud, 95 N.Y. 256, 261 (1884) (petition filed timely, citation issued late but court had jurisdiction and proceeding was regular).

And while the service obligation is not triggered until the citation is issued, the statute of limitations on the claims stops when a petition is filed. Courts have consistently held that a proceeding is "duly commenced before the expiration of three years by the filing of the petition," the failure to serve the citation "does not render the proceeding null." In re Estate of Van Vleck, 32 Misc. 419, 66 N.Y.S. 727 (Surr. Ct. N.Y 1900) *citing* In re Bradley, 70 Hun. 104, 109 (Sup. Ct. Gen. Term 5th Dep't 1893). See also In re Estate of Lange, 72 Misc. 437, 16 N.Y.S. 312 (Surr. Ct. N.Y. 1939). See also In re Phalen's Will, 4 N.Y.S. 408 (Sup. Ct. N.Y. Gen. Term 1st Dep't 1889) ("There is nothing whatever in the section [Code §§2648-9] in reference to the necessity of the service of a citation in order to prevent the statute of limitations attaching. All that is required is that the petition shall be presented within a year."); Id., ("By the filing of the petition the surrogate had acquired jurisdiction of the proceeding .... [B]y the presentation of the petition in question the statute was prevented from running.")

While these timing doctrines were established under the provisions of the preceding Code of Civil Procedure, their compelling logic remains as applicable today.   Cf. Brown v. Ingersoll, 226 N.Y.S.2d 479 (Sup. Ct. Monroe Cnty. 1962) (delay in rejection of a claim by a temporary

administrator does not result in running of statute of limitations against creditor); In re Peter's Will, 20 Misc. 2d 1082, 195 N.Y.S.2d 325 (Surr. Ct. 1959) (timing of asserting right of election should not be affected by delay in probate of will).

For instance in Burke v. Nationwide Ins. Co., 108 A.D.2d 1098, 485 N.Y.S.2d 666 (3d Dep't 1985) the court held that a delay in issuance of letters of administration did not warrant dismissal of administrator's claims against an insurer that knew of claim even though limitations period ran during delay in issuance.

Likewise in Ovari v. Maultasch, 17 Misc.2d 597, 182 N.Y.S.2d 871 (Sup. Ct. N.Y. 1959) the court held that "It was not the intent of the Legislature to hold that a creditor forfeited his right to bring an action for a claim by a delay of three months …when he could only sue by the permission of the surrogate, and any delay of the surrogate … would place the time beyond three-months period which would defeat his right of action."

Because the triggering event requiring service of the citation is, and must be, the actual *issuance* of the citation, and not the filing of the Petition and Petitioner made such service within 120 days of the issuance of the citation, this Turnover Proceeding should not be dismissed.

Additionally, the Turnover Proceeding should not be dismissed where, as here, there is good cause shown or in the interest of justice. CPLR 306(b).

This is particularly true since: (1) the delay in service was attributable to the delay in the issuance of the citation, (2) the Respondents have pointed out no prejudice to themselves from the delay, (3) they were aware of the Turnover Proceeding upon its filing and had received a courtesy copy of the petition, and (4) they had refused to accept service of the petition.

By contrast, Petitioner would be prejudiced by the dismissal because she would have to go through the time and expenses of instituting another proceeding.  SPCA §301(b); see Point III, infra.

To the extent that this Court deems Petitioner might have sought an extension of time beyond the 120 day period to make service of the citation when the citation had not yet been issued, the Petitioner asks that such extension be granted *nunc pro tunc*. CPLR 306(b).

And while the obligation to serve the citation was not triggered until the citation was issued, the statute of limitations stopped running when Dalia filed the Petition in June of 2016. For that purpose, the Turnover Proceeding is timely and is not barred by the statute of limitations[2].

Point II

Service of a Copy of the Petition
is Not Required

Orly disingenuously claims that it is the petition that must be served and not the citation - - she says that CPLR 306(b) requires that "a notice of petition and petition shall be served with 120 days." Orly Brief., p.12.  Orly complained that the citation she received did not have the petition attached and was therefore "useless." Orly Brief., p.13.

Yet there is **_no_** requirement that a petition be served at all, either before the issuance of the citation or with it; although there is pending a proposed bill to change that to add such requirement. *See* Bill No. A05414 (2018).

