ORIGINAL

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.: 2008-0017/E<br><br>Surrogate Nora S. Anderson |
| Dalia Genger, Trustee of the Orly Genger 1993 Trust,<br><br>    Petitioner,<br><br>  -against-<br><br>Orly Genger, et al.,<br><br>    Respondents. | |

**REPLY MEMORANDUM IN SUPPORT OF ORLY GENGER'S
MOTION TO DISMISS AND IN OPPOSITION TO CROSS-MOTION**

KASOWITZ BENSON TORRES LLP

1633 BROADWAY
NEW YORK, NY 10019
212-506-1700

ATTORNEYS FOR    *Respondent*

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.: 2008-0017/E<br><br>Surrogate Nora S. Anderson |
| Dalia Genger, Trustee of the Orly Genger 1993 Trust,<br><br>Petitioner,<br><br>-against-<br><br>Orly Genger, et al.,<br><br>Respondents. | |

## REPLY MEMORANDUM IN SUPPORT OF ORLY GENGER'S
## MOTION TO DISMISS AND IN OPPOSITION TO CROSS-MOTION

Respondent Orly Genger by limited appearance submits this reply memorandum in support of her motion to dismiss and for sanctions and award of attorney's fees, and in opposition to petitioner Dalia Genger's cross-motion for the appointment of a guardian ad litem for Orly's daughter, a minor.[1]

### PRELIMINARY STATEMENT

Dalia's opposition confirms that she violated basic rules of procedure and that her violations are neither justified nor excusable. The law is clear. Her new petition – yet another in

---

[1] Citations herein to "Mem." are to Orly's opening Memorandum of Law in support of her Motion to Dismiss Dalia Genger's 2016 Petition, dated February 5, 2018. Capitalized terms used but not defined herein have the meanings ascribed in that opening memorandum. Citations herein to "Opp. Mem." are to Dalia Genger's Memorandum of Law in Opposition to Respondents' Motions to Dismiss and in Support of Petitioner's Cross-Motion, dated February 20, 2018, and citations herein to "Bachman Affirm." are to the Affirmation of Judith Bachman, dated February 20, 2018, submitted in support of Dalia's Opp. Mem.

a long line of her dilatory tactics – is itself dilatory and, for that reason among many others, is barred as a matter of law.

Dalia makes a number of excuses as to why, she believes, the normal procedural rules do not apply to her. She even goes so far as to blame the Clerk of the Court for her own failures and that of her counsel. She cannot dispute, however, that she never effected good service on Orly (or any of the named parties in this proceeding) within the time statutorily required. For that indisputable reason, her New Action is time barred by the procedural rules and the applicable statute of limitations.

Her New Action fails on the merits as well. Although she tries to confuse the issue, she does not and cannot explain how the New Action is not duplicative of her counter-petition, which is currently the subject of fully-briefed, *sub judice* motions to dismiss.

Her cross-motion to appoint a guardian for Orly's infant daughter, in place of the child's own parents (Orly and her husband, Eric Herschmann) is as meritless as it is mean-spirited. The law is clear that, unless it is shown that the natural guardians are unfit, no legal guardian may be appointed in their stead. For Dalia to allege without any knowledge or good faith belief whatsoever that her own daughter, a new parent, is unfit is the height of hypocrisy: It underscores that it is Dalia who is unfit. She is the mother who did not attend her only daughter's wedding, who has not spoken with her own daughter in years and who has never even met her daughter's only child and her own grandchild. (She does not even mention the child's father, Mr. Herschmann, much less provide any reason to disqualify him as a natural guardian, nor can she.) If Dalia is not ashamed of herself already, she should be by now. Such gall only further proves her utter inability to serve as trustee for the benefit of Orly.

2

Most importantly, just like her irresponsible attempt to appoint a legal guardian without any good faith legal basis whatsoever, Dalia's conniving to file a New Action in June 2016 and then, in blatant violation of the procedural rules, to wait and spring (attempted but failed) service as if it were some kind of trap for the unwary *eighteen months later* at the end of 2017 is just yet another example in a long line of examples of her bad faith and gamesmanship to the extreme detriment of the trust beneficiary, Orly. This kind of plotting by Dalia further confirms – if any further reason were needed – that Dalia has a fatal conflict of interest with Orly and is unfit to serve as trustee of the Orly trust. Orly has been trying to remove her for ***ten years***. Dalia should be – must be – removed as the trustee without any further delay.

Her New Action should be summarily dismissed with prejudice.

