**SURROGATE'S COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

In the Matter of DALIA GENGER, trustee of the ORLY
GENGER 1993 TRUST,

                     Petitioner,

      - against -

ORLY GENGER, ARIE GENGER, GLENCLOVA
INVESTMENT COMPANY, TR INVESTORS, LLC, NEW
TR EQUITY I, LLC, NEW TR EQUITY II, LLC, TRANS-
RESOURCES, INC., ARNOLD BROSER, DAVID BROSER,
JOHN DOES 1-20, and JANE DOES 1-20,

                  Respondents.

---

FILE NO 2008-0017/E

Hon. Nora S. Anderson

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE TR ENTITIES' MOTION
TO DISMISS THE PETITION FOR TURNOVER OF TRUST PROPERTY AND OTHER
RELIEF FILED ON JUNE 14, 2016, BY DALIA GENGER AS TRUSTEE OF THE ORLY
GENGER 1993 TRUST AND IN OPPOSITION TO PETITIONER'S CROSS-MOTION**

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

John Boyle
Four Times Square
New York, New York 10036
(212) 735-3000
(212) 735-2000 (facsimile)

*Attorneys for Glenclova Investment Co.,
TR Investors, LLC, New TR Equity I, LLC,
New TR Equity II, LLC, and
Trans-Resources LLC.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT..............................................................................................................................2

I.    DISMISSAL OF THE PETITION IS WARRANTED BASED UPON DALIA'S
      (NOT THE COURT'S) DELAY IN "COMMENCING" THIS PROCEEDING ................2

II.   DALIA'S FAILURE TO SERVE THE TR ENTITIES IS NOT CURED BY ANY
      LIMITED APPEARANCE IN THIS ACTION..................................................................5

III.  DISMISSAL OF THE PETITION AS AGAINST THE TR ENTITIES IS ALSO
      WARRANTED BECAUSE DALIA'S CAUSES OF ACTION ARE
      INSUFFICIENTLY PLEADED AND WITHOUT MERIT ................................................7

      A.    Orly Does Not Owe Any Fiduciary Duties to the Trust ...........................................7

      B.    The Petition Fails to Sufficiently Allege Knowing Participation ............................8

      C.    The Petition Fails to Sufficiently Allege the TR Entities Knowingly and
            Improperly Induced a Breach of Contract ...............................................................11

      D.    The Money Had and Received and Turnover Causes of Action Should be
            Dismissed................................................................................................................13

IV.   RES JUDICATA BARS DALIA'S CLAIMS..................................................................14

V.    EVEN IF NOT DISMISSED FOR THE ABOVE REASONS THE COURT
      SHOULD STAY OR DISMISS THIS PROCEEDING ...................................................16

CONCLUSION..........................................................................................................................17

i

# TABLE OF AUTHORITIES

## CASES

Page

*Alliance Network, LLC v. Sidley Austin LLP,*
  43 Misc.3d 848, 987 N.Y.S.2d 794 (Sup. Ct. N.Y. County 2014) ................................3, 10

*In re Bear Stearns Litigation,*
  23 Misc. 2d 447, 870 N.Y.S.2d 709 (Sup. Ct. N.Y. County 2008) ....................................10

*Estate of Jervis v. Teachers Insurance & Annuity Ass'n,*
  279 A.D.2d 367, 720 N.Y.S.2d 21 (1st Dep't 2001)............................................................7

*Eurycleia Partners, LP v. Seward & Kissel, LLP,*
  12 N.Y.3d 553, 883 N.Y.S.2d 147 (2009) ....................................................................9, 10

*Fesseha v. TD Waterhouse Investor Services, Inc.,*
  193 Misc. 2d 253, 747 N.Y.S.2d 675 (Sup. Ct. N.Y. County 2002) ................................13

*Fifty CPW Tenants Corp. v. Epstein,*
  16 A.D.3d 292, 792 N.Y.S.2d 58 (1st Dep't 2005)...........................................................15

*Genger v. Genger,*
  144 A.D.3d 581, 41 N.Y.S.3d 414 (1st Dep't 2016)..........................................................16

*Insurance Co. of State of Pennsylvania v. HSBC Bank USA,*
  10 N.Y.3d 32, 852 N.Y.S.2d 812 (2008) ..........................................................................14

*Kaufman v. Cohen,*
  307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003).....................................................8, 11

*Luxury Autos of Huntington, Inc. v. Volkswagen Group of America, Inc.,*
  49 Misc. 3d 1207, 2015 N.Y. Slip Op. 51502(U), 26 N.Y.S.3d 725
  (Sup. Ct. Nassau County 2015)........................................................................................12

*Matter of Katz,*
  81 A.D.2d 145, 148-49, 439 N.Y.S.2d 941, 943 (2d Dep't 1981) .......................................6

*O'Brien v. City of Syracuse,*
  54 N.Y.2d 353, 445 N.Y.S.2d 687 (1981) ........................................................................15

*Pludeman v. Northern Leasing Systems, Inc.,*
  10 N.Y.3d 486 (2008) ..........................................................................................................9

*Syncora Guarantee Inc. v. J.P. Morgan Securities LLC,*
  110 A.D.3d 87, 970 N.Y.S.2d 526 (1st Dep't 2013)..........................................................17

*Torrenzano Group, LLC v. Burnham,*
    26 A.D.3d 242, 810 N.Y.S.2d 42 (1st Dep't 2006) ............................................12

