SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------------------
In the Matter of DALIA GENGER, trustee of the
ORLY GENGER 1993 TRUST,

Petitioner,

     -against-                                       File No. 2008-0017E

ORLY GENGER, ARIE GENGER, GLENCOVA INVESTMENT
COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC,     Hon. Nora S. Anderson
NEW TR EQUITY II, LLC, TRANS-RESOURCES, INC, ARNOLD
BROSER, DAVID BROSER, JOHN DOES 1-20 AND JANE
DOES 1-20,

Respondents.
--------------------------------------------------------------------------------

PETITIONER DALIA GENGER'S
MEMORANDUM OF LAW IN OPPOSITION
TO MOTIONS TO DISMISS
AND IN SUPPORT OF CROSS-MOTION

Judith Bachman, Esq.
The Bachman Law Firm
254 S. Main Street, Suite 306
New City, New York 10956
845-639-3210

Table of Contents

Table of Authorities                                                          ii

Preliminary Statement                                                         1

Statement of Facts                                                            1

Point I

    The Claims in the Amended Petition
    Are Not Barred By Res Judicata
    Because No Court Has Ever Adjudicated
    Entitlement to Settlement Proceeds                          11

Point II

    Orly is a De Facto Trustee and Claims
    are not Barred by the Statute of
    Limitations                                                 12

Point III

    TR is a Proper Party To this Action Since it Owes $15 Million
    Under the Settlement Which Should be Paid to the Orly Trust  16

Point IV

    Amended Petition Should Not be Dismissed on Any Other
    Grounds Raised By Respondents                               19

Conclusion                                                                    20

Table of Authorities

In re Accounting of Sakow, 219 A.D.2d 479, 631 N.Y.S.2d 637
(1st Dep't 1995)                                                                     13, 14


In re Barabash, 31 N.Y.2d 76, 286 N.E.2d 268, , 334 N.Y.S.2d 890 (1972)              16


In re Beiny, File No. No. 2003-51139 (Surr. Ct Bronx Cty. July 17, 2003)             13


In re Davidson, File No. 78/2956/A, 2017 NYLJ, LEXIS 3050 (Surr. Ct. N.Y.
Cnty. Oct. 25, 2017) (Anderson, J.)                                                  5, 14


In re Deyette, 16 Misc.3d 1124(A), 847 N.Y.S.2d 901 (Sup. Ct. Nassau Cnty. 2007)     13


In re Estate of Jewett, 145 A.D.3d 1114, 42 N.Y.S.3d 443 (3d Dep't 2016)             14


In re Groman, 36 Misc.3d 1204(A), 951 N.Y.S.2d 86, (A) (Surr. Ct. N.Y. Cnty. 2012)
(Anderson, J.)                                                                       13


In re King, 194 A.D.2d 726, 599 N.Y.S.2d 295 (2d Dep't 1993)                         13, 14


Knobel v. Shaw, 90 A.D.3d 493, 936 N.Y.S.2d 2 (1st Dep't 2011)                       15


Rainbow Coop New York, 63 A.D.3d 415 (1st Dep't 2009)                                18


Rayo v. Vitale, 38 Misc.3d 1211, 966 N.Y.S.2d 349 (Sup Ct. Kings Cnty. 2012)         14


Sakow v Waldman, 124 A.D.3d 860, 863 (2d Dep't 2015)                                 11


Samerson v. Mather Mem. Hosp., 1995 NYLJ Lexis 2533(Sup. Ct. Suffolk Cnty. 1995)     11


Twin Holdings of Delaware LLC v. CW Capital, LLC, Index No. 2009-32723
(Sup. Ct. Nassau Cnty. 2009)                                                         18

United States Trust Co. v. Alpert, 10 F. Supp. 2d 290, 1997 U.S. Dist. Lexis 24081
(S.D.N.Y. 1998)                                                                  11

Westchester Religious Inst. v. Kamerman, 262 A.D.2d 131, 131, 691 N.Y.S.2d 502
(1st Dep't 1999)                                                                 15

PRELIMINARY STATEMENT

Petitioner Dalia Genger ("Dalia" or "Petitioner"), trustee of the Orly Genger 1993 Trust

(the "Orly Trust"), opposes the Respondents' respective motions to dismiss because Orly and the

third parties must account for assets that should be turned over to the Orly Trust.

STATEMENT OF FACTS

On or around December 13, 1993, Arie Genger ("Arie") settled the Orly Trust pursuant to

a written trust agreement. Amended Petition, dated March 28, 2018 ("AP"),  a copy of which is

attached as Exhibit 3 to the Affirmation of Judith Bachman ("Bachman Aff."), dated May 23,

2018, ¶6. Orly Genger ("Orly") is a beneficiary of the Orly Trust. Dalia is the trustee of the Orly

Trust.

The Orly Trust was part of an effort to safeguard assets for Orly and her children.

Specifically, pursuant to Article ELEVENTH, Section C of the Trust Agreement, all trust funds

are to be held in the name of the Orly Trust, and no Orly Trust assets are to be used for the

benefit of Orly's creditors (the "Trust Agreement Obligations"). AP ¶ 7. This was put in place to

protect Orly and her children from the reach of creditors and Orly's own misguided financial

choices. This is at the heart of every trust, including the Orly Trust.