The proposed law reads:

```
        AN  ACT  to  amend  the  surrogate's court procedure
act, in relation to service of a citation
            The People of the State of New York, represented in
Senate and  Assembly, do enact as follows:
     Section  1.  Section  306  of  the  surrogate's court
procedure act is amended by adding a new subdivision 5 to read
as follows:
     5. A copy of the petition, affidavits, affirmations and
exhibits thereto upon which process was issued, shall be served
with the citation  or other process to obtain jurisdiction of a
```

---

[2] Moreover, the statute of limitations has not run because $15 million of the Settlement Proceeds has not yet been paid. <u>See</u>, Point VIc, <u>infra</u>.

12

**party, except where service is by publication, and except in a proceeding for a voluntary accounting.**

This ***unenacted*** proposal is aimed at parties unlike Orly who admits that she received the courtesy copy of the petition upon its filing and refused to accept service. And to date, again, there is ***no*** requirement that a petition be served at all.

Orly's convenient misleading quoting of CPLR 306(b) and its reference to a "notice of petition and petition" clearly do not apply to Surrogate's Court's petitions - - otherwise the proposed amendment contained in Bill No. A05414 (2018) would be wholly unnecessary. In fact, there is ***no*** "notice of petition" in Surrogate's Court and instead the provision clearly is meant to apply to Article 78 proceedings which are commenced by "notice of petition and petition."

Because there is ***no*** requirement that a petition be served at all, either before the issuance of the citation or with it, the Court must deny the Respondents' motion to dismiss on these grounds.

Point III

Service was Proper
and if it Was Not
an Extension of Time
Should be Granted

Upon the issuance of the citation by this Court, Petitioner duly made service upon the Respondents.

Petitioner first made service upon Orly by delivery of the citation to her attorneys. Orly is a party to the pending Removal Action – both actions share a file number  - and she sought affirmative relief in this Court, and Orly's counsel had appeared both in the Removal Action and upon the return date of the citation in this Turnover Proceeding. Accordingly, service upon Orly's counsel was proper. CPLR 2103(b).

13

Since Orly's counsel claimed that such service upon them this was insufficient, and in an abundance of caution, Dalia's counsel mailed the citation to Orly in Texas, where Orly has claimed a homestead exemption, holds a driver's license, bank account, owns a home and is registered to vote.   Such service was made immediately before the return date of the citation and the clerk instructed counsel to request leave of the Court to file the affidavit.  Accordingly, Petitioner cross moves for leave to file such affidavit of service and deem such service sufficient.

The TR Respondents likewise argue that they were not served properly[3].  Yet they too appeared in this action on the return date of the citation.

Should this Court hold that service on any Respondents was insufficient, Petitioner respectfully cross-moves this Court for an extension of time to re-serve the citation upon them. CPLR 306(b).  In such instance, Petitioner further cross-moves this Court for permission to effect substitute service upon Orly via her counsel of record on the grounds that Orly is represented by such counsel in the Removal Action and she has sought affirmative relief in this Court and Orly is otherwise seeking to avoid service of process.

In the alternative, if this Turnover Proceeding is dismissed for failure to effect proper service, Petitioner will proceed under SPCA §301(b) and commence a new turnover proceeding within 120 days of such dismissal and such newly commenced proceeding will be unaffected by any considerations of the statute of limitations. SPCA §301(b).

Point IV

There is No Duplicative Prior Action Pending
Because there are Different Parties and Different Claims

Respondent Orly alleged that this proceeding ought to be dismissed, pursuant to CPLR 3211(a)(4), as duplicative of Dalia's cross-petition in the Removal Action. Orly simultaneously seeks to dismiss Dalia's cross-petition in the Removal Action. Orly Brief., p.12 ("[T]he New

---

[3] The address at which the "Trump Group" (as denoted in their own brief in this action) were served is the one identified by Mark Hirsch, their general counsel.  Bachman Aff. ¶ 17.

14

Action is duplicative of the counter-petition and should be dismissed in favor of the counter-petition, which is further along in litigation.")

This "prior action/duplicative" argument is as disingenuous as it is baseless.

First the Removal Action was not ***prior*** to this Turnover Proceeding - - it was subsequent to it. The Turnover Proceeding was filed in June of 2016, months prior to the Removal Action. The Respondents were aware of the Turnover Proceeding by virtue of their receipt of a courtesy copy of the petition in June of 2016. They filed the Removal Action well after the Turnover Proceeding and did so knowingly.

Orly's deliberate gamesmanship as to the timing of the Removal Action cannot be used to justify the dismissal of the Turnover Proceeding.