**ARGUMENT**

**I.    THE REMOVAL ACTION HAS PRIORITY AND
MOOTS THE NEW ACTION AS RES JUDICATA**

Orly first petitioned this Court for the removal of Dalia as trustee of the Orly Trust over ten years ago in 2008 (the Removal Action), more than eight years before Dalia filed (without serving) the New Action in 2016. After procedural wrangling by Dalia (and Sagi), Orly renewed her request for this relief in 2009. Once the merits of Orly's Removal Action are considered by this Court, and the Court finally removes Dalia as trustee, Dalia will lose standing to continue to prosecute this frivolous New Action.

Dalia tries to confuse the dates on which each action was filed. She fixates on the August 2017 date on which she filed her counter-petition against Orly for the same relief she seeks in this New Action as if that were the date the 2008 Removal Action was filed. On that false premise she claims that her meritless New Action, filed in June 2016, was first filed (because that date is *before* August 2017, rather than *after* 2008, when the Removal Action was first

3

filed). Opp. Mem. at 14-15. It is true, as Orly noted in her moving brief, that the New Action was filed (but not served) before Dalia's *counter-petition* in the first-filed 2008 Removal Action. Mem. at 11. But that does not change the critical fact – also noted in Orly's moving papers – that the proceedings in the Removal Action with respect to Dalia's counter-petition are much further along than this New Action: The counter-petition was *served before* even any attempt at service of the New Action; Orly and the other party to the Removal Action (the court-appointed guardian ad litem for theoretical unborn children) already responded to the counter-petition long *before* any party ever made a limited appearance to dismiss the New Action; and Orly's and the guardian's motions to dismiss the counter-petition were fully briefed *before* the motions to dismiss in this New Action were made and are already *sub judice* awaiting decision long *before* submission of the dismissal motions in this New Action. *Id.* No spin by Dalia can alter these facts. Because the adjudication of these same claims is indisputably happening first in the Removal Action, that action has priority and it is this late New Action that is to be jettisoned as duplicative and a waste of judicial resources. *See* Mem. at 11-12.

Furthermore, Dalia's protestation that the counter-petition did not name all of the respondents she named in the New Action is irrelevant. Dalia could have impleaded additional respondents into her 2017 counter-petition in the Removal Action, but she failed to do so. CPLR 1007. That was her choice and her fault; no one else's. It is clear she did not follow that course of action because she always intended to use the New Action as a procedural maneuver to trip up the orderly adjudication of the Removal Action. Trying to use one filing to foul up another is the height of sanctionable bad faith. *See* Mem. at 16. It is an utter waste of judicial resources and an inexcusable burden on the Surrogate's Court, not to mention the other litigants. In any event,

4

because the counter-petition fails on its merits (just like the New Action), there is no need for consolidation, as Dalia now purports to seek. That is an empty ruse to work delay upon delay.

Dismissal is also warranted, of course, because all of Dalia's claims in both actions are barred by the doctrine of res judicata. Dalia argues that respondents have stated conflicting positions in their motions to dismiss the New Action. Opp. Mem. at 17. That is not true. Both the Trump Group and Orly are in full agreement that prior judicial decisions (many of which are binding on this Court), confirm that Dalia is barred from making her claims in this action. *See* Mem. at 16 (incorporating Orly's MTD of Dalia's counter-petition, at 12-14) and the Memorandum of Law in Support of the TR Entities' Motion to Dismiss the [New Action] Petition, dated Feb. 6, 2018, at 19-22.

No matter what causes of action Dalia asserts – whether labeled "turnover," breach of fiduciary duty, unjust enrichment, or anything else – and no matter how Dalia characterizes her story, the relief Dalia seeks in both the New Action and her counter-petition, as well as in every other case where she is adverse to Orly, is the same: Dalia seeks to intercept the proceeds from the AG/Trump Group Settlement Agreement, by any means necessary and irrespective of the law. Dalia's repetitive and duplicative actions, which have been repeatedly dismissed, most recently by the First Department, is sanctionable abuse of the Courts. This Court need not countenance this latest meritless attempt by Dalia because it is precluded by the First Department's decision and by the statute of limitations – all the parties named by Dalia (but not yet served) in this New Action agree on that. *See* Mem. at 16 (incorporating Orly's MTD of Dalia's counter-petition, at 12-14, citing *Genger v. Genger*, 144 A.D.3d 581 (1st Dep't 2016)).