*TSR Group, LLC v. Levitin,*
    2016 N.Y. Slip Op. 31322(U) (Sup. Ct. N.Y. County 2016) ......................................11, 13

## STATUTES

SCPA 301(a) ..................................................................................................2, 4

SCPA 306(4) ....................................................................................................3

## RULES

CPLR 306-b ......................................................................................................6

CPLR 311 .........................................................................................................5

CPLR 311-a ......................................................................................................5

CPLR 320(b) .............................................................................................1, 5, 6

CPLR 2201 .....................................................................................................16

CPLR 3016(b) .............................................................................................8, 9

CPLR 3211(a)(4) ...........................................................................................17

CPLR 3211(a)(8) ...............................................................................................1

## OTHER AUTHORITIES

1 Harris N.Y. Estates: Probate Admin. & Litigation § 3:32 (6th ed.) ............................................3

1-3 New York Civil Practice: SCPA 304.00 (Matthew Bender 2018) ............................................4

Respondents Glenclova Investment Co., TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, and Trans-Resources LLC (collectively the "TR Entities") respectfully submit this reply memorandum of law in support of their Motion to Dismiss the Petition for Turnover of Trust Property and Other Relief (the "Petition") filed on June 14, 2016, by Dalia Genger ("Dalia"), the currently challenged trustee of the Orly Genger 1993 Trust (the "Trust"), and in opposition to Petitioner's cross-motion.

## PRELIMINARY STATEMENT

As shown in the TR Entities' Motion to Dismiss, their Opening Brief in support (the "TR Br."), and the supporting affirmations, the Petition should be dismissed. The often bewildering arguments presented in Dalia's Opposition Brief do not support any change in that result or rehabilitation of her failed pleading.

As a threshold matter, Dalia does not even oppose the TR Entities' arguments and evidence establishing that they were not properly served. Nor does she raise any legal challenge to the argument that, because she did not serve citations on the TR Entities within 120 days after the filing of the Petition, dismissal is required and the claims are time-barred. Because jurisdiction is lacking, the Court need look no further to dismiss the Petition and deny the cross-motion.[1]

Nevertheless, should the Court wish to review the merits-based arguments also raised in the Motion to Dismiss, Dalia offers no legal support or citations to sufficient allegations in the Petition to refute the TR Entities' legal arguments and documentary evidence that establish that she has failed to sufficiently allege the necessary elements of each of her claims. And

---

[1] The TR Entities again expressly state that because they are raising an objecting to personal jurisdiction under CPLR 3211(a)(8), under CPLR 320(b) neither their Opening Brief nor this Reply Brief and opposition to Petitioner's cross-motion amounts to a waiver of jurisdiction.

finally, in responding to the TR Entities' res judicata arguments, because Dalia concedes that the

settlement of the Trans-Resources shares ownership claim "is the very fact that entitle[s] the Orly

Trust to the turnover of the Settlement Proceeds," Dalia's earlier voluntary settlement and

dismissal with prejudice in the Delaware Action of that very claim, and her dismissal of that

action in which she could have brought her current claims, requires res judicata preclusion of the

claims in the Petition.

## **ARGUMENT**

### I.   **DISMISSAL OF THE PETITION IS WARRANTED BASED UPON DALIA'S (NOT THE COURT'S) DELAY IN "COMMENCING" THIS PROCEEDING**

In the Opening Brief, the TR Entities explained that dismissal of the petition is

required and the claims thereunder are time-barred because Dalia failed to "commence" a

proceeding against the TR Entities in the time required by the SCPA. (*See* TR Br. at 12-13).

Rather than respond to those arguments, Dalia instead argues (incredibly) that any delay is the

fault of the Court and not her own. (*See* Opp'n Br. at 9-12). The Court should reject Dalia's

argument based upon the SCPA and upon Dalia's prior conduct in this proceeding.

"For the purpose of computing the period of limitation . . . a proceeding is

*commenced* upon the filing of a petition, *provided process is issued* and service made upon any

respondent *within one hundred twenty days after the date of the filing of the petition* . . . "

SCPA 301(a) (emphasis added). Here, Dalia never "commenced" the action for statute of

limitations purposes for at least two reasons.

*First*, as of June 14, 2016, and at least one other occasion (time not identified by

Dalia), the Petition was deemed deficient on its face by the Surrogate's Court. (*See* Affirmation

of Judith Bachman in Opposition ("Bachman Aff.") at ¶¶ 10-12 (claiming that Surrogate's Court

clerk advised that caption was incorrect), ¶¶ 14-16 (same)). The Surrogate's Court clerk rejected

the Petition (twice) and required additional affirmations from Dalia's counsel prior to acceptance. (*Id.*) Only after Dalia modified the Petition for the second time, in December 2017, was it "commenced" for SCPA 301(a) purposes – at that time the Petition was accepted for filing and process issued – which occurred long after the running of the three-year statute of limitation period for breach of fiduciary duty, tortious interference of contract, and turnover of property. (*See* TR Br. at 12-13).[2]