In July 2010, Orly instituted a derivative action in the Supreme Court, New York County

entitled *Arie Genger, et al. v. Sagi Genger, et al.,* Index No. 651089/2010.  In this action (the

"Orly Trust Derivative Litigation"), Orly expressly brought claims "on behalf of the Orly Trust

as the beneficiary of the Orly Trust." AP, ¶ 9.  Orly's complaint in the Orly Trust Derivative

Litigation sought to assert claims with respect to the Orly Trust's putative beneficial ownership

in shares of stock in a company called Trans-Resources, Inc. ("TRI"). Orly later amended her

pleading to assert claims against, *inter alia*, the purchasers of those TRI shares, Glenclova

-1-

Investment Company, TR Investors, LLC, New TR Equity I, LLC, and New TR Equity II, and

TRI (collectively, "TR"). Id.

Orly declared in the second paragraph of her derivative complaint, that she brought the

"action on behalf of the Orly Trust as the beneficiary of the Orly Trust to protect her interests

thereunder." (AP, Ex. 2 at 1, emphases added.). Although Orly purported to also bring claims in

her "individual capacity," the only harm she identified in her Complaint was to the Orly Trust.

As she described her own "NATURE OF THE CASE" in her Complaint:

> In this case, Plaintiffs Arie and Orly, in her individual capacity
> and on behalf of the Orly Trust, are seeking declaratory, injunctive,
> and other equitable relief, as well as additional compensatory
> damages ... arising from, *inter alia*, ... the tortious conduct of the
> defendants ... in connection with [TR's] campaign to take over and
> dilute the value of plaintiffs' interests in TRI, ... including the Orly
> Trust's interest in a portion of this TRI stock .... (NYSCEF Doc.
> No. 112 at 4.)

Justice Jaffe of the Supreme Court, New York County –over the objections of the

defendants therein – ultimately adopted Orly's position that she "has legal standing to represent

the Orly Trust" and "may act on behalf of the Orly Trust unless and until the Surrogate's Court

rules otherwise in an appropriate action there." AP ¶ 10.

During the pendency of the Orly Trust Derivative Litigation, Orly moved to restrain

Dalia from pursuing what Orly characterized as a "duplicative" action that Dalia had brought

directly against TR before the Delaware Chancery Court. AP ¶ 11. According to Orly: "[i]n the

instant action ..., I seek, among other things, the return of those [same] TRI Shares to the Orly

Trust." Also, according to Orly, Dalia's "contention that the Orly Trust is not a party to this

action ... is meritless. Orly is prosecuting this action on behalf of the Orly Trust." The Supreme

Court agreed, restraining Dalia from pursuing the Delaware action by which Dalia had sought to

obtain ownership of the TRI shares for the Orly Trust. AP ¶ 11.

-2-

In June 2013, Orly disclosed that she had "entered into a confidential settlement agreement ("Settlement") to resolve all issues among the stipulating parties" of the Orly Trust Derivative Litigation. AP ¶ 14. However, Orly did not share a copy of the Settlement with Dalia as Trustee at that time – to the contrary she successfully resisted doing so. Thus, Dalia first saw the terms of the Settlement only much later, when the document was produced in a federal court action to which Orly was a party.

In the Settlement, TR agreed to pay $32.3 million to the so-called "AG Group," consisting of Orly, her father Arie, and Arnold and David Broser (collectively, "the Brosers"). AP ¶ 18. Upon information and belief, the Brosers are creditors of Orly personally and/or her father, to whom Orly and Arie owe many millions of dollars. The payments were broken up into: (a) an immediate payment of $17.3 million and (b) two follow-up payments of $7.5 million.

At a hearing before Justice Jaffe on March 25, 2015, counsel to TR confirmed that $17.3 million of the Settlement proceeds has already been paid (none of it to the Orly Trust), but that the remaining $15 million, less possible "set-offs," has yet to be paid and is subject to possible acceleration or extension of the nominal payment dates. AP ¶ 22.

As noted above, none of the aforementioned $17.3 million has been remitted to the Orly Trust. Absent this Petition, none of the remaining $15 million will be paid to the Orly Trust either, per Section 8(b) of her Settlement. AP ¶ 23. Orly has testified that she has not personally received any of the Settlement proceeds. Id. This means $17.3 million of the Settlement proceeds has been paid to other members of the "AG Group," i.e., the Brosers and Arie (the "Initial Payment"), for the settlement of claims belonging principally to the Orly Trust. AP ¶ 23.   This      violates      the express language and purpose of the Orly Trust, which was to protect Orly and her children from creditors and misguided financial decisions.

-3-

Consistent with her fiduciary duty to the Orly Trust, the express terms of the Orly Trust, and black-letter New York law, Orly was required to ensure the Settlement proceeds were paid to the Orly Trust. AP ¶ 24. However, Orly failed to comply with these duties and obligations. Orly therefore breached her fiduciary duty to the Orly Trust.

Because of the breach of her obligations and the past and future payment of proceeds from the Settlement, on June 14, 2016, Dalia filed a petition ("Petition") seeking recovery against Orly, Arie, TR, and the Brosers for their actions and conflicting claims to the Settlement proceeds. Bachman Aff., dated May 21, 2018, ¶ 2.