> This is not a situation in which parties have initiated lawsuits in different venues in an effort to obtain an advantage with regard to the forum selected. Here, both suits have been filed in the [Surrogate's Court, New York Cnty.], so the only possible purpose for [Orly's Removal Action] is that [Orly] seeks to gain some advantage by being a [petitioner] rather than being relegated to a [respondent]. However, the Court will not reward [respondent] for [her] actions by dismissing [Petitioner's] action, especially in a situation such as this one where both actions are pending in the same Court and at an appropriate time, this Court may order either a joint trial of these actions or that the actions be consolidated for purposes of trial.

Toulouse v. Chandler, 5 Misc. 3d 1005(A), 798 N.Y.S.2d 714 (Sup. Ct. Westchester Cnty. 2004).

Second the Removal Action involves only Orly and Petitioner as parties, whereas this Turnover Proceeding names eight (8) additional parties – individuals and entities – as well as unknown individuals or entities – who are alleged to have an interest in Settlement Proceeds that is subject to turnover to the Orly Trust. The inclusion of eight (8) additional parties in the Turnover Proceeding, the claims against them and the legal issues as to their respective

15

obligations and defenses regarding the money, make a substantial difference sufficient to distinguish the two proceedings.

Where, as here, two different actions involve different parties and different claims, they cannot be dismissed. James ex rel. National Arts Club v. Bernhard, 34 Misc.3d 1242(A), 950 N.Y.S.2d 608 (Sup. Ct. N.Y. Cnty 2012) ("The fact that two actions share allegations is no ground for striking them from either case" where different parties and different claims existed in the two actions.); Island Properties, LLC v. Calabretta, Index No. 2011-33520 (Sup. Ct. Nassau Cnty. Dec. 14, 2011) (refusing to dismiss action on personal guaranty even when holdover proceeding pending in different court because additional parties and additional claims).

To extent that this Court determines that the two (2) proceedings – the Removal Action and the Turnover Proceeding - are sufficiently similar that dismissal of the turnover proceeding under CPLR 3211(a)(4) is warranted, Petitioner hereby respectfully cross-moves this Court to consolidate these two proceedings so as to join all necessary parties and to resolve common questions of law and fact fully and with finality. Whitney v. Whitney, 57 N.Y.2d 731 (1982) (broad discretion of court in considering whether to dismiss for prior action pending); see also Mideal Homes Corp. v. L & C Concrete Work, Inc., 90 A.D.2d 789 (2d Dep't 1982) (where another action is pending between the same parties for the same causes of action, judicial economy and interests of justice favor consolidation); Chinatown Apartments, Inc. v. New York City Transit Authority, 100 A.D.2d 824, 825 (3rd Dep't 1984) ("Consolidation is appropriate, as it will avoid unnecessary duplication of trials, save unnecessary costs and prevent the possibility of incongruous decisions based on the same facts..")

Point V

Doctrines of Res Judicata/Collateral Estoppel
Do Not Bar Turnover Proceeding
Because No Court Has Ever Ruled on
the Disposition of the Settlement Proceeds

Respondents each claim that the Turnover Proceeding is barred by res judicata and/or collateral estoppel. Importantly, they each make such arguments but do so on ***conflicting*** grounds.

The TR Respondents claim that Petitioner is barred from seeking turnover of the Settlement Proceeds to the trust on the grounds that the settlement "finally and fully resolved" the issues of ownership of the shares "with Orly, both in her individual capacity and in her capacity as beneficiary of the Trust, on June 16, 2013." TR Brief, pp, 5, 6, 20.

But this misses the entire point of the Turnover Proceeding which is ***not*** seeking disposition of the shares; it is seeking the turnover of the Settlement Proceeds which were or are to be paid in exchange for the settlement of the claims to the Orly Trust shares.

It is this very fact that the settlement "finally and fully resolved" the issues of ownership of the shares "with Orly, both in her individual capacity and in her capacity as beneficiary of the Trust, on June 16, 2013" (TR Brief, pp. 5, 6, 20) that means that this Turnover Proceeding seeking the Settlement Proceeds must stand.

TR admits, as it has done repeatedly, and as confirmed by the TR Settlement documents and by the Federal Court, that Orly settled her claim with TR for the ownership of the shares on behalf of the Orly Trust. It is that very fact that entitled the Orly Trust to the turnover of the Settlement Proceeds.

Orly as the derivative plaintiff on behalf of the Orly Trust is required to turnover and account for all Settlement Proceeds that she obtained on behalf of the Orly Trust. Mokhiber v. Cohn, 783 F.2d 26 (2d Cir. 1986).

17

> "Those "fruits"--the moneys paid to counsel--must be accounted for irrespective of whether they went to the derivative plaintiffs or to their lawyers. 'Defendant cannot evade his fiduciary responsibility to account to the corporation for all recovery resulting from his derivative action by the mere device of authorizing or permitting payment to his attorneys instead of himself.'"""