Dalia has no good argument to counter the preclusive effect and controlling holding of the First Department. As pointed out in Orly's moving papers, the First Department ruled that

5

Dalia's claims brought on behalf of the OG Trust with respect to the AG/Trump Group Settlement Agreement were dismissed **with prejudice** in various prior court decisions and, because she failed to object to the dismissal **with prejudice** in that case before the trial court, she is forever precluded from raising these claims again. Mem. at 16 (incorporating Orly's MTD of Dalia's counter-petition at 12-14). Dalia tries (Opp. at 19-20) to side-step this controlling holding by discussing holdings years ago in a related Delaware action and years-old decisions in various federal cases involving the Gengers. All of that is beside the point. The decision of the First Department, relatively recently handed down in 2016, already considered all of these same arguments – and rejected them. Even Dalia has to know that she cannot use this Surrogate's Court proceeding to try to overturn a controlling appellate decision.

## II.   DALIA'S ADMISSIONS BAR THIS ACTION AS UNTIMELY

In her opposition, Dalia goes to great lengths to blame the Court for her own failure to serve the New Action on respondents within the statutorily allotted time period. She has no authority for her claim that her failure should be blamed on the Surrogate's Court. The cases she does cite, decisions from two centuries ago in the 1880s and 1890s (Opp. Mem. at 9-12) are inapposite on their face and obviously not controlling. Those decisions were decided before the modern CPLR and the Surrogate's Court Procedure Act, both of which were enacted and/or overhauled in the 1960s – almost a hundred years after the cases cited by Dalia.

The lawyer's affirmation from Dalia's counsel fares no better. In that account, her lawyer admits that she did nothing to meet the statutory deadline of 120 days in which to serve the petition in the New Action. While she claims she had multiple calls and emails with the Court inquiring about the court preparation of the citation, she has no documentary proof of this. Moreover, she contradicts herself and admits that the error is hers. She filed the New Action using an erroneous caption, which was rejected by the Court Clerk *twice.* She labored to fix it –

but who knows for how long; she certainly does not confess to the amount of time she delayed in fixing twice-over her own admitted errors. *See* Bachman Affirm. ¶¶ 7, 10, 14. More importantly, nothing stopped her from making a motion within that four-month period seeking a citation or an order extending time for service, nor does she even acknowledge that she should have done at least that much. Nor did anything stop her from serving the petition without the citation using proper service of process.

Finally, even were she permitted to effect late service – *i.e.*, service that is over a *year* late – that has no bearing on calculating the statute of limitations. Under Section 301(a) of the SCPA, the running of the statute of limitations is stopped by the filing of the petition "***provided*** process is issued and service made upon any respondent within one hundred twenty days after the date of the filing of the petition." SCPA 301(a). *See* Mem. at 12, 15. Since even Dalia admits no such service was made within that period upon any respondent, the statute of limitations continued to run – and expired – thereafter. *See id.* at 15. No provision in this statute allows a Court to vary this legislative requirement. *Id.* Dalia has no rejoinder to this point. She does not even address it.

### III. DALIA FAILED TO EFFECT GOOD SERVICE

Dalia argues that she served Orly twice. But she did not. Her own brief betrays her.

First, she claims to have properly served Orly by emailing a copy of the Citation to her counsel in the Removal Action. She argues that such service is proper because the New Action is a part of the Removal Action. But it obviously is not. If it were, she would not have needed a new citation; nor would she have needed a new caption – a caption that the Clerk rejected and she had to fix twice; nor would the New Action have its own new case file number. *See* Mem. at 7; 13-14. Had Dalia actually believed her New Action was part of Orly's original Removal Action, she would have had to have served it on all parties to that action, which includes the

7

guardian ad litem in the Removal Action, Steven M. Riker. She did not serve Riker. All of those factors prove that, at no time relevant, did even Dalia really believe her after-the-fact contention that the New Action is just a part of the Removal Action. Since this New Action is a stand-alone new proceeding, service on counsel is not effective service. *See* CPLR 2103(b) ("papers to be served upon a party in a *pending* action shall be served upon the party's attorney").

Second, Dalia argues that she effected service on Orly by allegedly mailing the Citation to a residence in Texas registered in Orly's name as a joint owner with her husband. Opp. at 8. But there is no proof – and Dalia proffers none – that Orly was served in Texas. When service is made out of state, the law requires that personal service be made in accordance with the requirements of the CPLR and the SCPA by persons qualified to effect such service within the State in question. *See* CPLR 313. While Dalia claims she has an affidavit of service for this alleged service in Texas, which she claims was effected "immediately before" the return date of the Citation (meaning December 2017, and long after the 120-day statutory requirement), she admits the Court Clerk rejected it. *See* Opp. at 14. She failed, in any event, to append any such proof of service to her opposition papers, and thus makes no showing of any such service at all.