   *Second*, assuming *arguendo* that the Petition was properly filed on June 14, 2016, process did not issue and service was not made within 120 days of June 14, 2016. Dalia blames the Court for this delay. In this Court, the attorney often prepares the citation for presentment to the clerk of the Court, who provides the Court's signature and seal. *See* SCPA 306(4); 1 Harris, New York Estates: Probate Admin. & Litigation § 3:32 (6th ed.) ("The petitioner's attorney will prepare the original citation. The citation will be reviewed (usually by a clerk), and the return date by which the party or parties named will be required to respond, as requested by the attorney, will be filled in."). Throughout this proceeding, the Court has acted promptly in issuing citations. A review of the docket identifies that on four other occasions, citations were issued either on the same day or within days of the filing of the pleading requiring the issuance of a citation. (*See* File #2008-0017 Docket and Info Sheet reviewed 2/21/2018 (hereafter "Dkt.") entry filed 02-15-2008 (citation issued same day as Amended Petition to Designate Trustee was filed), Dkt. entry filed 11-14-2008 (citation issued 13 days after Petition to Suspend Letters was filed), Dkt. entry filed 11-18-2008 (citation issued same day as Petition to Account-Trustee Leah Fang was filed), Dkt. entry filed 11-20-2012 (citation issued 12 days after Petition to Compel

---

[2] Dalia concedes the three year statute of limitation applies to her claims by failing to argue – and therefore waiving any argument – that a longer period applies. *See Alliance Network, LLC v. Sidley Austin LLP*, 43 Misc. 3d 848, 864 n.4, 987 N.Y.S.2d 794, 806 n.4 (Sup. Ct. N.Y. County 2014) (noting that a party's failure to oppose arguments in its briefing on motion to dismiss results in waiver of the issue)

Fiduciary to Account was filed)).  In light of the Court's diligence and expedition, it takes a

special type of boldness for Dalia to claim that it was solely due to the Court's delay that it took

*570* **days** to issue the citation.  The Court should reject Dalia's efforts to blame the Court for her

own inaction and lack of diligence.

Rather, the Bachman Affirmation supporting Dalia's opposition brief and cross-

motion suggests that it was indeed Dalia's own deficiencies in pleading and presenting the

Petition and draft citation (and not the fault of the Court) that caused delay in the issuance of the

citation.  (*See* Bachman Aff. ¶¶ 10, 12, 14, 15).  Indeed, Dalia's own evidence supports that the

Petition was rejected by the clerk and the citation was not issued.  *See* 1-3 New York Civil

Practice: SCPA 304.00 (Matthew Bender 2018) (noting that if information required by SCPA

304 is not provided the "petition is deficient on its face and will not be accepted for filing").

Even if the initial Petition and form citation that Dalia was required to draft did

meet the minimum requirements of SCPA 304 and 306 (and, as suggested if not conceded by the

Affirmation of Judith Bachman in Opposition, they did not), the Court should not entertain

Dalia's efforts to pass her laxity in obtaining, and attempting to serve, the citation within the 120

day requirement of SCPA 301(a) to the Court.  In fact, on at least two occasions, Dalia sought

extensions of Court-ordered deadlines by properly making a filing with the Court.  (*See* Dkt.

entries filed 10-2-17 ("Stipulation - Adjourn Motion To 10/17/17") and filed 10-17-17

(Stipulation To Adjourn From 10-17-17 To 12-8-17")).  Dalia is a serial filer in the Court, having

filed papers and sought relief from the Court on multiple occasions from the date the Petition

was purportedly filed on June 14, 2016, to the date the citation was issued on December 19,

2017.  (*See* Dkt. (identifying at least eight written filings by Dalia in the Court since June 2016)).

Clearly, Dalia knew how to request and file any extension of time to serve the Petition within the

4

required 120-day time frame (or the additional, almost, five cycles of that same time frame) before expiration.  She knowingly failed to do so.

For the foregoing reasons, and the reasons set forth in the Opening Brief, the Petition against the TR Entities should be dismissed and her cross-motion denied.

## II.  DALIA'S FAILURE TO SERVE THE TR ENTITIES IS NOT CURED BY ANY LIMITED APPEARANCE IN THIS ACTION

In the Opening Brief, the TR Entities explained that Dalia's attempted service upon them on January 5, 2018 – some 570 days after she purportedly filed the Petition – was indisputably ineffective and lacked diligence.  (*See* TR Br. at 9-11).  In support of their argument, the TR Entities submitted the Affirmation of Mark S. Hirsch in Support of Motion to Dismiss (the "Hirsch Affirmation"), which explained, among other things, that none of the TR Entities maintain an office in New York State.  (*Id.*)

In response, Dalia does not attempt to respond to the TR Entities' arguments or dispute the contents of the Hirsch Affirmation.  Instead, Dalia argues simply that the TR Entities "appeared in this action on the return date of the citation."[3]  (Opp'n Br. at 14).  Adopting Dalia's argument, however, would render CPLR 320(b) obsolete.  CPLR 320(b), which provides that where, as here, a challenge to personal jurisdiction has been raised in a motion to dismiss or an