While the Respondents knew this Petition was pending, Orly filed a petition to once again try to remove Dalia as trustee of the Orly Trust (the "Removal Action"). (She had several prior, unsuccessful attempts.) Bachman Aff. ¶ 3. While only Orly, Dalia and the contingent remainderman beneficiary, the Sagi Genger 1993 Trust, are parties to the Removal Action, Orly, it would appear, is seeking to remove Dalia in order to satisfy her promise to the other Respondents in the Settlement to install a replacement trustee who will bless their diversion of Settlement proceeds. Bachman Aff. ¶ 3.

On February 5, 2018, all Respondents moved to dismiss the Petition on various grounds. On the return date of the motions to dismiss the Petition, the Court held an off-the-record conference with counsel. The Court encouraged the parties so as to resolve the procedural issues at hand and allow the Court to focus on the substantive questions presented. Bachman Aff. ¶ 4.

Specifically, the Court advised that it would likely view Orly as a de facto fiduciary in her role as derivative plaintiff for the Orly Trust. Bachman Aff. ¶ 4.

The Court also reminded the parties that disputes over the timing of the issuance of the citation and service questions would likely be curable and would only delay the resolution of the

-4-

substantive issues. Bachman Aff. ¶ 4.  The Court noted that there would likely be no statute of limitations bar to the Petition citing In re Davidson, File No. 78/2956/A, 2017 NYLJ, LEXIS 3050 (Surr. Ct. N.Y. Cnty. Oct. 25, 2017) (Anderson, J.).  Bachman Aff. ¶ 4.

Accordingly, the Court asked the parties to confer on procedural issues and find a way to resolve them without the need for Court intervention.  Further, the Court suggested that Dalia consider streamlining her Petition to address the necessity of having TR as a party to the action.

Following the suggestion of the Court, on the day after the Court conference, Dalia's counsel called TR's counsel and offered to entirely remove TR from the Petition if it would agree to withhold, at the time it might otherwise be due, payment of the $15 million dollars yet to be paid under the Settlement until a final and non-appealable judgment had been entered by this Court. Bachman Aff. ¶ 6.  Under that agreement, the status quo would have been preserved, and the Court would have been able to move forward without TR's presence.  That would also have preserved the maximum settlement payment to be made by TR (which should be in Orly's interest too) because the monies to be paid are potentially subject to offset, including for TR's attorney's fees.

TR's counsel advised that he would have to confer with the other parties (presumably including everyone, Orly, Arie, and the Brosers) regarding Dalia's proposal and their responses – to, as the Court noted in a later call, "get their stories straight." Bachman Aff. ¶ 7.

Thereafter, Dalia's counsel received no response, at all, to that proposal. Bachman Aff. ¶ 8.

The Court then held a call with all counsel and asked for an update as to the parties' efforts to resolve the procedural issues.

-5-

TR and Orly's counsel admitted that they could not agree among themselves as to how to resolve the procedural issues and that they had not even broached the subject with Dalia's counsel or otherwise responded to her offer. Bachman Aff. ¶ 9.

The Court advised that if TR, Orly, Arie, and the Brosers insisted on pressing their procedural objections to the Petition, the Court might not be able to resolve their motions for an extended period of time, due to the significant backlog on the Court's docket.  The Court again urged the parties to try to resolve the procedural issues without the Court's intervention. Bachman Aff. ¶ 10.

All counsel asked for more time to try to resolve the procedural issues and allow the Court to focus on the substantive questions.  In response, the Court set another date for a conference call.

As promised during that call, Dalia's counsel sent two written proposals to counsel for TR.  Bachman Aff. ¶ 12.  First, Dalia's counsel reiterated the prior proposal.  Second, Dalia offered an alternative proposal.  The alternative was that if TR would waive all of its procedural arguments (service of process, names of the parties, etc.), then Dalia would file an amended petition omitting the monetary claims against TR related to the previously-made settlement payment of $17.3 million (all of which was paid to parties other than the Orly Trust) and would instead only assert equitable claims (such as turnover, declaratory judgment and injunction) against TR related to the $15 million yet to be paid.  Bachman Aff. ¶ 13.

TR declined both of those proposals. Bachman Aff. ¶ 13.

Taking the Court's concern to heart, Dalia filed the Amended Petition to streamline the claims relating to TR.  Bachman Aff. ¶ 14.

-6-

The Amended Petition omits any monetary claims against TR related to the previous settlement payment of $17.3 million (all of which was paid to parties other than the Orly Trust), and instead only asserts equitable claims (such as turnover, declaratory judgment and injunction) against TR related to the $15 million yet to be paid.

Incredibly, Orly now has the gall to question the motivation for and timing of the filing of the Amended Petition which streamlines the claims against TR, as the Court asked.

During the final call with the Court, TR, Orly, Arie, and the Brosers admitted again that they could not coordinate a proposed resolution of the procedural issues and did not confer with Dalia about the issue. Bachman Aff. ¶ 15.

The Court reminded TR, Orly, Arie, and the Brosers that it would be a long time before it could consider their motions.

With unmitigated nerve, the Brosers (Orly and Arie's litigation funders) asked the Court to prioritize their claims – presumably so that they could take the Orly Trust Settlement proceeds for themselves; the very danger which the Amended Petition seeks to avert. Dalia's counsel objected to that request. Bachman Aff. ¶ 16.

Now, even with the streamlined Amended Petition focusing only on the $15 million yet to be paid by TR, TR bemoans its presence in this action.