As the Court in <u>Clarke v. Greenberg</u>, 296 N.Y. 146 , 71 N.E.2d 443 (1947) (emphasis added) opined:

> The very nature of the derivative suit by a stockholder-plaintiff suing in the corporation's behalf suggests the application of the fiduciary principle to the proceeds realized from such litigation whether received by way of judgment, by settlement with approval of the court, which presupposes stockholders' approval, or by private settlement and discontinuance of the action at any stage of the proceeding. Such action, we have held, belongs primarily to the corporation, the real party in interest (*Teich v. Lawrence,* 291 N.Y. 245; *Koral v. Savory, Inc.,* 276 N.Y. 215; *Continental Securities Co. v. Belmont,* 206 N.Y. 7) and a judgment so obtained, as well as the proceeds of a settlement with court approval, belongs to it and not the individual stockholder plaintiffs (*Earl v. Brewer,* 248 A.D. 314, affd. 273 N.Y. 669; *Gerith Realty Corp. v. Normandie National Securities Corp.,* 266 N.Y. 525). . . . When, however, success crowns his effort, the amount received is in behalf of and for the account of the corporation. This is so because the action belongs primarily to it. The manner and method by which such success is accomplished whether by way of judgment, settlement with court approval or by stipulation of the parties, makes no substantial difference in the interest of the corporation upon distribution of the proceeds. Requiring an accounting for moneys received in a private settlement introduces no new element. It simply amounts to a logical application of a fundamental principle inherent in the representative relation. When one assumes to act for another, regardless of the manner or method used in accomplishing a successful termination, he should willingly account for his stewardship. The plaintiff-stockholder, in good conscience, should not be allowed to retain the proceeds of a derivative suit discontinued by stipulation, to his individual use, in opposition to the corporation, any more than the proceeds of a judgment or a settlement with court approval.

These obligations of Orly and the TR Respondents as the payors of the Settlement Proceedings compel the turnover of the Settlement Proceedings not the dismissal of claims for them!

While the TR Respondents, the settlement documents themselves, and the Federal courts are certain that the settlement was of the derivative claims of the Orly Trust, Orly conveniently disagrees. Orly claims instead that the settlement had nothing to do with the derivative claims

and only involved her individual claims, and therefore the Settlement Proceeds were not owed to the Orly Trust. Orly Brief, p.10 ("That [settlement agreement] expressly notes that the claims related to Orly that are being settled are *only* claims brought by her in her personal capacity and *not* as a representative of the Orly Trust. ... [T]he settlement did not involve or relate to the trust at all."(emphasis in the original)."

Since respondents cannot even agree amongst themselves as to the import of the settlement agreement with respect to the Orly Trust, they cannot properly claim that Dalia is precluded, by *res judicata* and/or collateral estoppel, from bringing a turnover claim to this Court for resolution of this material issue of fact, i.e., whether the Settlement Proceeds – obtained via a derivative action on behalf of the Orly Trust – ought to be turned over to the Orly Trust. In other words, Dalia cannot be estopped from bringing a claim that - according to Orly - was **not** resolved by the settlement of the derivative action at all. For this reason, Orly's motion to dismiss based on documentary evidence must also fail as it hardly, let alone "definitively," disposes of Dalia's claim.

Orly also claims, and TR respondents parrot, that the Petitioner is precluded from seeking the Settlement Proceeds by prior decisions.  Orly Brief, pp.13-14. TR Brief, pp.21-22.

Contrary to these transparent arguments, no court has ever ruled as to the proper disposition of the Settlement Proceeds.

In fact, Justice Jaffe of the Supreme Court explicitly "held in abeyance" *__any__* decision as to the disposition or turnover of the Settlement Proceeds pending a determination by this Court as to whether Petitioner should remain as trustee of the Orly Trust.  P. ¶ 27, Ex. 10.

And the Appellate Division, First Department, made *__no__* holding as to the disposition of the Settlement Proceeds.  It merely held that the derivative claims on behalf of the Orly Trust had been dismissed procedurally on Arie's request after he and Orly settled the claims.  So while the

claims were dismissed because they were settled, the turnover of the Settlement Proceeds was not determined.