It is too late to file that proof now. Dalia cannot submit such alleged proof without affording Orly, who never received and certainly never signed for any such service in Texas or anywhere else, an opportunity to be heard and to challenge the *bona fides* of the proof of service. Such basic due process is all the more imperative here given Dalia's documented collusion with Sagi, who has been orchestrating Dalia's actions against Orly and in conflict with Dalia's fiduciary duties to Orly. For example, Sagi orchestrated a federal lawsuit by Dalia and him against Orly, filed in 2017 but not yet served, alleging that Orly owes **millions** of dollars to

Dalia. Answer, Affirmative Defense, and First Amended Third-Party Complaint, *Dalia Genger v. Sagi Genger*, Case No. 17-cv-8181 (S.D.N.Y., filed Dec. 12, 2017). That, of course, is just a recent example of the blatant and multitude of conflicts of interest between Dalia and Orly. Another recent example of such collusion between Dalia and Sagi is the fact that Dalia's attorney never served her motion opposition papers in this proceeding on Orly's counsel – it was instead served by Sagi's counsel, Kelley Drye.

In all events, as the record stands now, it is devoid of any proof of service and certainly devoid of any proof that Orly has had a fair opportunity to review and to challenge on the facts and law. There is, accordingly, no basis to find effective service of process.

### IV. DALIA'S CROSS-MOTION TO APPOINT A LEGAL GUARDIAN HAS NO LEGAL BASIS

Dalia gratuitously includes a cross-motion for various relief in her opposition papers. She belatedly seeks enlargement of time to effect service and consolidation, both of which are moot for reasons described above and in the moving papers. She also seeks the appointment of a guardian ad litem for Orly's infant daughter, ignoring that the child already has legal guardians – her parents, Orly and her husband.[2]

The sum total of Dalia's argument for a guardian in place of the child's parents is her baseless and uncertain contention that Orly's daughter's "interests *may* conflict with Orly's." Opp. Mem. at 27 (emphasis added). She makes no argument, much less shows any evidence, that such a conflict exists, even an uncertain one. She cannot. There is none. The only conflict that child has is with Dalia, who is at war with the child's mother. *Dalia's* interests

---

[2] In the Removal Action, Riker was appointed years ago as guardian ad litem to protect the interests of potential *unborn children only*, at a time when Orly had no offspring. *See* Order Appointing Guardian Ad Litem, filed Dec. 11, 2014, File No. 2008-0017. In motions in the Removal Action, Riker has acknowledged that he is not a guardian to Orly's daughter and was never appointed to that role.

9

unmistakably conflict with Orly's – as confirmed by the Appellate Division in *Orly Genger v. Dalia Genger*, 120 A.D.3d 1102, 1104 (1st Dep't 2014) – and also conflict with those of her granddaughter, whom she has never even met.

Under New York law, a child's parents are presumptively entitled to act as guardian for the child. *In re Judicial Settlement of First Intermediate Account of Proceedings of Mfrs. Of Hanover Trust Co.*, 83 A.D.2d 808, 808 (1st Dep't 1981) ("It is the policy of this state to encourage parents to act as guardians, thereby avoiding unnecessary appointments and the expense of a guardian ad litem"). *See also* SCPA § 402 (infant may appear by the infant's parents); SCPA § 402(1) (a parent is always permitted to appear on behalf of his/her child). Here, Dalia does not even try to rebut this legal presumption. She makes no showing, or even tries to show, how the child's mother and father are both unfit to act in their own child's best legal interests.

Since the child already has natural guardians, no guardian ad litem appointment is needed.

## CONCLUSION

For the foregoing reasons and those stated in Orly's moving papers, this Court should dismiss the New Action in its entirety, with prejudice, should sanction Dalia for proceeding with this frivolous action, and should award Orly such other and further relief as it deems just and proper.

Dated:  New York, New York
        February 26, 2018

KASOWITZ BENSON TORRES LLP

By: _____
Michael Paul Bowen
Andrew R. Kurland
1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Petitioner Orly Genger*

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust. | File No.: 2008-0017/E  Surrogate Nora S. Anderson |
| Dalia Genger, Trustee of the Orly Genger 1993 Trust, Petitioner, -against- Orly Genger, et al., Respondents. | |

## AFFIRMATION OF SERVICE

I am an attorney admitted to practice before the Courts of the State of New York. On February 26, 2018, on behalf of respondent Orly Genger, I caused to be served by FedEx overnight delivery a true and correct copy of Respondent Orly Genger's Reply Memorandum in Support of her Motion to Dismiss and in Opposition to Cross-Motion, dated February 26, 2018 on counsel for Petitioner Dalia Genger at the following address:

Judith Bachman, Esq.
254 S. Main Street
Suite 306
New City, NY 10956

Dated: New York, New York
February 26, 2018

_____
Andrew R. Kurland