---

[3]  Dalia attempts to make weight by suggesting that Mr. Hirsch identifies his business address in the signature block of emails as the address of CWM's Offices. (*See* Opp'n Br. at 14 n.1).  But, while Mr. Hirsch identified that address as his business address in the Hirsch Affirmation.  (*See* Hirsch Aff. ¶ 2).  Mr. Hirsch went on to explain that, in addition to his role at CWM, he is Executive Vice President and General Counsel of each of the TR Entities, none of which maintain an office in the state of New York.  (*Id.* ¶ 3).  Moreover, even assuming the TR Entities did have offices at Mr. Hirsch's listed address (and they do not), service was not proper on (i) the four LLCs under CPLR 311-a because there was no personal service on a member, manager, or authorized person, or (ii) Glenclova under CPLR 311 because attempted service was made only on an office administrative assistant (who is not an employee of or in any manner authorized to accept service for CWM let alone Glenclova – an entity to which she has no relation).  (*See* TR. Br. at 10-11).  The speciousness of this argument is further revealed in that in the complaint Dalia filed over six years ago on October 4, 2011, to commence the Delaware Action, she alleged that Glenclova was a Cayman Islands company, that TR Equity I and II were Delaware limited liability companies, and that TR Investors was a New Jersey limited liability company.

answer, an appearance in the action does not confer personal jurisdiction. *See Matter of Katz*, 81 A.D.2d 145, 148-49, 439 N.Y.S.2d 941, 943 (2d Dep't 1981) (applying 320(b) in Surrogate's proceeding and holding that inclusion of jurisdictional objection meant that court did not acquire jurisdiction over respondent). That is precisely what the TR Entities did. Had the TR Entities not appeared to present their motion to dismiss, Dalia undoubtedly would have claimed the TR Entities defaulted (despite Dalia's ineffective service of process upon them). The Court should not permit Dalia's game of "heads I win, tails you lose." Moreover, Dalia should be admonished for now even raising this argument as the TR Entities expressly informed her of the applicability of CPLR 320(b) on the very first page of their Opening Brief. (*See* TR Br. at 1 n.2). Unfortunately, this is typical of the spurious arguments that are often advanced in the Genger-related litigations.

The Court should also reject Dalia's request to extend the time for her to serve the citation. (*See* Opp'n Br. at 14). Dalia cites to CPLR 306-b to support her request, but 306-b requires a showing of "good cause" or an "interest of justice" to obtain an extension. Dalia has not (and cannot) show either. As noted above, Dalia has been an active participant in this litigation at least since purporting to file the Petition. She has made at least eight filings in this Court since June 2016 (*see* Dkt. entries filed 7-6-2017, 7-31-2017, 8-23-2017, 9-27-2017, 10-2-2017, 10-17-2017, and 12-13-2017) and sought at least two extensions of Court-ordered deadlines in her cross-petition proceeding. (*See* Dkt. entries filed 10-2-17 ("Stipulation - Adjourn Motion To 10/17/17") and filed 10-17-17 ("Stipulation To Adjourn From 10-17-17 To 12-8-17")). Allowing Dalia to seek a retroactive extension in light of her understanding of how to obtain extensions from and how to file papers in the Court would allow professional litigants – such as Dalia – to trample on the Court's deadlines and rules with impunity, leaving them the

ability to seek a redo by simply claiming "good cause" without a proper showing.  In fact, Dalia's dilatory conduct is exactly the type of belated behavior found insufficient to satisfy the good cause or interest of justice standard.  *See, e.g., Estate of Jervis v. Teachers Ins. & Annuity Ass'n,* 279 A.D.2d 367, 368, 720 N.Y.S.2d 21, 22 (1st Dep't 2001) (holding that plaintiff's failure to serve process by the deadline and her "unacceptably protracted delay measured from the expiration of the 120-day period" to even attempt service, did not establish either good cause or interest of justice to extend the time for service).  Tellingly, Dalia offers no evidence of having appeared at the Surrogate's Court before the 120-day statutory period had run out to seek the citation or to seek an extension of time to serve the citation, as any diligent attorney would have done.

Notwithstanding Dalia's lack of diligence, it is clear that the interest of justice will not be maintained by granting an extension.  As noted in the TR Entities' Opening Brief, the TR Entities have made every effort to extract themselves from the "bitter and seemingly endless battle" that is the "Genger family's litigation saga."  Delaware, New York, and Federal courts have all agreed that "the Genger family's internecine feud . . . is not the [TR Entities'] problem." (*See* TR Br. at 2-4).  This is the Court's opportunity to be added to the list of courts who have agreed with that proposition since 2010.  The Court should deny Dalia's motion to extend time to serve the citations.

## III.  DISMISSAL OF THE PETITION AS AGAINST THE TR ENTITIES IS ALSO WARRANTED BECAUSE DALIA'S CAUSES OF ACTION ARE INSUFFICIENTLY PLEADED AND WITHOUT MERIT

### A.  Orly Does Not Owe Any Fiduciary Duties to the Trust

As explained in the TR Entities' Opening Brief, Orly, both as an individual and as a beneficiary, did not owe any fiduciary duties to the Trust.  Dalia's opposition brief does not squarely address this factual and legal argument but instead cites to cases applying N.Y. Bus.

7

Corp. Law 626 for the unremarkable position that a stockholder suing in a derivative capacity must account for settlement proceeds he has *received*. (*See* Opp'n Br. at 21-24).

Putting aside the irrelevance of cases construing a specific stockholder statue that has no applicability here, the bigger problem for Dalia is that there is no allegation in the Petition that Orly, in any capacity, actually received any of the Settlement Proceeds. As the Petition admits, Orly has denied receiving any of the Settlement Proceeds (*see* Boyle Aff., Ex. A, ¶ 23), and the Petition does not contain any factual allegation that Orly actually received any of the Settlement Proceeds.[4] Moreover, there is no language in the Settlement Agreement addressing how the Settlement Proceeds are to be apportioned. Because Dalia's fiduciary duty theory (insofar as it is asserted against the TR Entities) rises and falls on Orly's receipt of the Settlement Proceeds (which in Dalia's mind should flow to the Trust), the Petition's inability to sufficiently allege that Orly actually received any proceeds is fatal to Dalia's claims against the TR Entities.