But TR still owes $15 million and has admitted that that money is for settlement of claims of the Orly Trust. As TR has previously explained:

> It was in reliance upon the prior determination of the court that Orly, as beneficiary, was authorized to act on behalf of the Trust, that the TR Entities, Orly (both individually and as beneficiary of the Trust), and the other parties entered into the Settlement Agreement and into the NY Dismissal with Prejudice. Indeed, the NY Dismissal with Prejudice was "so ordered" by the court and expressly notes that Orly was acting "individually and as beneficiary of" the Trust. (Boyle Aff., Ex. E at 1). Most important,

-7-

> Dalia acknowledges that, pursuant to court rulings, <u>Orly had legal standing to represent the Trust</u>. (See Boyle Aff., Ex. A [Amended Petition] at ¶¶ 9-11).
>
> The Settlement Agreement between the TR Entities and the AG Group provided that the AG group was to receive up to $35 million over time, less amounts already held in escrow and subject to certain setoffs and adjustments (the "Settlement Proceeds"), in return for a full release of claims against the TR Entities, including <u>a general release by Orly, both as an individual and as beneficiary of the Trust</u>, and a declaration that the TR Entities own "all right, title and interest (beneficially, of record, and otherwise)" to all of the Trans-Resources shares. (See Boyle Aff., Ex. E at ¶¶ 2-4).

TR Brief, at 6-7 (emphases added).

And, in a letter dated June 28, 2013 to the court <u>on behalf of all settling parties "including ... Orly Genger</u>," TR confirmed that: "A material term of the agreement among the settling parties was the dismissal of *all* claims presently pending against one another, in whatever capacity they were brought. [If the settlement stipulation was drafted so as to] have the effect of *not* dismissing Orly Genger's derivative claim against [TR], contrary to the agreement of the settling parties. Excluding such claims from the claims that are to be dismissed is not what [TR] bargained and paid for in the settlement . . ." AP ¶ 15.

TR reaffirmed that the Settlement included the claims of the Orly Trust: "[Any suggestion] that the confidential settlement agreement *might* only dismiss Orly's individual claims against [TR], but not resolve the Orly Trust's claims against the Trump Group [Entities] and the TPR Group . . . is counterfactual. This Court has already held that certain of Orly's claims in this action, including the remaining claims, are derivative in nature, and may be maintained by Orly on behalf of the Orly Genger 1993 Trust. ... In settling the claims among them, [TR], Orly and Arie agreed to the dismissal of all claims presently pending against one another. This agreement is memorialized in the Second Amended Stipulation of Discontinuance." AP ¶ 19.

-8-

Arie, himself, too confirmed that the Settlement of the Orly Trust Derivative Litigation was done on behalf of the Orly Trust when he informed the Supreme Court, New York County that "Defendants Arie Genger and <u>Orly Genger, in her individual capacity and on behalf of the Orly Genger 1993 Trust</u>" had settled the Orly Trust Derivative Litigation and that they requested the action be dismissed.  Bachman Aff. ¶ 16, Ex. 1 (Letter from Paul D. Montclare, dated on June 18, 2013, at 1).

And the Settlement agreement itself states that Orly had settled her claims against TR both "in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust" – the latter being the very capacity by which the Supreme Court permitted Orly to assert derivative claims. AP ¶ 17. According to its signatories, the purpose of the agreement was "to resolve all issues, disputes and disagreements between [Orly and the other Settling parties], including but not limited to the issue of ownership of all [TRI] shares," most significantly those TRI shares claimed by the Orly Trust.

Evidencing this intent to settle the Orly Trust derivative claims, in Section 6(a) of the Settlement, Orly settled and released all of her claims in both her derivative and individual capacities (Orly releasing the Trumps "in all capacities.") AP ¶ 20.

In Section 8(a) thereof, Orly further agreed to "cause" the Orly Trust to do the same, which she later did, advising the Delaware Chancery Court that she favored dismissal of Dalia's action on behalf of the Orly Trust.  Orly's attorneys advised the Delaware Chancery Court that Orly was "acknowledg[ing] individually and <u>in her capacity as the beneficiary of her trust</u> that the Trump Group are the record and beneficial owners of the TRI shares which had been distributed to the Orly Trust." AP ¶ 20.

And most tellingly, under Section 8(b) of the Settlement, Orly agreed as a condition to any agreement to a replacement trustee for the Orly Genger 1993 Trust to "use [her] best efforts to cause [any replacement] trustee to agree in writing on behalf of the Orly Genger 1993 Trust that it shall be a member of the AG Group for purposes of providing the indemnity contained in Paragraph 5." AP, Ex. 7.

On May 15, 2014, U.S. District Judge Keenan held that: "Pursuant to [the [S]ettlement, Orly acknowledged that [TR] is the record and beneficial owner of the Orly Trust Shares. ... At long last, the dispute regarding ownership of the Orly Trust Shares is over." AP, Ex. 8. And moreover, "Orly monetized her beneficial interest in the Orly Trust['s] [TRI] shares for $32.3 million ...." AP ¶ 18.

Now, notwithstanding the Court's warning to the contrary, all of the Respondents have once again moved to dismiss the Amended Petition on procedural grounds. Dalia opposes the motions to dismiss and cross-moves, as necessary, for an extension of time to serve process and/or permission to make substituted service (or nunc pro tunc) and to file an affidavit of service, and to consolidate this proceeding with the Removal Action also pending in this Court.