With regard to the Delaware case, Orly advised the Delaware Chancery Court that **_she_** favored dismissal of Dalia's action on behalf of the Orly Trust and directed Dalia, through her attorneys, to dismiss the Orly Trust's declaratory judgment action in Delaware which Dalia had commenced seeking a judgment the Orly Trust is the beneficial owner of the shares. See <u>Dalia Genger v. TR Investors, LLC, et al.</u>, C.A. No. 6906-CS (Del. Ch.). Orly's attorneys advised the Delaware Chancery Court that Orly was "acknowledg[ing] individually and in her capacity as the beneficiary of her trust that the Trump Group are the record and beneficial owners of the TRI shares which had been distributed to the Orly Trust." In other words, by virtue of her TR settlement, Orly had mooted the Chancery Court proceeding. The case was dismissed, but it was Orly who insisted that it be disposed.

So while the TR Respondents, the settlement agreement, the federal courts, the Delaware Chancery court, and the First Department all agree that the settlement was made regarding the Orly Trust shares resulting in the dismissal of those claims, **_no_** court has yet ruled as to whom the proceeds of that settlement belong.

That decision has been left to this Court and must be decided as this Turnover Proceeding moves forward.  Accordingly, since the fate of the Settlement Proceeds has not been decided, Petitioner is not precluded from on grounds of *res judicata* and/or collateral estoppel from seeking turnover of the Settlement Proceeds.

20

Point VI

The Claims in the Turnover Proceeding
Are Pled Sufficiently

A. Breach of Fiduciary Duty

The TR respondents claim that Orly owes no fiduciary duty to the Orly Trust because she

is a beneficiary. TR Brief, p.13.

Orly, however, is not a mere beneficiary; she chose to sue derivatively on behalf of the

Orly Trust and hence owed a fiduciary duty to the Orly Trust. Gusinsky v. Bailey, 21 Misc.3d

1107(A), 873 N.Y.S.2d 234 (Table) (Sup. Ct. N.Y. Cnty. 2008) ("The plaintiff and plaintiff's

counsel in a derivative action have an obligation to the corporation and all its other

shareholders"), rev'd on other grounds, 66 A.D.3d 614, 887 N.Y.S.2d 585 (1st Dep't 2008).

> [A] stockholder who brings suit on a cause of action derived from the corporation
> assumes a position not technically as a trustee, perhaps, but one of a fiduciary
> character. He sues not for himself alone, but as representative of a class
> comprising all who are similarly situated. The interests of all in the redress of the
> wrongs are taken into his hands, dependent upon his diligence, wisdom and
> integrity. . . . He is a self-chosen representative and a volunteer champion.

Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949) (emphasis added).

And as a fiduciary, derivative plaintiffs are required to turnover and account for all

proceeds obtained as such. Mokhiber v. Cohn, 783 F.2d 26 (2d Cir. 1986).

> "Those "fruits"--the moneys paid to counsel--must be accounted
> for irrespective of whether they went to the derivative plaintiffs or
> to their lawyers. 'Defendant cannot evade his fiduciary
> responsibility to account to the corporation for all recovery
> resulting from his derivative action by the mere device of
> authorizing or permitting payment to his attorneys instead of
> himself.'"" Id.

As the Court in Clarke v. Greenberg, 71 N.E.2d 443, 296 N.Y. 146 (1947) (emphasis

added) opined:

> The very nature of the derivative suit by a stockholder-plaintiff suing in the
> corporation's behalf suggests the application of the fiduciary principle to the

21

proceeds realized from such litigation whether received by way of judgment, by settlement with approval of the court, which presupposes stockholders' approval, or by private settlement and discontinuance of the action at any stage of the proceeding. Such action, we have held, belongs primarily to the corporation, the real party in interest (*Teich v. Lawrence,* 291 N.Y. 245; *Koral v. Savory, Inc.,* 276 N.Y. 215; *Continental Securities Co. v. Belmont,* 206 N.Y. 7) and a judgment so obtained, as well as the proceeds of a settlement with court approval, belongs to it and not the individual stockholder plaintiffs (*Earl v. Brewer,* 248 A.D. 314, affd. 273 N.Y. 669; *Gerith Realty Corp. v. Normandie National Securities Corp.,* 266 N.Y. 525). . . . When, however, success crowns his effort, the amount received is in behalf of and for the account of the corporation. This is so because the action belongs primarily to it. The manner and method by which such success is accomplished whether by way of judgment, settlement with court approval or by stipulation of the parties, makes no substantial difference in the interest of the corporation upon distribution of the proceeds. Requiring an accounting for moneys received in a private settlement introduces no new element. It simply amounts to a logical application of a fundamental principle inherent in the representative relation. When one assumes to act for another, regardless of the manner or method used in accomplishing a successful termination, he should willingly account for his stewardship. The plaintiff-stockholder, in good conscience, should not be allowed to retain the proceeds of a derivative suit discontinued by stipulation, to his individual use, in opposition to the corporation, any more than the proceeds of a judgment or a settlement with court approval.