B.     The Petition Fails to Sufficiently Allege Knowing Participation

Dalia cannot sustain her claim for aiding and abetting a breach of fiduciary duty, because she has not pled, with the particularity required under CPLR 3016(b), that the TR Entities knew of Orly's breach of duty and knowingly induced or participated in that alleged breach.[5] (*See* TR Br. at 13-17).

Dalia ignores that the TR Entities are litigation adversaries to Orly and the AG Group and that they are indisputably strangers to the manner (if any) in which the AG Group

---

[4]     Instead, the Petition speculates, upon information and belief, that the Brosers may have been creditors of Orly and then alleges in a conclusory fashion that Orly's purported share of the Settlement Proceeds may have gone to them. (*See* Boyle Aff., A at ¶¶ 18, 43). It's just conjecture upon conjecture.

[5]     A person only "knowingly" participates in a breach of fiduciary duty when he has both knowledge of the breach and when he also provides "substantial assistance" to the breaching party. *See Kaufman v. Cohen*, 307 A.D.2d 113, 126, 760 N.Y.S.2d 157, 170 (1st Dep't 2003).

8

may have apportioned the Settlement Proceeds.  Because Dalia has not alleged (and cannot allege) with any particularity that the TR Entities know or should have known how the Settlement Proceeds were divided up among their adversaries, all claims based on any alleged breach of fiduciary duty and or breach of the Trust – which, as a threshold pleading matter, requires non-conclusory allegations that go beyond mere conjecture or speculation that the TR Entities **actually knew** of such a breach – these claims should be dismissed.  Indeed, although Dalia admits that she has no way of knowing how the Settlement Proceeds were apportioned because that knowledge is "peculiarly within the knowledge" of the recipients of the Settlement Proceeds, she offers no legally sufficient allegation as to how the TR Entities – who share an equally adversarial relationship with Orly and the AG Group as does Dalia – knew how they were to be apportioned.

Rather than point to any allegation in the Petition that would satisfy the pleading requirements, Dalia's opposition instead focuses on her mistaken view that she can sufficiently allege her claims by drawing unreasonable inferences from her speculative and incomplete allegations.  She further argues (and again mistakenly) that she has satisfied the CPLR 3016(b) pleading requirement because her baseless speculations have "notif[ied]" or "inform[ed]" the TR Entities of her claims.  Even the main case Dalia cites expressly rejects this argument.  *See Pludeman v. Northern Leasing Sys., Inc.*, 10 N.Y.3d 486, 492 n.2 (2008) ("We undoubtedly agree . . . that section 3016(b) 'must require more than the "notice pleading" applicable in other cases") (citations omitted).

And Dalia ignores the Court of Appeals opinion in *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 883 N.Y.S.2d 147 (2009), which explored the *Pludeman* decision and held that allegations similar to Dalia's are legally insufficient under 3106(b).  In

9

*Eurycleia*, the Court of Appeals rejected plaintiffs' allegation that defendant was liable under an aiding and abetting theory because it had a role in drafting the allegedly fraudulent offering documents. *See id.* at 560-61, 883 N.Y.S. at 151. The court affirmed dismissal, noting that the complaint lacked any "firm factual pleadings" that defendant actually knew of the alleged wrongful conduct and merely "conclusorily allege[d]" that defendant had become aware of the alleged breach. *See id.* at 559-60, 883 N.Y.S. at 150.

Here, as Dalia admits in her Opposition Brief, the extent of Dalia's knowing participation allegation against the TR Entities is that they "drafted and entered into" the Settlement Agreement with the AG Group. (Boyle Aff., Ex. A at ¶ 35). As noted above, such an allegation fails to provide the firm factual pleading necessary to establish the TR Entities' knowing involvement in any wrongful conduct. *See, e.g., Eurycleia*, 12 N.Y.3d at 559-60, 883 N.Y.S. at 150-51 (affirming dismissal where it was alleged defendant aided and abetting by drafting documents); *see also In re Bear Stearns Litig.*, 23 Misc. 2d 447, 478, 870 N.Y.S.2d 709, 739 (Sup. Ct. N.Y. County 2008) (dismissing aiding and abetting claims where underlying agreement was an arms-length transaction between the parties). Quite to the contrary, the TR Entities were left entirely in the dark by the AG Group as to how the Settlement Proceeds were to be allocated among them. The TR Entities were instructed (as per the Settlement Agreement) to pay the proceeds to the AG Group's counsel and the only matter of interest to the TR Entities was that the action be dismissed with prejudice and that they receive a full release so that finally they could be extricated from the collateral damage being inflicted on them from "the Genger family's internecine feud."

Dalia also fails to respond to the TR Entities' argument that because the Supreme Court had already held that Orly had the right to assert (and the collateral right to abandon, settle,

10

or pursue to judgment) the very claims that were settled – a fact the Petition admits – this judicial

imprimatur, as a matter of law, negates Dalia's conclusory allegation that the TR Entities acted

improperly or tortuously by drafting and entering into the Settlement Agreement. Dalia's failure

to even address this argument amounts to a waiver. *See Alliance Network, LLC v. Sidley Austin*

*LLP*, 43 Misc. 3d 848, 864 n.4, 987 N.Y.S.2d 794, 806 n.4 (Sup. Ct. N.Y. County 2014) (noting

party's failure to oppose arguments in its briefing on motion to dismiss results in waiver of the

issue).[6]

      Because of these pleading failures, Dalia's cause of action should be dismissed.