ARGUMENT

Point I

The Claims in the Amended Petition
Are Not Barred By Res Judicata
Because No Court Has Ever Adjudicated
Entitlement to Settlement Proceeds

Orly does not, indeed she cannot, dispute that: (a) she brought derivative claims on behalf of the Orly Trust in the case entitled *Arie Genger et al v. Sagi Genger et al*, Index No. 651089/2010; (b) that she settled the derivative Trust claims in 2013 for $32.3 million; and (c) to date, she has remitted none of those settlement proceeds to the Trust. Nor can she dispute that, under New York law, the proceeds from a derivative settlement belong to the injured party (in this case, the Trust), not the derivative plaintiff (in this case, Orly). See Sakow v Waldman, 124 A.D.3d 860, 863 (2d Dep't 2015) ("A shareholder of a corporation, even of a closely held corporation, may not recover in his or her individual capacity for wrongs committed against the corporation, and any recovery obtained pursuant to a derivative cause of action asserted by a shareholder is obtained for the benefit of the injured corporation.")

However, Respondents claim that Dalia is somehow barred by the doctrine of "res judicata" from recovering the settlement proceeds for the Trust. That is utterly baseless. Under New York law, in order for the terms of a settlement (beyond just the dismissal of the underlying case) to be *res judicata*, the terms of the settlement must be "agreed to by all parties present ... [and] recorded in the minutes of the court." Samerson v. Mather Mem. Hosp., 1995 NYLJ Lexis 2533, *11 (Sup. Ct. Suffolk Cnty. 1995); see also United States Trust Co. v. Alpert, 10 F. Supp. 2d 290, 1997 U.S. Dist. Lexis 24081 (S.D.N.Y. 1998) (rejecting similar argument that claim to settlement proceeds was barred by *res judicata* argument where the settling "court never

-11-

considered any of the 346 Indentures at issue here nor the rights of the unitholder parties to those Indentures and obviously never decided who, as parties to the Indentures, would be entitled to distribution of the amount given to the Trustees herein").

That was not done here. Orly deliberately concealed the terms of the settlement from Dalia, and then discontinued the action pursuant to a so-ordered Stipulation (NYSCEF DOC. NO. 487) that makes no mention whatsoever of any settlement proceeds, let alone determining the correct allocation thereof. The only res judicata is the dismissal of the Orly Trust's claims. The Supreme Court never addressed the question of allocation of settlement proceeds; the closest it came was to hold "in abeyance" – **in favor of this very proceeding** – the Trustee's motion to have those proceeds deposited in that Court. (NYSCEF DOC. NO. 1279). As a result, this issue was also never put before the Appellate Division and was never ruled upon.

## Point II

### Orly is a De Facto Trustee  and
### and the Claims Herein Are Not Barred
### by the Statute of Limitations

It appears that, notwithstanding the Court's instructions otherwise, the Respondents are clinging to their procedural arguments in moving to dismiss. They apparently hope that the Amended Petition will be barred by the statute of limitations and therefore the Courts will never reach the merits of their misappropriation of $32.3 million in Settlement proceeds owing to the Orly Trust.  See, Orly Brief at 2, TR Brief at 15.

To see the fallacy of the Respondents' arguments simply requires acknowledging the black-letter principle that, as a derivative plaintiff on behalf of the Orly Trust, Orly is a de facto trustee of the Orly Trust.

-12-

Where a party acts like and assumes the duties of a trustee, that party will be deemed a de facto trustee.  In re Accounting of Sakow, 219 A.D.2d 479, 631 N.Y.S.2d 637 (1st Dep't 1995).  For instance, in In re Deyette, 16 Misc.3d 1124(A), 847 N.Y.S.2d 901 (Sup. Ct. Nassau Cnty. 2007) the court found that the wife of an executor who transacted business on behalf of the trust presented "sufficient evidence to demonstrate that … active involvement with the administration of the….[estate], rose to the level of rendering her a de facto trustee."

Bringing a derivative action on behalf of the trust to recover funds clearly demonstrates Orly's status as a "de facto trustee" and thus, a fiduciary of the trust.  In re Accounting of Sakow, 219 A.D.2d 479, 631 N.Y.S.2d 637 (1st Dep't 1995).  See also, Bachman Aff., Ex. 2 (Dalia's Brief in Opposition to Motion to Dismiss Petition).

As a de facto trustee, Orly should have sought leave to compromise the Orly Trust Derivative Litigation with this Court.  SCPA §1813; In re Groman, 36 Misc.3d 1204(A), 951 N.Y.S.2d 86, (A) (Surr. Ct. N.Y. Cnty. 2012) (Anderson, J.).

In a request for leave to compromise, the Court would have considered whether the Settlement was in the Orly Trust's best interests.  In re Groman, 36 Misc.3d 1204(A), 951 N.Y.S.2d 86, (A) (Surr. Ct. N.Y. Cnty. 2012) (Anderson, J.).  In skipping this process, Orly denied this Court the initial opportunity to review the Settlement and ensure that it was in the best interests of the Orly Trust and that all proceeds were paid to the Orly Trust.