These obligations of a derivative plaintiff to account for and turnover proceeds belonging to those on whose behalf she sues, are akin to the obligations of a fiduciary or third party to account for and turnover proceeds that belong to an estate or trust. See e.g., In re Hoerter, 15 Misc.3d 1101(A) (Sup. Ct. Nassau Cnty. 2007); In re Nyenhuis, 225 A.D.2d 395 (1st Dep't 1996).

Orly is, therefore, bound by fiduciary duty to the Orly Trust as a derivative plaintiff. These obligations are all the more serious now that Orly, and her attorney Eric Herschmann, have an infant daughter that stands to benefit from the Orly Trust[3].

Orly sought and obtained the right to bring the Orly Trust Derivative Litigation, as a derivative plaintiff - - the Court adopted Orly's position that she "has legal standing to represent

---

[3] Orly does not even acknowledge that the Orly Trust includes her daughter as beneficiary. Orly Brief, p.3 ("All of the claims in this new [turnover] action are premised on Dalia's claim that Orly, in her alleged capacity as *de facto* trustee for the Orly Trust, breached her fiduciary duties to the trust (i.e., to herself).")

the Orly Trust" and "may act on behalf of the Orly Trust unless and until the Surrogate's Court

rules otherwise in an appropriate action there."

Orly '. . . [having brought suit] on a cause of action derived from the [Orly Trust]

assumes a position not technically as a trustee, perhaps, but one of a fiduciary character. [She]

sues not for [her]self alone, but as representative of a class comprising all who are similarly

situated. The interests of all in the redress of the wrongs are taken into [her] hands, dependent

upon [her] diligence, wisdom and integrity. . . . [She] is a self-chosen representative and a

volunteer champion.' Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949).

And because Orly owed a fiduciary duty to the Orly Trust she was required to ensure that

the Settlement Proceeds were paid to the Orly Trust.

Orly did not so do. Instead, she entered into the TR settlement, which provided for the

Settlement Proceeds to be paid to parties other than the Orly Trust, and she authorized payment

of the Settlement Proceeds to such other parties.

As a derivative plaintiff, Orly proceeded to settle the Orly Trust Derivative Litigation:

According to the federal court, which reviewed the document, "Orly acknowledged that [TR] is

the record and beneficial owner of the Orly Trust Shares. ... At long last, the dispute regarding

ownership of the Orly Trust Shares is over." [TR] has since reaffirmed that the federal court

construed the TR settlement correctly:

> [Any suggestion] that the confidential settlement agreement *might*
> only dismiss Orly's individual claims against [TR], but not resolve
> the Orly Trust's claims against [TR] . . . is counterfactual. This
> Court has already held that certain of Orly's claims in this action,
> including the remaining claims, are derivative in nature, and may
> be     maintained by Orly on behalf of the Orly Genger 1993
> Trust. ... In settling the claims among them, [TR], Trans-
> Resources, Orly and Arie agreed to the dismissal of all claims
> presently pending against one another. This agreement is
> memorialized in the Second Amended Stipulation of
> Discontinuance.

Evidencing this intent to settle the Orly Trust derivative claims, in Section 6(a) of the TR settlement, Orly settled and released all of her claims in the Trump Group Entities Settlement in both her derivative and individual capacities. (Orly releasing the Trumps "in all capacities.")

In Section 8(a) thereof, Orly further agreed to "cause" the Orly Trust to do the same, which she later did, advising the Delaware Chancery Court that she favored dismissal of Dalia's action on behalf of the Orly Trust.

And most tellingly, under Section 8(b) of her settlement agreement, Orly agreed to "use [her] best efforts to cause [any replacement] trustee to agree in writing on behalf of the Orly Genger 1993 Trust that it shall be a member of the AG Group for purposes of providing the indemnity contained in Paragraph 5."

Orly's actions constitute a breach of fiduciary duty and breach of duty of loyalty and the claims are adequately stated as they notify Orly, and other respondents, specifically which of her actions violated her fiduciary duty to the Orly Trust.

Since Orly owed a fiduciary duty to the Orly Trust, Dalia's claim against TR of aiding and abetting Orly's breach of duty are valid and ought to stand. Such claims were also sufficiently pleaded with requisite specificity pursuant to CPLR3016(b). Simply because the settlement agreement was silent as to how the settlement proceeds would be applied or apportioned amongst the parties does not prove or "make clear the TR Entities lacked any knowledge about whether Orly, in any capacity, would receive (or not receive) any Settlement Proceeds," TR Brief, p.15; it simply means this information was deliberately omitted from the document itself. The unsubstantiated claim by their attorneys that TR does not know what happened is a nullity. Id., fn. 10.