*See, e.g., Kaufman,* 307 A.D.2d 113, 126, 760 N.Y.S.2d 157, 170 (1st Dep't 2003) (affirming

dismissal of plaintiff's claim for aiding and abetting breach of fiduciary duty dismissed in

absence of evidence that defendant acted with actual knowledge).

      C.     The Petition Fails to Sufficiently Allege the TR Entities
                  Knowingly and Improperly Induced a Breach of Contract

      Dalia's tortious interference claim should be dismissed because the Petition fails

to sufficiently allege that the TR Entities intentionally and improperly procured Orly's alleged

breach of the Trust. (*See* TR Br. at 17-18). Dalia wholly ignores these arguments and has

therefore waived any opposition as to these arguments.

      Instead, Dalia only addresses the justification argument asserted by the TR

Entities. (*See* Opp'n Br. at 26). Insofar as justification is concerned, the TR Entities' argument is

that they had a lawful purpose in entering into the Settlement Agreement with Orly – an

---

[6]    Similarly, Dalia does not address the TR Entities' argument that if Orly was acting as a "de facto trustee" of the Trust, then as a matter of law and under the express terms of the Trust, no liability can attach to the TR Entities because they had no liability regarding how the Settlement Proceeds were to be applied. (*See* TR Br. at 14-15 & n.9). Dalia's failure to respond to or oppose this argument amounts to concession. *See Alliance*, 43 Misc.3d at 864 n.4, 987 N.Y.S.2d at 806 n.4; *TSR Group, LLC v. Levitin*, 2016 N.Y. Slip Op. 31322(U), at *10 (Sup. Ct. N.Y. County 2016) (dismissing claim on a motion to dismiss because plaintiff "fail[ed] to respond to or even address defendants' arguments in its opposition papers").

indisputable fact evidenced by the orders of the Supreme Court (and the Petition's admission) that Orly had been judicially approved to bring the claims in the first instance.[7]

Dalia's sole argument in opposition is that she is not required to "plead" an absence of justification. However, as even the sole case she cites notes,[8] because the TR Entities have now raised justification Dalia must either allege or submit evidence to negate any justification to fight off a pre-answer motion to dismiss. *See Torrenzano Group, LLC v. Burnham*, 26 A.D.3d 242, 242-43, 810 N.Y.S.2d 42, 43 (1st Dep't 2006) (dismissing tortious interference claim under CPLR 3211 where defendant raised issue of justification and plaintiff failed "to adduce evidence in opposition sufficient to raise an issue of fact in that regard"). Dalia has not and cannot do so. The record is indisputable, and the Petition admits, that the Supreme Court approved Orly's standing to assert these claims. Thus, the TR Entities' settlement with Orly in the very capacities she was legally entitled to assert, was justified and cannot be deemed wrongful, and negates any inference that the TR Entities acted with the intent to procure any breach of the Trust. Moreover, there was a clear economic justification for the TR Entities and the AG Group to settle their disputes and to obtain the releases contained therein. Any purported harm to the Trust (if any) was incidental to these legally justified and lawful purposes and unbeknownst to the TR Entities.

---

[7]  Notably, Orly was not the only party who brought claims against and settled with the TR Entities. Arie Genger joined Orly as a plaintiff in the New York Action and the Brosers were disputing claims brought against them by the TR Entities.

[8]  *See Luxury Autos of Huntington, Inc. v. Volkswagen Grp. of Am., Inc.*, 49 Misc. 3d 1207, 2015 N.Y. Slip Op. 51502(U), at *6-7 & n.9, 26 N.Y.S.3d 725 (Sup. Ct. Nassau County 2015) (noting that dismissal is appropriate at pleading stage if defendant demonstrates defense of justification).

D.    The Money Had and Received and Turnover
      Causes of Action Should be Dismissed

Because Dalia offers no opposition to the TR Entities' argument that the turnover

claim should be dismissed, dismissal of that claim is warranted. *See TSR Group, LLC*, 2016

N.Y. Slip Op. 31322(U), at *10 (Sup. Ct. N.Y. County 2016). Dalia also effectively concedes

that, insofar as the Settlement Proceeds that already have been paid by the TR Entities, she has

no viable money had and received claim as against the TR Entities. (*See* Opp'n Br. at 27).