Even though Orly tried to avoid scrutiny by this Court by failing to seek its leave to enter into the Settlement, she, as de facto trustee, will be held to account for trustee-related activities, the same as a de jure trustee.  In re King, 194 A.D.2d 726, 599 N.Y.S.2d 295 (2d Dep't 1993); In re Deyette, 16 Misc.3d 1124(A), 847 N.Y.S.2d 901 (Sup. Ct. Nassau Cnty. 2007); In re Beiny, File No. No. 2003-51139 (Surr. Ct Bronx Cty. July 17, 2003).

-13-

Thus in <u>In re Accounting of Sakow</u>, 219 A.D.2d 479, 631 N.Y.S.2d 637 (1st Dep't 1995), the court held that since the de facto executor brought an action on behalf of the estate to recover property belonging to it, he must account to the beneficiaries of the estate.

In the instant matter, Orly brought an action, as a fiduciary or a de facto trustee, on behalf of the Orly Trust to recover funds owed to the Orly Trust, and thus she should be ordered to provide an accounting to the Orly Trust of the Settlement proceeds from that case. And Orly may be subject to surcharge if she acted improperly, including by colluding with Arie, the Brosers and TR to keep money out of the Orly Trust and re-direct it to Arie or the Brosers. <u>Cf.</u> SCPA §1807; <u>In re Estate of Jewett</u>, 145 A.D.3d 1114, 42 N.Y.S.3d 443 (3d Dep't 2016).

The statute of limitations for an action against a de facto trustee, such as Orly, does not begin to run until the time that the trustee's fiduciary relationship ends. <u>In re King</u>, 194 A.D.2d 726, 599 N.Y.S.2d 295 (2d Dep't 1993) (claims against de facto fiduciary not time barred if he did not openly repudiate his fiduciary status yet); <u>Rayo v. Vitale</u>, 38 Misc.3d 1211, 966 N.Y.S.2d 349 (Sup Ct. Kings Cnty. 2012) (same).

This Court decided this very issue in <u>In re Davidson</u>, File No. 78/2956/A, 2017 NYLJ, LEXIS 3050 (Surr. Ct. N.Y. Cnty. Oct. 25, 2017) (Anderson, J.). This Court held:

> Respondents argue that petitioners seek "money damages" for breach of fiduciary duty and that therefore a three-year statute of limitations period applies (see e.g. Yatter v. William Morris Agency, 256 AD2d 260, 682 N.Y.S.2d 198 [1st Dept 1998]). Alternatively, they contend that, even if a six-year statute of limitations period for a breach of fiduciary duty based upon fraud applies (CPLR §213[8]); Kaufman v. Cohen, 307 AD2d 113, 760 N.Y.S.2d 157 [1st Dept 2003]), such limitations period for claims prior to fiscal year 2000 would have begun to run in late 1999 or early 2000. Thus, according to respondents, whether a three-year or six-year limitation applies, [*10] all of petitioners' surcharge claims for the period prior to fiscal year 2000 are time-barred as a matter of law.

The trustees' arguments, however, reflect a fundamental misunderstanding of the true nature of the relief sought and the process by which beneficiaries obtain such relief, i.e., a monetary surcharge intended to make the estate or trust whole. The usual vehicle for obtaining a surcharge for fiduciary misconduct is through the adjudication of objections in an accounting proceeding. Here, petitioners did not seek a full accounting, but instead have sought an inquiry limited to the trustees' conduct in connection with the 1986 Agreement.

Viewed in this light, the trustees' claim that the statute of limitations has expired is without merit. As in any judicial accounting, petitioners seek to hold respondents accountable for their conduct as fiduciaries. The six-year limitations period for an accounting (CPLR §213[1]; Tydings v. Greenfield, Stein & Senior LLP, 11 NY3d 195, 897 N.E.2d 1044, 868 N.Y.S.2d 563 [2008]) begins to run when the fiduciary's relationship with the trust or estate has ended (see e.g Tydings v. Greenfield Stein & Senior, 11 NY3d 195, 897 N.E.2d 1044, 868 N.Y.S.2d 563, supra; In re Estate of Barabash, 31 NY2d 76, 286 N.E.2d 268, 334 N.Y.S.2d 890 [1972]). Here, the trustees continue to serve as fiduciaries and have never accounted or otherwise repudiated their obligation to administer the Brookman Trust.

Further, where, as here, the defendant is alleged to be a fiduciary, the statute of limitations on an accounting claim does not begin to run until the fiduciary has openly repudiated his or her obligation or the relationship has otherwise been terminated *Knobel v. Shaw,* 90 A.D.3d 493, 496 [2011]; *Missan v. Schoenfeld,* 95 A.D.2d 198, 209 [1983]; see also Partnership Law § 74). Here, defendants have failed to demonstrate that Vitale openly repudiated his obligations or that the partnership was terminated more than six years prior to the commencement of the Federal action. Accordingly, defendants' motion to dismiss the accounting cause of action is denied.

"Indeed, the statute of limitations against a fiduciary for an accounting  does not begin to run until the fiduciary … relationship has been otherwise terminated" Knobel v. Shaw, 90 A.D.3d 493, 936 N.Y.S.2d 2 (1st Dep't 2011) (defendants did not submit documentary evidence definitively establishing that they had repudiated their obligations to plaintiff or that their relationship had terminated); Westchester Religious Inst. v. Kamerman, 262 A.D.2d 131, 131,

691 N.Y.S.2d 502 (1st Dep't 1999); In re Barabash, 31 N.Y.2d 76, 286 N.E.2d 268, , 334 N.Y.S.2d 890 (1972).

Here, in the instant matter, the statute of limitations does not begin to run until Orly, as de facto trustee of the Orly Trust, openly repudiates her role as acting in a fiduciary capacity and accounts for her actions. She has not done so and the Respondents cannot point to anything to the contrary.