"The purpose of CPLR§3016(b) is to inform a defendant with respect to the incidents complained of." Pludeman v. Northern Leasing Systems, Inc., 40 A.D.3d 366, 837 N.Y.S.2d 10 (1st Dep't 2007), aff'd, 10 N.Y.3d 486, 890 N.E.2d 184, 860 N.Y.S.2d 422 (2008). Dalia was

24

required to, and did, plead that TR was "aware of Orly's fiduciary duty to the Orly Trust," P., ¶ 34, that they "knowingly induced or participated" therein by specifically "taking the Settlement Proceeds which belong to the Orly Trust, by drafting and entering into the [TR] Settlement Agreement which failed to direct payment of the Settlement Proceeds of the Trust" and "by advising and inducing Orly" to enter such agreement and by "directing or authorizing payment of the Settlement Proceeds to parties other than the Orly Trust." Id., ¶ 35.

Such allegations were hardly conclusory and were surely sufficient to notify respondents which of their actions Dalia complained of, and to make a prima facie showing of Dalia's claim. Monaghan v. Ford Motor Co., 71 A.D.3d 848, 850, 897 N.Y.S.2d 482 (2d Dep't 2010), quoting Yuko Ito v. Suzuki, 57 A.D.3d 205, 20 (1st Dep't 2008). ("A cause of action [alleging the] aiding and abetting [of a] breach of fiduciary duty merely requires a prima facie showing of a fiduciary duty owed to plaintiff ... a breach of that duty, and defendant's substantial assistance ... in effecting the breach, together with resulting damages."") See also DDJ Management LLC v. Rhone Group LLC, 78 A.D.3d 442, 911 N.Y.S.2d 7 (1st Dep't 2010) ("[A]t this early stage of the litigation, plaintiffs are entitled to the most favorable inferences, including inferences arising from the positions and responsibilities of defendants.")

The "pleading requirements should not be narrowly construed and a plaintiff alleging an aiding-and-abetting fraud claim may plead actual knowledge generally, particularly at the pre-discovery stage, so long as such intent may be inferred from the surrounding circumstances." DDJ Management LLC v. Rhone Group LLC, 78 A.D.3d 442, 911 N.Y.S.2d 7 (1st Dep't 2010).

Furthermore, since it is peculiarly within the knowledge of respondents as to which specific respondent did what, the TR respondents' claim that dismissal is required because Dalia did not specify their respective allegations is clearly baseless.

25

B.  Claims of Tortious Interference Are Well Pled

Beyond a circular reference to their arguments against the aiding and abetting fiduciary duty

claim answered above in Point VIA, supra, TR asserts that the claims for tortious interference of

contract must be dismissed because Dalia has to allege that they "acted without justification and

their action must not have been incidental to a lawful purpose."  TR Brief, p. 18.

It is black letter law, however, that to state a claim for tortious interference of contract "it is

not necessary to allege that defendant used improper means or that its conduct was for the sole

purpose of harming plaintiff (*see Carvel Corp. v Noonan,* 3 N.Y.3d 182, 189-190

[2004]; *Hoesten v Best,* 34 A.D.3d 143, 159 [2006]; *Krinos Foods, Inc. v Vintage Food Corp.,* 30

A.D.3d 332, 333 [2006])."  Kronish Live Weiner & Hellman LLP v. Tahair, Ltd., 35 A.D.3d

317, 829 N.Y.S.2d 7 (1st Dep't 2006).

"[A] plaintiff need *not plead* that defendant's actions are not economically justified, rather

economic justification is a *defense* to a claim of tortious interference with contract (*see White

Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 867 N.E.2d 381, 835 N.Y.S.2d

530 [2007] [economic justification is a defense to a claim of tortious interference with

contractual relations])."  Luxury Autos of Huntington, Inc. v. Volkswagen Group of Am., Inc., 49

Misc.3d 1207(A), 26 N.Y.S.3d 725 (Sup. Ct. Nassau Cnty. 2015)

"[Dalia] was therefore not required to plead that [TR] lacked an economic justification for its

alleged actions (*see Fallon v. Wall Street Clearing Co.*, 182 A.D.2d 245, 250, 586 N.Y.S.2d

953 [1st Dep't 1992] [motion court improperly shifted burden to plaintiffs to plead and prove a

lack of justification])."  Id.