Dalia's only position is that because some of the Settlement Proceeds have not

been paid, she states a viable claim against the TR Entities. (*Id.*) But Dalia offers no authority

for this proposition, and as the authority cited by the TR Entities establishes, an essential element

of any money had and received claim is a ***defendant's*** "receipt" of money belonging to the

plaintiff. *See Fesseha v. TD Waterhouse Investor Servs., Inc.*, 193 Misc. 2d 253, 260, 747

N.Y.S.2d 676, 683 (Sup. Ct. N.Y. County 2002). Because there is no allegation in the Petition

(nor could there have been) that the TR Entities "received" any money belonging to the Trust,

this claim should be dismissed.[9]

Dalia is simply confused when she asserts that her allegation that some of the

Settlement Proceeds have not yet been paid either satisfies the pleading requirements for these

causes of action (or any of her other claims) or are recoverable under any of these claims. *First*,

all of these unpaid amounts are governed by promissory notes that (as the Petition concedes) are

not mature, and will only be paid upon the satisfaction of certain conditions, not all of which

have yet occurred, and only after the assessment of certain substantial set-offs for costs and

expenses incurred by the TR Entities in defending continuing litigation, including the present

---

[9]    In fact, the Petition actually admits that none of the TR Entities received or have in their possession any of the
Settlement Proceeds. (*See* Boyle Aff., Ex. A at ¶¶ 72-73). This admission forecloses these claims.

proceeding. (*See* Boyle Ex. A at ¶ 22). *Second*, insofar as these amounts have not yet been paid, Orly cannot factually be in breach of any duty to remit to the Trust money that she has not yet received (all or a portion of which she may never receive). Because Orly has no such duty, the TR Entities (i) cannot be said to have actual knowledge of a breach that has not yet occurred, and (ii) cannot have knowingly or improperly induced Orly to breach a duty she does not yet have. Thus, insofar as any cause of action by Dalia seeks recovery for or relies on the portion of the Settlement Proceeds that have not yet been paid, dismissal of those causes of action is warranted.

## IV. RES JUDICATA BARS DALIA'S CLAIMS

The purpose of the res judicata bar is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Ins. Co. of State of Pa. v. HSBC Bank USA*, 10 N.Y.3d 32, 38, 852 N.Y.S.2d 812, 815 (2008) (citations omitted). Because, as demonstrated in the TR Entities' Opening Brief (TR Br. at 19-22), the claims Dalia seeks to assert in the Petition were either dismissed by the Supreme Court or dismissed pursuant to stipulation in prior proceedings, or, even if not asserted, could have been asserted in those prior proceedings, res judicata warrants dismissal of the claims against the TR Entities.

In responding to the TR Entities' res judicata arguments, Dalia neither responds directly to any of the legal authorities cited in support of dismissal nor the voluminous record evidence presented by the TR Entities that proves that Dalia's current claims are subject to a res judicata bar. What Dalia does instead is she conveniently ignores her role in the Delaware Action when, as trustee of the Trust, on August 30, 2013 – and after she was made aware of the Settlement Agreement – she stipulated to a settlement with prejudice in the Delaware Action (the "Delaware Dismissal"), which, as asserted in the TR Entities' Opening Brief (TR Br. at 6-7, 20-

14

21), bars the claims she brings in the Petition.[10] As the authorities cited by the TR Entities

establish (and which Dalia does not contest), Dalia's stipulated dismissal with prejudice in the

Delaware Action bars re-litigation of not only the claims directly asserted in that action but of all

other claims arising out of the same transaction that could have been asserted in that proceeding,

even if they are based on different theories or seeking different remedies. *See, e.g., O'Brien v.

City of Syracuse*, 54 N.Y.2d 353, 357-58, 445 N.Y.S.2d 687, 689 (1981); *Fifty CPW Tenants

Corp. v. Epstein*, 16 A.D.3d 292, 293, 792 N.Y.S.2d 58, 59 (1st Dep't 2005).

As the TR Entities pointed out in their Opening Brief (TR Br. at 20-21), the

fundamental gravamen of the Petition concerns the issue of ownership of the Trans-Resources

shares and any concomitant right to monetize that ownership interest, whatever it may have been.

In her Opposition Brief, Dalia acknowledges the relevancy of the determination of beneficial

ownership on her claims when she states: "It is the very fact that the settlement 'finally and fully

resolved' the issues of ownership of the shares with Orly . . . that means that this Turnover

Proceeding seeking the Settlement Proceeds must stand." (Opp'n Br. at 17).

It is that acknowledgment that cements dismissal here. Dalia equates the right to

the Settlement Proceeds to the settlement of the share ownership issue. If, as Dalia concedes, the

settlement of the ownership of the shares issue, "is that very fact that entitle[s] the Orly Trust to

the turnover of the Settlement Proceeds" (*see* Opp'n Br. at 17), the Delaware Dismissal, in which

---

[10]  In her Opposition Brief, Dalia claims that it was Orly who "mooted" the Delaware Action because she had
already settled the New York Action and acknowledged that the TR Entities were the "record and beneficial"
owners of the Trans-Resources shares underlying all these claims. (*See* Opp'n Br. at 5-6, 20). This is an
express concession that Orly had authority to act on behalf of the Trust. Any suggestion to the contrary would
mean that Dalia failed to discharge her fiduciary duty to the Trust by acceding to Orly's wishes to dismiss the
case. Indeed, Orly was not even a party to the Delaware Action. Thus, Dalia's position would have this Court
ignore the fact that it was Dalia, as trustee, and subject to her fiduciary responsibilities to the Trust, that agreed
to the Delaware Dismissal. Absent compliance with her fiduciary obligations to the Trust, Dalia could not have
agreed to the Delaware Dismissal unless she too agreed that her claims against the TR Entities, that the Trust
was entitled to and/or the beneficial owner of the Trans-Resources shares, including any ancillary claims related
to the ownership of the shares, were without merit.