Since it is clear that Orly is a de facto trustee of the Orly Trust and that claims related to her actions as de facto trustee are not barred by the statute of limitations, procedural questions about the citation or service of it are merely academic issues which only serve to delay a decision on the merits of the case. Accordingly, such arguments must be rejected.

To the extent that the Court does consider these or other technical arguments such as duplicativeness, Dalia's response to them are fully set forth in Dalia's Brief in Opposition to Motion to Dismiss Petition. Bachman Aff., Ex. 2. In order not to burden the Court with duplicative briefing, those arguments are respectfully incorporated by reference as if fully set forth herein.

Point III

TR is a Proper Party
To this Action
Since it Owes $15 Million
Under the Settlement
Which Should be Paid to the Orly Trust

TR has attempted to portray itself as an innocent third party being dragged against its will into this Orly Trust litigation.

But TR hypocritically ignores the fact that it entered into a Settlement which, as it admits, primarily involved claims of the Orly Trust. TR Brief, 6-7. TR received the benefit of Orly's

release of all of her claims in both her derivative and individual capacities (Orly releasing the Trumps "in all capacities.") AP ¶ 20. And TR knowingly had Orly agree as a condition to any agreement to a replacement trustee for the Orly Trust to "use [her] best efforts to cause [any replacement] trustee to agree in writing on behalf of the Orly Genger 1993 Trust that it shall be a member of the AG Group for purposes of providing the indemnity contained in Paragraph 5." AP, Ex. 7.

By executing the Settlement, TR ensured and enabled Orly, Arie and the Brosers to avoid paying the Orly Trust any of the Settlement proceeds.

Moreover, TR freely admits, in the affidavit of Mark Hirsch that accompanies its motion to dismiss, that it has not yet paid the final $15 million in payments set forth in the Settlement. It only claims that the debt has not yet "matured." The Amended Petition only seeks from TR that yet-to-be-paid amount of $15 million for the Orly Trust.

TR accordingly is a property party to this action. The Amended Petition limits its claims against TR to the fate of the yet-to-be-paid $15 million and seeks against it only the remedies of turnover, injunction, constructive trust, and an accounting.

TR first argues that Dalia cannot obtain turnover of the $15 million because TR did not receive any money. TR Brief, 17. This argument is nonsensical – TR **is** in possession of the $15 million at issue since TR has not yet paid it.

TR then argues that Dalia should not be able to obtain an injunction because it is not a separate cause of action and she has not demonstrated her entitlement to it. However, Dalia seeks an injunction both as a remedy and as a cause of action. TR admits that injunction may be an appropriate remedy here if Dalia demonstrates appropriate need. TR Brief, 18. And "[w]hile an injunction is a remedy, contrary to defendants' position, a request for an injunction may be

-17-

stated in the complaint as a separate cause of action (CPLR 3014- See also Rainbow Coop New

York, 63 A.D.3d 415 (1st Dep't 2009). Twin Holdings of Delaware LLC v. CW Capital, LLC,

Index No. 2009-32723, (Sup. Ct. Nassau Cnty. 2009).

Second, Dalia is entitled to an injunction preventing the payment of the $15 million to

parties other than the Orly Trust because otherwise the Orly Trust will be irreparably harmed

when the payment is dissipated and cannot be recovered.

To see this danger, one has to look no further than the initial payment of $17.3 million

which may be beyond the Orly Trust's reach and has been dissipated. At the March 25, 2015

hearing on Petitioner's motion, Justice Jaffe suggested it might already be too late to deposit the

initial payment into Court, as the $17.3 million apparently has been paid out to non-parties. AP,

¶ 27 (Ex. 9, p. 28: "it sounds like that ship has sailed").

To avoid the same "ship from sailing" on the remaining $15 million, it is imperative that

TR be enjoined from making the second payment of $15 million until the Orly Trust claims

relating to the Settlement can be adjudicated by this Court.

This is exactly the allegation in the Amended Petition:

> 82. Respondents the Trump Group Entities have in their
> possession, custody or control the Remaining Payment which
> has yet to be paid and which should be delivered to the Orly
> Trust.
>
> 83. If Respondents the Trump Group Entities pay the Remaining
> Payment to any of the other Respondents or to any party other
> than the Orly Trust or otherwise expend, encumber, spend,
> transfer or release the Remaining Payment, the Orly Trust will
> be irreparably harmed.

What is mystifying about TR's position in opposing the turnover and the injunction is

that it should not matter to them who the payee of the Settlement proceeds is. Whether the Orly

-18-

Trust via Dalia's Amended Petition, on the one hand, or Orly, Arie and the Brosers, on the other hand, prevail as to the entitlement to the yet-to-be-paid $15 million is irrelevant to TR since it already has its release from everyone, including the Orly Trust.

In the meantime, an injunction would merely preserve the status quo until the Court can determine who is entitled to TR's yet-to-be-paid $15 million. TR should not object to the injunction of the payment of the $15 million and let the Court do its work supervising Orly as the de facto trustee of the Orly Trust.