Accordingly, the claim of tortious interference with contract against TR must be allowed to

stand.

C.  Claims of Money Had and Received are Well Pled

TR seeks to dismiss the money had and received claim by arguing that it has not "retained" any of the Settlement Proceeds.

Yet TR expressly admits that it has "[t]he remaining $15 million in Settlement Proceeds" which have not yet been paid.  Tr. Brief, p. 19 fn. 12.  It this very portion of the Settlement Proceeds that Dalia seeks to recover from TR under this and other claims in the Turnover Proceeding.  These Settlement Proceeds must be paid to the Orly Trust and the Turnover Proceeding is the only way to compel the parties to do so.

Point VII

Petitioner's Cross-motion for<br>the Appointment of a Guardian Ad Litem and a<br>Supplemental Citation

According to the terms of the Orly Trust, if Orly has an issue, such children are beneficiaries of the trust along with Orly. Orly has an infant daughter. Accordingly, her daughter (and any unborn children) is a beneficiary of the Orly Trust and, as such, is a necessary party to this proceeding. SCPA §315; Hess v. Hess, 233 N.Y. 164 (1922).

 Dalia requests that this Court appoint a Guardian Ad Litem for Orly's daughter (and any unborn children) since she is a minor and also because her interests may conflict with Orly's position in ensuring that the Settlement Proceeds be paid to the Orly Trust.  SCPA §§311, 402, 403, 2106. In fact, this Court has already appointed a Guardian Ad Litem for Orly's daughter in the Removal Action.  If this Court grants Dalia's cross-motion to consolidate the Removal Action and this Turnover Proceeding then the already appointed Guardian Ad Litem could continue to serve.

It is within the province of this Court's discretion to issue supplemental process in order to ensure that any necessary parties are made party to this proceeding. SCPA §312.

27

For the foregoing reasons, petitioner cross-moves this Court for the issuance of a supplemental citation for a Guardian Ad Litem for Orly's daughter and unborn children.

Petitioner requests, upon the appointment of a Guardian Ad Litem for Orly's daughter and unborn children, sufficient time to serve process on that Guardian Ad Litem be granted.

Point VIII

Sanctions against Petitioner and/or Petitioner's Counsel<br>are Unwarranted and Improper

While respondent Orly summarily concludes, without any basis or explanation, that "Dalia has no good faith basis for such tactics that are so obviously contrary to basic rules of procedure," Orly Brief, p.16, Orly ignores that the "basic rules of procedure" require the Court to have acted in issuing the citation before Dalia could serve the same. See Point I, supra.

Moreover, Dalia brought this Turnover Proceeding in an attempt to protect the Orly Trust from being looted by Orly, Arie and her creditors. P. ¶¶ 7, 24.

Orly is the party who repeatedly dodges service while deliberately availing herself of this and other New York Court's jurisdiction in order to wage her own wars against Dalia, among others.

Orly is the party who commenced a derivative action purportedly on behalf of the Orly Trust, and then attempted to settle the same in her own individual favor, either pocketing the Settlement Proceeds or using the same to pay off her creditors.

If there is any bad faith here, it is that of Orly, and not Dalia.

Neither Dalia nor her counsel has acted in bad faith, nor committed any abuse of this Court's procedures. Rather than "delay the resolution of the litigation," Orly Brief, p.16, Dalia is attempting to bring the litigation within the purview of this Court and avoid an unwarranted dismissal and the need to commence anew.

28

Conclusion

For the foregoing reasons, Dalia respectfully requests this Court to deny respondents'

respective motions to dismiss the petition and to grant her cross-motion.

Dated: February 20, 2018
       New City, New York

Judith Bachman, Esq.
The Bachman Law Firm
254 S. Main Street, Suite 306
New City, New York 10956
845-639-3210

29

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
File No.: 2008-0017E

In the Matter of DALIA GENGER, trustee of the OLRY
GENGER 1993 TRUST,

Petitioner,

-against-

ORLY GENGER, ARIE GENGER, GLENCOVA
INVESTMENT COMPANY, TR INVESTORS, LLC,
NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC,
TRANS-RESOURCES, INC, ARNOLD BROSER,
DAVID BROSER, JOHN DOES 1-20 AND JANE
DOES 1-20,

Respondents.

**MEMORANDUM OF LAW IN OPPOSITION TO
RESPONDENTS' MOTIONS TO DISMISS AND IN
SUPPORT OF PETITIONER'S CROSS-MOTION**

**KELLEY DRYE & WARREN LLP**
101 PARK AVENUE
NEW YORK, NEW YORK  10178

(212) 808-7800