Dalia, as trustee, unequivocally settled that ownership issue with the TR Entities, stipulated that the TR Entities are the owners "beneficially, of record and otherwise" of all the Trans-Resources shares, and agreed to dismiss with prejudice the Trust's claims that it was an owner of the shares (*see* Boyle Aff., Ex. F at ¶¶ 2, 4), her actions as trustee stipulating to the Delaware Dismissal bar the claims here. (*See* TR Br. at 20-21).

Further, Dalia does not dispute that when she sought substitution into the New York Action she did so to assert the very claim she asserts in the Petition: that the Settlement Proceeds belong to the Trust. (*See* TR Br. at 21-22; Boyle Aff., Ex. I, at 1). When the First Department rejected Dalia's challenge to the final dismissal of that action, *Genger v. Genger*, 144 A.D.3d 581, 581, 41 N.Y.S.3d 414, 415 (1st Dep't 2016), it expressly rejected Dalia's attempts to bring those claims, yet another basis for res judicata preclusion here.

## V.   EVEN IF NOT DISMISSED FOR THE ABOVE REASONS THE COURT SHOULD STAY OR DISMISS THIS PROCEEDING

*First*, should this proceeding not be dismissed, it should be stayed pending resolution of the threshold issue of whether Dalia is a proper trustee of the Trust. *See* CPLR 2201; *see also In re Orly Genger*, No. 2008-0017/B, Decision at 12 (Boyle Aff., Ex. C) (noting there are "significant issues" as to whether Dalia is a proper trustee). And, *second*, Dalia's already pending cross-petition, in which she asserts identical claims of breach of fiduciary duty and turnover against Orly concerning the Settlement Proceeds provides yet another reason for the Court to exercise its discretion to dismiss or stay any proceedings on this Petition.

And, finally, the Court should reject Dalia's cross-motion to consolidate this proceeding with any other Genger proceedings. As set forth in the TR Entities' Opening Brief (*see* TR Br. at 1-4), the time for any court to use its discretion to allow the Genger family to wage their personal war in the New York courts must come to an end. Dalia's claim that the

goals of judicial economy, unnecessary duplication, the avoidance of unnecessary cost, and the prevention of incongruous decisions will be served by consolidation is laughable: Dalia and the other members of the Genger family have spent a generation (and a fortune) in courtroom combat, overburdening the state and federal court here and in Delaware, presenting bewildering arguments, and unfortunately targeting unrelated third parties, such as the TR Entities, in their litigation blitz. The personal animus at the heart of these cases and the hostility under which they are litigated belies any claim of economy or efficiency.

Instead of consolidation, the appropriate discretionary result here is for the Court to dismiss this Petition under CPLR 3211(a)(4) in favor of the pending cross-petition proceeding. Insofar as "both suits arise out of the same subject matter or series of alleged wrongs," a fact on which Dalia effectively agrees (*see* Opp'n Br. at 16), dismissal of this proceeding is appropriate. *Syncora Guarantee Inc. v. J.P. Morgan Sec. LLC*, 110 A.D.3d 87, 96, 970 N.Y.S.2d 526, 533 (1st Dep't 2013) (citation omitted).

## CONCLUSION

For the foregoing reasons and the reasons presented in the TR Entities' Opening Brief, the TR Entities respectfully request that this Court dismiss the Petition and all claims therein as against the TR Entities, and grant the TR Entities such other relief as may be just and proper.

Dated:  New York, New York
        February 26, 2018

Respectfully submitted,

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

John Boyle
Four Times Square
New York, New York 10036
(212) 735-3000
john.boyle@skadden.com

17

*Attorneys for Glenclova Investment Co.,*
*TR Investors, LLC, New TR Equity I, LLC,*
*New TR Equity II, LLC, and Trans-Resources*
*LLC.*

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
: ss.:
COUNTY OF NEW YORK  )

Julie M. Thaxton, being duly sworn, deposes and says:

1. I am not a party to the action, am over 18 years of age and am employed by

Skadden, Arps, Slate, Meagher &  Flom LLP, Four Times Square, New York, NY 10036.

2. On February 26, 2018 I served a true copy of the

- ***Reply Memorandum of Law in Support of the TR Entities' Motion to Dismiss the Petition for Turnover of the Trust Property and Other Relief Filed on June 14, 2016, by Dalia Genger as Trustee of the Orly Genger 1993 Trust and in Opposition to Petitioner's Cross-Motion***

by Federal Express, overnight delivery upon:

Judith Lisa Bachman, Esq.
254 S. Main Street, Suite 306
New City, New York 10956

Kelley Drye & Warren LLP
John Dellaportas
101 Park Avenue
New York, NY 10178

Kasowitz Benson Torres LLP
Michael Paul Bowen
1633 Broadway
New York, NY 10019

Steven Riker, Esq.
One Grand Central Place, 46th Floor
60 East 42nd Street
New York, NY 10165

Leon Friedman
685 Third Avenue, 25th Floor
New York, NY 10017

Mark Freyberg
The Freyberg Law Group
950 Third Avenue
Suite 3200
New York, NY 10022

Arnold Broser
5371 Fisher Island Drive
Miami Beach, FL 33109-0316

Arie Genger
17001 Collins Avenue
North Miami Beach, FL 33160-3645


_Julie M. Thaxton_
Julie M. Thaxton

Sworn to before me this
26th day of February 2018.


Matthew Koenig
Notary Public, State of New York
Reg. No. 01KO6211943
Qualified in New York County
Commission Expires Sept. 23, 2021