Perhaps TR is, per the Settlement, doing the bidding of Arie or the Brosers in its opposition to the Amended Petition – after all, Arie or the Brosers are the ones who stand to gain by having the Settlement proceeds flow to them rather than the Orly Trust; and the Brosers' revealed their true anxiety when they asked the Court to prioritize their own claims over others. This may be the suspicion that the Court, itself, alluded to when it suggested that TR and the other parties were "trying to get their stories straight."

Either way, TR's feigned complaints about being dragged into this matter and the cost of fighting it are disingenuous. TR is voluntarily interjecting itself into this motion practice and needlessly expending the Court and the parties' resources in so doing.

## Point IV

### The Amended Petition
### Should Not be Dismissed on
### Any Other Grounds Raised By
### Respondents

All of the Respondents have moved to dismiss the Amended Petition on the same grounds that they moved to dismiss the original Petition.

Those motions should be dismissed for the same reasons as set forth in Dalia's response to them are fully set forth in Dalia's Brief in Opposition to Motion to Dismiss Petition (Bachman Aff., Ex. 2) and are incorporated herein as if fully set forth.

To the extent necessary, Dalia also cross-moves for (i) an extension of time to serve process and/or permission to make substituted service (or nunc pro tunc) and to file an affidavit of service and (ii) to consolidate this proceeding with the Removal Action also pending in this Court. Id.

## CONCLUSION

For the foregoing reasons, Dalia respectfully requests that this Court deny Respondents' respective motions to dismiss the Amended Petition and grant her cross-motion.

Dated: May 23, 2018
New City, New York

Judith Bachman / DS

Judith Bachman, Esq.
The Bachman Law Firm
254 S. Main Street, Suite 306
New City, New York 10956
845-639-3210

-20-

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of Dalia Genger, trustee of the ORLY GENGER
1993 TRUST,

Petitioner,

-against-

ORLY GENGER, ARIE GENGER, GLENCOVA
INVESTMENT COMPANY, TR INVESTORS, LLC, NEW TR
EQUITY I, LLC, NEW TR EQUITY II, LLC, TRANS-
RESOURCES, INC, ARNOLD BROSER, DAVID BROSER,
JOHN DOES 1-20 AND JANE DOES 1-20,

Respondents.

File No. 2008-0017E

Hon. Nora S. Anderson

**AFFIDAVIT OF**
**SERVICE BY FEDERAL**
**EXPRESS**

| | | |
|---|---|---|
| STATE OF NEW YORK | ) | |
| | ) | SS.: |
| COUNTY OF NEW YORK | ) | |

Peter Bogdanich, being duly sworn, deposes and states:

1.  I am not a party to this action, and am over 18 years of age.

2.  On the 24th day of May, 2018, I served a copy of (1) NOTICE OF CROSS-

MOTION, (2) PETITIONER DALIA GENGER'S MEMORANDUM OF LAW IN

OPPOSITION TO MOTIONS TO DISMISS AND IN SUPPORT OF CROSS-MOTION, and

(3) AFFIRMATION OF JUDITH BACHMAN IN OPPOSITION upon the following

individuals at the following addresses:

Michael Bowen
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019

John Boyle
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036

Leon Friedman, Esq.
685 Third Avenue, 25th Floor
New York, New York 10017

Mark Freyberg, Esq.
The Freyberg Law Group
950 Third Avenue, Suite 3200
New York, New York 10022

By depositing true copies thereof, in a secure envelope with Federal Express, for overnight

delivery.

_____
Peter Bogdanich

Sworn to before me this
24th day of May, 2018.

_____
Notary Public

JEFFREY C. BURANDT
Notary Public, State of New York
No. 01BU6114832
Qualified in Kings County
Certificate Filed in New York County
Commission Expires October 12, 20___ 20

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of Dalia Genger, trustee of the ORLY GENGER
1993 TRUST,

                              Petitioner,

          -against-                                    File No. 2008-0017E

ORLY GENGER, ARIE GENGER, GLENCOVA
INVESTMENT COMPANY, TR INVESTORS, LLC, NEW TR        Hon. Nora S. Anderson
EQUITY I, LLC, NEW TR EQUITY II, LLC, TRANS-
RESOURCES, INC, ARNOLD BROSER, DAVID BROSER,        **AFFIDAVIT OF
JOHN DOES 1-20 AND JANE DOES 1-20,                   SERVICE BY PERSONAL
                                                     DELIVERY**

                              Respondents.

STATE OF NEW YORK        )
                         )  SS.:
COUNTY OF NEW YORK       )

          Peter Bogdanich, being duly sworn, deposes and states:

1.    I am not a party to this action, and am over 18 years of age.

2.    On the 24th day of May, 2018, I served a copy of (1) NOTICE OF CROSS-

MOTION, (2) PETITIONER DALIA GENGER'S MEMORANDUM OF LAW IN

OPPOSITION TO MOTIONS TO DISMISS AND IN SUPPORT OF CROSS-MOTION, and

(3) AFFIRMATION OF JUDITH BACHMAN IN OPPOSITION upon the following

individuals at the following addresses:

John Dellaportas
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178

By delivering true copies thereof, by hand, to the above mentioned individual.

Peter Bogdanich

Sworn to before me this
____ day of May, 2018.

Notary Public

JEFFREY C. BURANDT
Notary Public, State of New York
No. 01BJ6114832
Qualified in Kings County
Certificate Filed in New York County
Commission Expires October 12, 20__