**SURROGATE'S COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, to Turnover Property to the Orly Genger 1993 Trust.

FILE NO.    2008-0017/E

Hon. Nora S. Anderson

---

In the Matter of DALIA GENGER, trustee of the ORLY GENGER 1993 TRUST,

      Petitioner,

      - against -

ORLY GENGER, ARIE GENGER, GLENCLOVA INVESTMENT COMPANY, TR INVESTORS, LLC, NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC, TRANS-RESOURCES, INC., ARNOLD BROSER, DAVID BROSER, JOHN DOES 1-20, and JANE DOES 1-20,

      Respondents.

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF THE TR ENTITIES' MOTION TO DISMISS THE AMENDED PETITION FOR TURNOVER OF TRUST PROPERTY AND OTHER RELIEF AND IN OPPOSITION TO PETITIONER'S CROSS-MOTION

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

John Boyle
Four Times Square
New York, New York  10036
(212) 735-3000
(212) 735-2000 (facsimile)

*Attorneys for Glenclova Investment Co.,*
*TR Investors, LLC, New TR Equity I, LLC,*
*New TR Equity II, LLC, and*
*Trans-Resources, LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT..........................................................................................................................4

I.    DISMISSAL OF THE AMENDED PETITION IS WARRANTED
      BECAUSE JURISDICTION IS LACKING OVER THE TR ENTITIES ..............4

A.    Dalia Has Never Properly Served the TR Entities  and Never Served
      Trans-Resources, LLC ...............................................................................................5

B.    Dalia's Failure to Serve the TR Entities Within the Time Period Required
      by the SCPA Requires Dismissal of Her "Turnover" Claim ...................................6

II.   DALIA'S FAILURE TO PROPERLY SERVE THE TR ENTITIES IS
      NOT CURED BY ANY LIMITED APPEARANCE IN THIS ACTION............10

III.  DISMISSAL OF THE AMENDED PETITION AS AGAINST THE TR
      ENTITIES IS ALSO WARRANTED BECAUSE DALIA'S TURNOVER
      AND INJUNCTION CAUSES OF ACTION ARE INSUFFICIENTLY
      PLEADED AND WITHOUT MERIT...................................................................11

A.    Dalia's Turnover Claim is Without Merit ..............................................................11

B.    The Turnover Claim is Subject to Dismissal Because it is Time-Barred .............13

C.    The "Injunction" Claim is not an Appropriate Cause of Action ...........................14

IV.   DISMISSAL IS REQUIRED BECAUSE TRANS-RESOURCES, LLC
      WAS NEVER MADE A PARTY.........................................................................17

V.    RES JUDICATA BARS DALIA'S CLAIMS.......................................................18

VI.   EVEN IF NOT DISMISSED THE COURT SHOULD STAY OR
      DISMISS THIS PROCEEDING AND ALSO DISMISS DALIA'S
      CROSS-MOTION................................................................................................20

CONCLUSION.....................................................................................................................24

## TABLE OF AUTHORITIES

### CASES

*Aetna Insurance Co. v. Capasso,*
    75 N.Y.2d 860, 552 N.Y.S.2d 918 (1990) ............................................................................15

*Alliance Network, LLC v. Sidley Austin LLP,*
    43 Misc. 3d 848, 987 N.Y.S.2d 794 (Sup. Ct. N.Y. Cty. 2014) ......................................4, 6

*Brown v. Sanders,*
    142 A.D.3d 940, 37 N.Y.S.3d 444 (2d Dep't 20016)................................................5, 11, 23

*D'Amour v. Ohrenstein & Brown, LLP,*
    17 Misc. 3d 1130(A), 2007 N.Y. Slip Op. 52207(U) (Sup. Ct. N.Y. Cty. 2007) ..............15

*In re Davidson,*
    No. 78/2956/A, 2017 NYLJ LEXIS 3050 (Sur. Ct. N.Y. Cty. Oct. 25, 2017) .................14

*Estate of Jervis v. Teachers Insurance & Annuity Ass'n,*
    279 A.D.2d 367, 720 N.Y.S.2d 21 (1st Dep't 2001)............................................................23

*Faberge International Inc. v. Di Pino,*
    109 A.D.2d 235, 491 N.Y.S.2d 345 (1st Dep't 1985).........................................................15

*Fifty CPW Tenants Corp. v. Epstein,*
    16 A.D.3d 292, 792 N.Y.S.2d 58 (1st Dep't 2005)............................................................19

*Genger v. Genger,*
    144 A.D.3d 581, 41 N.Y.S.3d 414 (1st Dep't 2016)...........................................................20

*Held v. Macy's, Inc.,*
    25 Misc. 3d 1219(A), 2009 N.Y. Slip Op. 52189(U) (Sup. Ct. Westchester Cty.
    2009) ....................................................................................................................................14

*Insurance Co. of State of Pa. v. HSBC Bank USA,*
    10 N.Y.3d 32, 852 N.Y.S.2d 812 (2008) ...........................................................................18

*In re Katz,*
    81 A.D.2d 145, 439 N.Y.S.2d 941 (2d Dep't 1981), *aff'd,* 55 N.Y.2d 904, 449
    N.Y.S.2d 29 (Mem) (1982)...........................................................................................5, 11

*Komanicky v. Contractor,*
    146 A.D.3d 1042, 43 N.Y.S.3d 761 (3d Dep't 2014).........................................................23

*O'Brien v. City of Syracuse,*
    54 N.Y.2d 353, 445 N.Y.S.2d 687 (1981) .........................................................................19

*Okoh v. Bunis,*
    48 A.D.3d 357, 854 N.Y.S.2d 336 (1st Dep't 2008)................................................23

*In re Perelman,*
    123 A.D.3d 436, 999 N.Y.S.2d 2 (1st Dep't 2014)................................................12

*Rainbow Coop v. City of New York,*
    63 A.D. 3d 415, 879 N.Y.S.2d 329 (Mem) (1st Dep't 2009)................................15

*Shelkowitz v. Rainess,*
    57 A.D.3d 337, 869 N.Y.S.2d 87 (1st Dep't 2008)................................................23

*Stewart v. Volkswagen of Am., Inc.,*
    81 N.Y.2d 203, 613 N.E.2d 518 (1996)................................................................23

*Syncora Guarantee Inc. v. J.P. Morgan Securities LLC,*
    110 A.D.3d 87, 970 N.Y.S.2d 526 (1st Dep't 2013)............................................21

*In re Thomas,*
    28 Misc. 3d 300, 901 N.Y.S.2d 493 (Sur. Ct. Broome Cty. 2010), *aff'd*, 78 A.D.3d
    1304, 910 N.Y.S.2d 252 (3d Dep't 2010)......................................................6, 14

*TR Investors, LLC v. Genger,*
    C.A. No. 3994-VCS, 2010 WL 2901704 (Del. Ch. July 23, 2010)..................14, 24

*TSR Group, LLC v. Levitin,*
    Index No. 65135/2015, 2016 N.Y. Slip Op. 31322(U) (Sup. Ct. N.Y. Cty. July 13,
    2016)..................................................................................................2, 4, 6, 13

*Twin Holdings of Delaware LLC v. CW Capital, LLC,*
    No. 005193/09, 2009 WL 4099330 (Sup. Ct. Nassau Cty Nov. 9, 2009)................15

*Twin Holdings of Delaware LLC v. CW Capital, LLC,*
    26 Misc. 3d 1214(A), N.Y. Slip Op. 50097(U) (Sup. Ct. Nassau Cty. 2010)..........15

*Waterscape Resort, L.L.C. v. 70 West 45th Street Holding LLC,*
    Index No. 652124/2014, 2015 N.Y. Slip Op. 31255(U)
    (Sup. Ct. N.Y. Cty. July 17, 2015)......................................................................16

*Zodkevitch v. Feibush,*
    49 A.D.3d 424, 854 N.Y.S.2d 373 (1st Dep't 2008)............................................16

## RULES

CPLR 213.................................................................................................................6, 14

CPLR 306-b............................................................................................................22, 24

CPLR 311.................................................................................................................11

CPLR 311-a..............................................................................................................11

CPLR 320(b)......................................................................................................1, 5, 11

CPLR 1001...............................................................................................................18

CPLR 1003...............................................................................................................18

CPLR 2201...............................................................................................................20

CPLR 3211(a).........................................................................................1, 2, 17, 18, 21

CPLR 3012(a)...........................................................................................................17

CPLR 6301...............................................................................................................15

EPTL 7-3.3...............................................................................................................13

SCPA 301(a)...........................................................................................................6, 9

SCPA 301(b).............................................................................................................24

CPLR 304..................................................................................................................9

CPLR 306(4)..............................................................................................................8

SCPA 307................................................................................................................17

SCPA 312................................................................................................................17

## OTHER AUTHORITIES

1 Colleen F. Carew et al., *New York Estates: Probate Administration and Litigation*
§ 3:32 (Harris 6th ed. 2018)................................................................................9

1 Joseph A. Cox et al., *New York Civil Practice*: SCPA ¶ 304.00 (Matthew Bender 2018)..........9

14 *McKinney's Forms Estates and Surrogates Practice* § 2:61 (West 2017)..................................8

Respondents Glenclova Investment Co., TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, and Trans-Resources LLC[1] (collectively the "TR Entities") respectfully submit this reply memorandum of law in support of their Motion to Dismiss the Amended Petition for Turnover of Trust Property and Other Relief (the "Amended Petition") filed on April 13, 2018, by Dalia Genger ("Dalia"), the current trustee of the Orly Genger 1993 Trust (the "Trust"), and in opposition to Dalia's cross-motion.

## **PRELIMINARY STATEMENT**

As shown in the TR Entities' Opening Brief (the "TR Br.") and the supporting affirmations, the Amended Petition must be dismissed. Despite having a second crack (albeit too late procedurally) at attempting to serve and assert claims (albeit all of them meritless) against the TR Entities, Dalia's opposition brief again comes up short on the law, the facts, and the relevant procedure. No argument asserted in her opposition brief suffices to salvage the Amended Petition from its inherent and indisputable jurisdictional failings.[2]

*First*, Dalia does not oppose the TR Entities' arguments and evidence establishing that Dalia failed to properly serve the original Petition or the Amended Petition. *Second*, Dalia does not raise any sufficient legal challenge to the argument that, because she did not serve citations on the TR Entities within 120 days after the filing of the original Petition, dismissal of the proceeding is required and the turnover claim is time-barred. *Third*, Dalia fails to address,

---

[1]  Trans-Resources, LLC has not been properly named or served in this proceeding. The Amended Petition only names Trans-Resources, Inc. – a no longer existent corporation – as a respondent in the caption. (*See* Affidavit of Mark S. Hirsch in Support of Motion to Dismiss the Amended Petition ¶ 5, cited herein as "Hirsch Aff."). No citation was ever issued in this proceeding that identifies Trans-Resources, LLC as a respondent, and no citation has been served on, or even attempted to be served on, Trans-Resources, LLC, and, further, no supplemental citation identifying Trans-Resources, LLC has been issued or served. (Hirsch Aff. ¶¶ 5, 6, 8).

[2]  The TR Entities again expressly state that because they are objecting to personal jurisdiction under CPLR 3211(a)(8), under CPLR 320(b) neither their filing of their Opening Brief and supporting papers nor this Reply Brief and opposition to Petitioner's cross-motion amounts to a waiver of jurisdiction.

yet alone offer any opposition to, the TR Entities' argument that her failure to name and properly serve Trans-Resources, LLC – a necessary party to these claims, and the only entity that is a signatory to the promissory notes that underlie her turnover claims concerning the remaining Settlement Proceeds – requires dismissal. And make no mistake about it, Dalia's failure to oppose this and other arguments presented by the TR Entities cannot simply be overlooked. Rather, where Dalia has failed to respond to or oppose the arguments presented in the TR Entities' motion to dismiss, this Court should treat that failure as a concession or a waiver. *See, e.g., TSR Group, LLC v. Levitin*, No. 651356/2015, 2016 N.Y. Slip Op. 31322(U), at *10 (Sup. Ct. N.Y. Cty. July 13, 2016) (granting motion to dismiss where plaintiff "fail[ed] to respond to or even address defendants' arguments in its opposition papers"). Surely it is no accident that Dalia does not address these arguments but rather an unspoken concession that she has no credible response.

Even when Dalia attempts to rebut one of the TR Entities' arguments, she does so by asking the Court to partake in her own version of "Where's Waldo," by suggesting that the Court should hunt through the brief she previously submitted on her original Petition to unearth (or piece together) the arguments that should be made in her Opposition Brief to the TR Entities' Motion to dismiss the Amended Petition. (*See* Petitioner Dalia Genger's Mem. of Law in Opposition to Motions to Dismiss and in Support of Cross-Motion ("Opp'n Br.") at 16, 20). The Court should not countenance such practice.

Moreover, in asking the Court to do her own work, Dalia also improperly (and misleadingly) relies on statements purportedly attributable to the Court's attorney. This meager attempt to bolster her meritless positions is a thinly veiled attempt to ask the Court for help in asserting an untenable claim and reinforces the reflections of New York Supreme Court Justice

2

Cooper (initially cited in the TR Entities' Opening Brief (*see* TR Br. at 2-3)), in which Justice

Cooper noted that the Genger cases "demand[] a disproportionate share of already limited

judicial resources[.]" Justice Cooper offered advice to other judges facing the Genger litigation

blitz (which is particularly relevant here where Dalia attempts to appeal to the Court's equitable

heartstrings, while also requesting the Court to perform her legal work):

> . . . the time for the Gengers continuing to occupy center stage in the New York
> court system must also end. . . . It seems obvious that continuing to give the
> Gengers the exorbitant amount of court time that they demand is not putting our
> resources to their "highest and best uses." . . . It is this judge's hope that the parties
> and their children might take a step back and reflect on how destructive this path
> of constant litigation is, not only to them, but to the courts and the other litigants
> who truly need our services. If they are unable to do so, it may be incumbent on
> judges and court administrators to devise a method to curb what is becoming
> perilously close to an abuse of the judicial system.

(*See Genger v. Genger*, No. 302436/2002, Decision and Order at 2 (Sup. Ct. N.Y. Cty June 3,

2016) at 3-4, 11) (a copy is attached as Ex. B. to the Boyle Aff.). Here, Dalia has failed to offer

opposition to the TR Entities' legal arguments regarding jurisdiction and her initial service

failures on each of the TR Entities, failed to amend her pleading to name Trans-Resources, LLC

as a respondent (despite being informed of the issue by the TR Entities' counsel and also the

Court and despite having been aware of Trans-Resources, LLC's, rather than Trans-Resources,

Inc.'s, role in the underlying matters since at least 2014), and failed to properly serve or even

attempt to properly serve the Amended Petition on any of the TR Entities. Her plea to the

Court's discretion to overlook her service failures and the jurisdictional deficiencies of her

Amended Petition should be rejected and the Amended Petition dismissed.

To the extent the Court reaches a review of the merits-based arguments against

Dalia's turnover and "injunction" claims raised in the TR Entities' Motion to Dismiss, those

arguments also support dismissal of the Amended Petition. Among other things, as established

in the TR Entities' Opening Brief, the turnover claim is now time-barred. In addition, as Dalia

3

essentially conceded (*see* Opp'n Br. at 17 (noting that Dalia seeks an injunction as a remedy for her turnover claim)), there is no separate cause of action for an injunction and the failure of Dalia's turnover claim therefore warrants dismissal of any injunctive remedy on that claim. And even if an injunction is a substantive cause of action (it is not), Dalia has not adequately pleaded such a claim. Dalia's Opposition Brief offers no legal support or record citations to sufficient allegations in the Amended Petition that would establish the legal standards required to support an injunction.

Finally, in responding to the TR Entities' *res judicata* arguments, because Dalia concedes that the settlement of the Trans-Resources shares ownership claim "is the very fact that entitle[s] the Orly Trust to the turnover of the Settlement Proceeds," Dalia's voluntary settlement and dismissal with prejudice in the Delaware Action of that very claim, and in which she could have and should have brought her current claims, requires *res judicata* preclusion of her claims against the TR Entities.

## ARGUMENT

## I. DISMISSAL OF THE AMENDED PETITION IS WARRANTED BECAUSE JURISDICTION IS LACKING OVER THE TR ENTITIES

In their Opening Brief, the TR Entities explained that dismissal of the Amended Petition is required because Dalia (1) never properly served the original Petition, and (2) never properly served the Amended Petition. (*See* TR Br. at 10-16). Incredibly, Dalia's Opposition Brief does not even offer a counter-argument.

As a threshold matter, Dalia's failure to address these arguments amounts to a concession of their validity. *See TSR Group*, 2016 N.Y. Slip Op. 31322(U), at *10 (granting motion to dismiss where plaintiff "fail[ed] to respond to or even address defendants' arguments in its opposition papers"); *Alliance Network, LLC v. Sidley Austin LLP*, 43 Misc. 3d 848, 864 n.4,

4

987 N.Y.S.2d 794, 806 n.4 (Sup. Ct. N.Y. Cty. 2014) (noting party's failure to oppose arguments in responding to motion to dismiss results in waiver of opposition).

Although, in her Opposition Brief (*see* Opp'n Br. at 20), Dalia demands that the Court scour her prior opposition brief to locate any possible counter-arguments, even if the Court were willing to do so (and it should not), that effort would be futile. *First*, there is nothing in her February 20, 2018 brief that addresses service failures regarding the Amended Petition – a pleading that was not filed until **April 13, 2018**, almost two months later. And *second*, as the TR Entities noted in their original reply brief and in their Opening Brief (*see* TR Br. at 1 & n.2, 11 & n.7), Dalia's claim that the TR Entities have already "appeared" in this proceeding by appearing on the return date of the citation (which was never properly served) is contrary to the express command of the CPLR 320(b), which establishes that, where the TR Entities raised a challenge to personal jurisdiction (as they did in their initial motion to dismiss and did on the return date, and do in this Motion to Dismiss), their appearance does not confer personal jurisdiction. *See In re Katz*, 81 A.D.2d 145, 148-49, 439 N.Y.S.2d 941, 943 (2d Dep't 1981) (applying CPLR 320(b) in Surrogate's Court proceeding and holding that inclusion of jurisdictional objection meant that court did not acquire jurisdiction over respondent); *see also Brown v. Sanders*, 142 A.D.3d 940, 940, 37 N.Y.S.3d 444, 445 (2nd Dep't. 2016) (citing 320(b) and holding appearance to object to jurisdiction did not confer jurisdiction).

### A.   Dalia Has Never Properly Served the TR Entities and Never Served Trans-Resources, LLC

Neither in her prior brief nor in her current Opposition Brief does Dalia address the arguments that she failed to properly serve both the original Petition and the Amended Petition on the TR Entities, and that she never even attempted to serve either petition on Trans-Resources, LLC. As a matter of law, and for the reasons stated in the TR Entities' Opening Brief

5

(*see* TR Br. at 10-13), her failure to serve the TR Entities requires dismissal under CPLR 3211(a)(8).[3]

**B.   Dalia's Failure to Serve the TR Entities Within the Time Period Required by the SCPA Requires Dismissal of Her "Turnover" Claim**

Putting aside whether service was proper on the TR Entities (and it was not), as demonstrated in the TR Entities' Opening Brief (*see* TR Br. at 15-16), Dalia's attempted belated service of the original Petition provides further grounds for dismissing the claims in the Amended Petition as time-barred as against the TR Entities.[4]  Again Dalia offers no counter-argument in her Opposition Brief, but instead directs the Court (without any useful citation) to survey her prior brief for an argument that might fit.

The SCPA is clear and strict in its approach to how a proceeding is commenced so that the claims asserted will be timely under applicable statutes of limitation:  "For the purpose of computing the period of limitation . . . a proceeding is commenced upon the filing of a petition, provided process is issued and service made upon any respondent within one hundred twenty days after the date of the filing of the petition . . . ."  SCPA 301(a).  Thus, for a claim to be found timely the petition must have been filed within the limitations period and a citation must have been served within 120 days "after the date of the filing of the Petition."  (*See id.*).  Unquestionably, Dalia has not complied with the latter of these two requirements because she

---

[3]   In addition, Dalia's failure to address these arguments also warrants dismissal. *See, e.g., TSR Group*, 2016 N.Y. Slip Op. 31322(U), at *10 (dismissing claim because plaintiff "fail[ed] to respond to or even address defendants' arguments in its opposition papers"); *Alliance Network*, 43 Misc. 3d at 864 n.4, 987 N.Y.S.2d at 806 n.4 (noting failure to oppose arguments on motion to dismiss results in waiver).

[4]   Dalia's only substantive claim against the TR Entities is for turnover, which is subject to a three-year limitations period. *See* CPLR 213; *see also In re Thomas*, 28 Misc. 3d 300, 305, 901 N.Y.S.2d 493, 497 (Surr. Ct. Broome Cty. 2010), *aff'd*, 78 A.D.3d 1304, 910 N.Y.S.2d 252 (3d Dep't 2010).  As a consequence, because Dalia's claims accrued, at the latest, on the date of the Settlement Agreement – i.e., on June 16, 2013, well more than three years ago – they are most definitely time-barred.  Further discussion of the applicability of the three-year period as to the claims against the TR Entities is found, *infra*, at 13-14.

still has not properly served any citations on the TR Entities despite the fact that it is now two years to the day – 730 days – since she filed her original Petition.

In her prior brief, Dalia argued (incredibly) that any delay in serving the TR Entities was the fault of the Court and not her own. The Court should reject Dalia's argument based upon the SCPA and upon Dalia's prior conduct in this proceeding.

Before turning to those arguments, even assuming (*arguendo*) that the Court was responsible for a delay in issuing the citations, the fact is that the citations were issued by the Court on December 21, 2017. (*See* Hirsch Aff. ¶ 6 & attached citation). Despite the passage of 175 days from that issuance, Dalia has not "commenced" this proceeding for statute of limitations purposes by properly serving that citation on any of the TR Entities. Dalia's indisputable failure to do so – which she cannot explain away – requires dismissal of this proceeding and rejection of her turnover claim as time-barred.

As for Dalia's claim it was the Court's fault that led to her initial delay in serving the citations, that argument has no merit and, in any event, her argument concedes that she never initially and timely "commenced" the proceeding for statute of limitation purposes in accordance with SCPA 301(a) for at least two reasons. *First*, even adopting Dalia's argument, as of June 14, 2016, and on at least one other occasion (date not identified by Dalia), the original Petition was deemed deficient on its face by the Surrogate's Court. (*See* Original Affirmation of Judith Bachman in Opposition dated Feb. 20, 2018 (the "Bachman Aff.") at ¶¶ 10-12 (claiming that Surrogate's Court clerk advised Dalia's caption was incorrect), ¶¶ 14-16 (same)). As advanced by Dalia, the Surrogate's Court clerk rejected the original Petition (twice) and required additional affirmations from Dalia's counsel prior to acceptance. (*Id.*). Thus, only after Dalia modified the original Petition for the second time, in December 2017, was it "commenced" for SCPA 301(a)

7

purposes – at that time the original Petition was accepted for filing and process issued – which occurred long after the running of the three-year statute of limitation period for turnover. (*See* TR Br. at 15-16).

   *Second*, even assuming that the original Petition had been properly filed on June 14, 2016 (which it was not), process did not issue and service was not made within 120 days as required by SCPA 301. Dalia incredulously again blames the Court for this delay. In this Court, the attorney often prepares the citation for presentment to the clerk of the Court, who provides the Court's signature and seal. *See* SCPA 306(4); Colleen F. Carew et al., *New York Estates: Probate Administration and Litigation* § 3:32 (Harris 6th ed. 2018) ("The petitioner's attorney will prepare the original citation. The citation will be reviewed (usually by a clerk), and the return date by which the party or parties named will be required to respond, as requested by the attorney, will be filled in."). Throughout its Genger-related proceedings, the Court has acted promptly in issuing citations. A review of the docket identifies that on four other occasions, citations were issued either on the same day or within days of the filing of the pleading requiring the issuance of a citation. (*See* File #2008-0017 Docket and Info Sheet reviewed 2/21/2018 (hereafter "Dkt.") entry filed 02-15-2008 (citation issued same day as amended petition to Designate Trustee was filed), Dkt. entry filed 11-14-2008 (citation issued 13 days after Petition to Suspend Letters was filed), Dkt. entry filed 11-18-2008 (citation issued same day as Petition to Account-Trustee Leah Fang was filed), Dkt. entry filed 11-20-2012 (citation issued 12 days after Petition to Compel Fiduciary to Account was filed)). In light of the Court's diligence and expedition, it takes a special type of boldness for Dalia to claim that it was solely due to the

Court's delay that it took 555 days to issue a citation. The Court should reject Dalia's efforts to blame the Court for her own inaction and lack of diligence.[5]

Not surprisingly, the Bachman Affirmation itself suggests that it was Dalia's own deficiencies in pleading and presenting the original Petition that caused delay in the issuance of the citation. (*See* Bachman Aff. ¶¶ 10, 12, 14, 15). Indeed, Dalia's own evidence supports that the original Petition was rejected by the clerk. *See* 1 Joseph A. Cox et al., *New York Civil Practice: SCPA* ¶ 304.00 (Matthew Bender 2018) (noting that if information required by SCPA 304 is not provided the "petition is deficient on its face and will not be accepted for filing").[6]

Even if the original Petition did meet the minimum requirements of SCPA 304 and 306 (although, as suggested by the Bachman Affirmation, it did not), the Court should not excuse Dalia from attempting to pass her laxity in obtaining, and attempting to serve, the citations within the 120-day requirement of SCPA 301(a) to the Court. In fact, on at least two

---

[5]  *See* 14 *McKinney's Forms Estates and Surrogate Practice* § 2:61 ("Here, **SCPA § 301 is in point, allowing the proceeding to be deemed commenced for limitations purposes** upon the filing of the petition, but with the important proviso that it can be so deemed **only if** process **(meaning in this instance the citation) is issued and served within 120 days thereafter**. If there is even any remote question about the statute of limitations being involved, the petitioner should follow SCPA § 301. **The omission, by SCPA § 306(1)(c), to specify a time period for when the citation must issue after the filing of the petition, should not be assumed to constitute an immunity from limitations considerations**."). (emphasis added).

[6]  The sole "evidence" that Dalia relies on to support her claim that it was the Court's fault are the statements found in the affirmation of her attorney Judith Bachman. Ms. Bachman's Affirmation, however, should be rejected. Notably, the Affirmation is bereft of actual facts that would substantiate Dalia's arguments. Although Ms. Bachman asserts that she several times attempted to contact the Court clerk to discuss the citations, she nowhere provides the "written correspondence" and "emails" she claims to have sent to the Court's clerk nor does she detail, with dates and names, the times and persons she claims to have discussed these issues with during her "repeated and numerous calls [and] visits" with the clerk. (*See* Bachman Aff. ¶¶ 8, 9-14). The absence of this factual (and presumably readily available) information as to when and with whom Ms. Bachmann communicated regarding the citations begs the question of whether she did so within the 120-day period required under SCPA 301. Plainly, if Dalia never even acted on seeking the citations until after the initial 120-day period had expired – i.e., after March 26, 2017 – regardless of the clerk's actions or, as Ms. Bachman asserts, inactions after that date, Dalia did not timely "commence" the proceeding as required under SCPA 301(a). Notably, there are no docket entries in this proceeding in the period between June 14, 2016 – the date the original Petition was filed – and March 2017. In fact, the only docket entries for all of 2017 arise on July 6, 2017, December 13, 2017 and December 19, 2017 – all more than one year after the filing of the original Petition – a fact that belies Dalia's and her attorney's assertions.

occasions, Dalia sought extensions of court-ordered deadlines by making a filing with the Court. (*See* Dkt. entries filed 10-2-17 ("Stipulation - Adjourn Motion To 10/17/17") and filed 10-17-17 ("Stipulation To Adjourn From 10-17-17 To 12-8-17")).  Dalia is a serial filer in the Court, having filed papers and sought relief from the Court on multiple occasions from the date the Petition was purportedly filed on June 14, 2016, to the date the citation was issued on December 21, 2017.  (*See* Dkt. (identifying at least eight written filings by Dalia in the Court since June 2016)).  Clearly, Dalia knew how to request and file any extension of time to serve the Petition within the required 120-day time frame (or the additional, almost, five cycles of that same time frame) before expiration.  She failed to do so.

## II.   DALIA'S FAILURE TO PROPERLY SERVE THE TR ENTITIES IS NOT CURED BY ANY LIMITED APPEARANCE IN THIS ACTION

In the Opening Brief, the TR Entities explain that Dalia's attempted service upon them of the original Petition on January 5, 2018, and the Amended Petition via mail to their attorney on April 16, 2018, was indisputably ineffective and lacked diligence.  (*See* TR Br. at 10-13).  In support of their arguments, the TR Entities submitted the Affirmation of Mark S. Hirsch in Support of Motion to Dismiss (the "Hirsch Affirmation"), which explained, among other things, that none of the TR Entities maintain an office in New York State.  (Hirsch Aff. ¶ 3).

In response, Dalia again does not address this argument but instead generically tells the Court that the TR Entities' motion (and the motions of all the other Respondents) "should be dismissed for the same reasons as set forth in . . . Dalia's [prior] Brief in Opposition to Motion."  The only argument offered in the prior brief, however, was that service is no longer required because the TR Entities appeared in this action on the return date of the citation.[7]

---

[7]   In her prior brief, Dalia also attempted to make weight by suggesting that Mr. Hirsch once purportedly identified his business address in the signature block of an email as the address of CWM's offices.  But, Mr.

*(cont'd)*

10

Adopting Dalia's argument, however, would render CPLR 320(b) obsolete. CPLR 320(b), which provides that where, as here, a challenge to personal jurisdiction has been raised in a motion to dismiss or an answer, an appearance in the action does not confer personal jurisdiction. That is precisely what the TR Entities did. *See, e.g.*, *In re Katz*, 81 A.D.2d at 148-49, 439 N.Y.S.2d at 943 (applying CPLR 320(b) in Surrogate's Court holding that jurisdictional objection meant court did not acquire jurisdiction over respondent); *Brown*, 142 A.D.3d at 940, 37 N.Y.S.3d at 445 (holding that under CPLR 320(b) an appearance to object to jurisdiction does not confer jurisdiction). Had the TR Entities not appeared to present their motion to dismiss, Dalia undoubtedly would have claimed the TR Entities defaulted (despite Dalia's untimely and ineffective service of process upon them). The Court should not permit Dalia's game of "heads I win, tails you lose."

## III. DISMISSAL OF THE AMENDED PETITION AS AGAINST THE TR ENTITIES IS ALSO WARRANTED BECAUSE DALIA'S TURNOVER AND INJUNCTION CAUSES OF ACTION ARE INSUFFICIENTLY PLEADED AND WITHOUT MERIT

### A. Dalia's Turnover Claim is Without Merit

As explained in the TR Entities' Opening Brief (*see* TR Br. at 17-18), Dalia's "turnover" cause of action must be dismissed because Dalia has not alleged (and cannot) that the

---

*(cont'd from previous page)*

Hirsch identified that address as his business address in the Hirsch Affirmation. (*See* Hirsch Aff. ¶ 2). Mr. Hirsch went on to explain that, in addition to his role at CWM, he is Executive Vice President and General Counsel of each of the TR Entities, none of which maintain an office in the state of New York. (*Id.* ¶ 3). Moreover, even assuming the TR Entities did have offices at Mr. Hirsch's listed address (and they do not), service was not proper on (i) the four LLCs under CPLR 311-a because there was no personal service on any member, manager, or authorized person, or (ii) Glenclova under CPLR 311 because attempted service was made on an administrative assistant (who is not authorized to accept service for CWM let alone Glenclova – an entity to which she has no relation). (*See* TR Br. at 10-11). The speciousness of Dalia's argument is further revealed by the fact that in the complaint she filed on **October 4, 2011** to commence the Delaware Action, she alleged that Glenclova was a Cayman Islands company, that TR Equity I and II were Delaware limited liability companies, and that TR Investors was a New Jersey limited liability company.

11

TR Entities ever received or retained any specific property or money purportedly belonging to the Trust. *See, e.g., In re Perelman*, 123 A.D.3d 436, 436, 999 N.Y.S.2d 2, 3 (1st Dep't 2014).

Once again, Dalia fails to challenge the legal arguments proffered by the TR Entities; rather, she merely argues that the TR Entities are in "in possession of the $15 million at issue since TR has not yet paid it." (Opp'n Br. at 17). But the question is not whether the TR Entities have $15 million, but whether at this very moment that $15 million or the portion thereof that may at some future date become due and payable is (or ever was) property of the Trust. The answer to the question is indisputably no, as Dalia has herself concedes.[8]

At best, at this point in time Trans-Resources, LLC, an entity that Dalia has never served and is not a proper party to this proceeding, may become a creditor to the AG Group under certain promissory notes (the "Notes"). However, the indisputable documentary evidence establishes (and Dalia does not disagree) that the obligation to pay under those Notes remains conditional and has not yet matured, and the amount Trans-Resources, LLC may owe is subject to certain offsets and has not yet been determined. (*See* Hirsch Aff. ¶¶ 9-10). Until those Notes become due and payable – and it is conceded that they are not currently due – the funds that will be used to pay on the Notes belong to Trans-Resources, LLC. Dalia makes no claim that those funds were received from Orly or the Trust or that the funds ever belonged to Orly or the Trust. As such, Dalia most certainly has no right of turnover as against the fungible cash assets of Trans-Resources, LLC or any of the other TR Entities.

---

[8]   In fact, as noted in the Opening Brief (*see* TR Br. at 17), in her allegations for the "turnover" claim in the original Petition Dalia admitted that none of the TR Entities received or have in their possession any of the "Settlement Proceeds" that she was (and is) claiming. (*See* Boyle Aff., Ex. M, at ¶¶ 72, 73). As further noted in the Opening Brief (*see* TR Br. at 17), Dalia's prior allegations are informal judicial admissions that constitute "documentary evidence" within the meaning of CPLR 3211(a)(1), and, as such, they contradict any claim that the TR Entities have received or have in their possession any of the Settlement Proceeds, which include any of the so-called "Remaining Payments."

Moreover, as explained in the TR Entities Opening Brief, insofar as the allegations of the Amended Petition regarding the so-called "Remaining Payments" are concerned, the documentary evidence establishes that none of the TR Entities is in possession of **any property of the Trust** in relation to any remaining obligations under the Settlement Agreement. (*See* TR Br. at 17-18). Dalia's failure to address or respond to the TR Entities' legal arguments and indisputable documentary evidence in support on this point (or even address the existence of the Notes), further supports dismissal. *See, e.g., TSR Group*, 2016 N.Y. Slip Op. 31322(U), at *10 (granting dismissal where plaintiff failed to address or respond to defendants' arguments).

B.      **The Turnover Claim is Subject to Dismissal Because it is Time-Barred**

As clarified in the TR Entities Opening Brief (*see* TR Br. at 15-16), Dalia's failure to properly serve the TR Entities with the original Petition and the later Amended Petition renders her turnover claim time-barred. Dalia's only response to this argument is her misplaced assertion that a six-year limitations period applies rather than a three-year period. Dalia's inapt argument is based on her view that because Orly is a "*de facto* trustee" of the Trust, all statutes of limitation in this proceeding as against Orly are six years.[9]

---

[9]   To the extent that Dalia is alleging that Orly was a "*de facto* trustee" of the Trust, and therefore owed fiduciary duties to the Trust in connection with the Settlement Proceeds, such status also carries with it all the duties and obligations of a trustee under the Trust. In this regard, the Trust Agreement expressly allows the trustee (apparently whether *de facto* or *de jure*) to settle or compromise any claims, which Orly most certainly has done. (*See* Boyle Aff., Ex. I at Art. 11.A (7)). Most important, however, the Trust expressly limits the liability for any person who makes a payment to any of the trustees. (Boyle Aff., Ex. I at Art. 11.B ("No person or party dealing with the Trustees shall be bound to see the application of any money . . . paid by him or her to the Trustees.")). Similarly, the EPTL in a section entitled "Person paying money to the trustee protected," provides that no persons, such as the TR Entities, who in good faith transfer money to a trustee, are "responsible for the proper application of such money." EPTL § 7-3.3. Under these principles, the TR Entities are protected from any claims regarding how the Settlement Proceeds are to be or should have been applied by Orly or any other trustee to the Trust, which necessarily invalidates the turnover and injunction claims asserted by Dalia. If Dalia has an actionable grievance concerning the Settlement Proceeds or any of the so-called "Remaining Payments," her beef is with Orly and not with the TR Entities. Accordingly, this claim asserted against the TR Entities is yet another example of the TR Entities being dragged into the Genger family never ending "internecine feud for
*(cont'd)*

Regardless of the length of the statute of limitations, the fact of the matter is that this argument has no merit insofar as it concerns claims brought by Dalia – the actual *de jure* Trustee of the Trust – against the TR Entities, who indisputably are **not** (nor are they alleged to be) *de facto* trustees, beneficiaries, or fiduciaries of the Trust. And Dalia cites no case authority that so holds. In fact, the holding of the *Davidson* case that Dalia cites supports only an argument that an accounting and surcharge claim by Dalia against Orly as an alleged *de facto* trustee may be subject to a six-year limitation period. *See In re Davidson*, No. 78/2956/A, 2017 NYLJ LEXIS 3050, at *10 (Surr. Ct. N.Y. Cty. Oct. 25, 2017) (applying six-year period to claim brought by beneficiaries of trust against the trustees as fiduciaries to the trust). Neither the facts of *Davidson* nor its holding have any application to a claim brought by Dalia as the *de jure* Trustee against the TR Entities, who are not and never have been fiduciaries to the Trust.[10] Therefore it remains that Dalia's turnover claim against the TR Entities is subject to a three-year limitations period, *see* CPLR 213; *In re Thomas*, 28 Misc. 3d 300, 305, 901 N.Y.S.2d 493, 497 (Surr. Ct. Broome Cty. 2010), *aff'd*, 78 A.D.3d 1304, 910 N.Y.S.2d 252 (3d Dep't 2010) – a period that accrued, at the latest, on June 16, 2013, which was more than three years before any service was even attempted on any of the TR Entities.

## C.     The "Injunction" Claim is not an Appropriate Cause of Action

As addressed in the Opening Brief (*see* TR Br. at 18-20), an injunction is a remedy, not a cause of action. Moreover, where, as here, the underlying (and sole) claim against the TR Entities should be dismissed, so too must any request for injunctive relief. *See Held v.*

---

*(cont'd from previous page)*

which other courts have rebuked the Genger litigants time and again. *See, e.g., TR Investors, LLC v. Genger*, C.A. No. 3994-VCS, 2010 WL 2901704, at *18 (Del. Ch. July 23, 2010).

[10]   Notably, the Amended Petition asserts an accounting claim against Orly only, which makes sense as only Orly, among all the Respondents, has been alleged to be a fiduciary to the Trust. (*See* Am. Petition ¶¶ 85-87).

*Macy's, Inc.*, 25 Misc. 3d 1219(A), 2009 N.Y. Slip Op. 52189(U), at *16 (Sup. Ct. Westchester Cty. 2009).[11]

      Even putting aside the question of whether an injunction is a remedy or a cause of action, as demonstrated in the Opening Brief (*see* TR Br. at 19-20), Dalia has not adequately alleged the elements necessary for an injunction, which require sufficiently pled allegations as to a probability of success on the merits of her claim, a danger of irreparable injury in the absence of an injunction, and a balance of the equities in her favor. *See Aetna Ins. Co. v. Capasso*, 75 N.Y.2d 860, 862, 552 N.Y.S.2d 918, 919 (1990); *see also D'Amour v. Ohrenstein & Brown, LLP*, 17 Misc. 3d 1130(A), 2007 N.Y. Slip Op. 52207(U), at *14-15 (Sup. Ct. N.Y. Cty. 2007) (granting motion to dismiss claim for preliminary and permanent injunction where "plaintiffs have failed to allege the sort of irreparable injury which is prerequisite to the granting of an injunction"). As previously noted in the Opening Brief, the Amended Petition contains no factual allegations to support either a preliminary or permanent injunction. *See* CPLR 6301; *see also e.g., Faberge Int'l Inc. v. Di Pino*, 109 A.D.2d 235, 240, 491 N.Y.S.2d 345, 349 (1st Dep't 1985) (holding absence of such allegations required dismissal of request for injunction).[12]

---

[11] Dalia quotes from the real property-related decision in *Twin Holdings of Delaware LLC v. CW Capital, LLC*, No. 005193/09, 2009 WL 4099330, at *5 (Sup. Ct. Nassau Cty Nov. 9, 2009), in an attempt to establish that an injunction is a proper cause of action. But that was not the issue the court was addressing in *Twin Holdings*. Rather, the court was addressing the defendants' argument that a permanent injunction was not an "appropriate remed[y]" in the case. *See id.* at *3. In fact, the court actually granted the defendants' motion to dismiss the permanent injunction remedy. *Id.* at *5. Further, in a subsequent decision, the *Twin Holdings* court also noted that it was denying plaintiffs' **motion** for a preliminary injunction, which was brought by way of a motion and not a cause of action (such that clearly the court was not addressing the issue for which Dalia cites its decision), because plaintiffs failed to establish a likelihood of success and could not show irreparable harm based on the fact that they had an "adequate remedy in the form of a money judgment." *See Twin Holdings of Del. LLC v. CW Capital, LLC*, 26 Misc. 3d 1214, 2010 N.Y. Slip Op. 50097 (U), at *9 (Sup. Ct. Nassau Cty. 2010). In a similar vein, the case cited in *Twin Holdings*, *The Rainbow Coop v. City of New York*, 63 A.D. 3d 415. 879 N.Y.S.2d 329 (1st Dep't 2009), which also involved real property, did not address the issue of whether an injunction was a cause of action but merely affirmed the dismissal of a claim seeking an injunction.

[12] Moreover, the fact that Dalia has not filed any supporting affidavits or filed any motion to support her request for an injunction so as to establish the legal and factual basis for such a remedy – i.e., success on the merits, balance of the equities, irreparable harm – provides further grounds to dismiss her "injunction" claim.

In response, Dalia merely repeats the *ipse dixit* found in the Amended Petition that the Trust "will be irreparably harmed" if the Settlement Proceeds are fully paid out. While Dalia speculates that this fungible cash "may" have been dissipated by Orly and others who purportedly **received** some of the Settlement Proceeds, the standard Dalia must (but cannot) meet is whether an award of money damages would be adequate to address her claim.

` This proceeding is unlike a case that involves specifically identifiable property that will be lost or damaged if an injunction does not issue. Rather, as Dalia's Amended Petition makes clear, this case is all about who gets the money – either the Trust or the AG Group – and, as such, cannot satisfy the irreparable harm requirement and, importantly, Dalia has not (and cannot) establish that a monetary award to her, that is the Trust, would be inadequate. *See, e.g., Zodkevitch v. Feibush*, 49 A.D.3d 424, 425, 854 N.Y.S.2d 373, 374 (1st Dep't 2008) (denying plaintiffs' request for preliminary injunction that sought to have certain allegedly misappropriated funds placed into escrow since plaintiffs failed to establish irreparable injury and demonstrate award of money damages was inadequate).

And, as also noted in the Opening Brief, Dalia's failure to seek an injunction in her original Petition filed in 2016, coupled with her nearly five-year delay in seeking injunctive relief since she became aware of the Settlement Agreement, further negates any entitlement to an injunction as it belies any sense of urgency. *See Waterscape Resort, L.L.C. v. 70 W. 45th St. Holding LLC*, No. 652124/2014, 2015 N.Y. Slip. Op. 31255 (U), at \*2 (Sup. Ct. N.Y. Cty. July 17, 2015) (noting that delay in seeking injunction negates irreparable harm since failure to

promptly act undercuts urgency normally attendant with requests for preliminary injunction) (citations omitted).[13]

## IV. DISMISSAL IS REQUIRED BECAUSE TRANS-RESOURCES, LLC WAS NEVER MADE A PARTY

For the reasons stated in the Opening Brief (*see* TR Br. at 14-15), dismissal of the Amended Petition is also required because Dalia has not properly joined or served Trans-Resources, LLC – a necessary party and a party who was neither named in nor served in connection with the original Petition or the Amended Petition.[14] As noted therein, among other things, Dalia failed to follow the procedures of this Court in naming and serving an additional party, which require the issuance of a supplemental citation naming that new party (*see* SCPA 312), and service of that supplemental citation (*see* SCPA 307 & CPLR 3012(a)).[15]

As the indisputable documentary evidence presented by the TR Entities establishes, Trans-Resources, LLC is the only TR Entity that is a signatory to and the maker of the Notes at issue here. (*See* Hirsch Aff. ¶ 9; Boyle Aff., Ex. E [Settlement Agreement] at Exhibit A). Dalia's claims against the other TR Entities – which rely solely upon a falsely

---

[13] In her Opposition Brief, Dalia raises a pejorative argument against the TR Entities in which she asserts that the TR Entities should simply agree to Dalia's request for turnover and/or injunction and that they are "voluntarily injecting" themselves into this motion practice only because they are "doing the bidding for Arie or the Brosers." While such an obvious falsehood should require no response, the TR Entities are compelled to briefly reply. As the Court has been informed, the TR Entities have repeatedly approached Dalia in an effort to fully extract themselves from this proceeding into which they were improperly inserted to begin with. It is Dalia, however, who refuses to let the TR Entities out of this dispute making them collateral damage by either including them as parties in her Amended Petition or by demanding that they voluntarily agree to the very injunction she seeks in return for not naming them as parties. If Dalia truly wants a less expensive resolution with Orly, that avenue, which is solely in Dalia's control, remains available and recourse to it readily apparent – she need only voluntarily dismiss all claims against the TR Entities.

[14] Dalia's failure to name Trans-Resources, LLC in the caption of either petition runs afoul of CPLR 2101(c), which requires a complaint to "include the names of all parties." Notably, the Court itself informed Dalia's counsel of the failure to properly name Trans-Resources, LLC during the February 27, 2018 Court hearing.

[15] At minimum, these failings require dismissal of all claims against Trans-Resources, LLC under CPLR 3211(a)(8).

alleged obligation to make the so-called "Remaining Payments" under those Notes – must also be dismissed because it is incontrovertible that none of them have any direct obligations under the Notes. This same indisputable documentary evidence demonstrates that Trans-Resources, LLC is a necessary party to this proceeding under CPLR 1001(a) and that Dalia's failure to properly join Trans-Resources, LLC warrants dismissal of the Amended Petition under CPLR 1003 and CPLR 3211(a)(10).

Notably, Dalia has not addressed or offered any objection whatsoever to any of these arguments.

## V.    RES JUDICATA BARS DALIA'S CLAIMS

The purpose of the *res judicata* bar is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Ins. Co. of State of Pa. v. HSBC Bank USA*, 10 N.Y.3d 32, 38, 852 N.Y.S.2d 812, 815 (2008) (citation omitted). Because, as demonstrated in the TR Entities' Opening Brief (TR Br. at 20-23), the claims Dalia seeks to assert in the Amended Petition were either dismissed by the Supreme Court or dismissed pursuant to stipulation in prior proceedings, or, even if not asserted, could have and should have been asserted in those prior proceedings, *res judicata* warrants dismissal of the claims against the TR Entities.

In addressing the TR Entities' *res judicata* arguments, Dalia responds directly to neither the legal authorities cited in support of dismissal nor the voluminous record evidence presented by the TR Entities that proves that Dalia's current claims are subject to a *res judicata* bar. What Dalia does instead is conveniently ignore her role in the Delaware Action when, as Trustee of the Trust, on August 30, 2013 – after she was made aware of the Settlement Agreement – she stipulated to a settlement with prejudice in the Delaware Action (the "Delaware Dismissal"), which, as asserted in the TR Entities' Opening Brief (*see* TR Br. at 7-8, 22-23), bars

18

the claims she brings in the Amended Petition.[16]   As the authorities cited by the TR Entities

establish (and which Dalia does not contest), Dalia's stipulated dismissal with prejudice in the

Delaware Action bars re-litigation of not only the claims directly asserted in that action but of all

other claims arising out of the same transaction that could have been and should have been

asserted in that proceeding, even if they are based on different theories or seeking different

remedies. *See, e.g., O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357-58, 445 N.Y.S.2d 687, 689

(1981); *Fifty CPW Tenants Corp. v. Epstein*, 16 A.D.3d 292, 293, 792 N.Y.S.2d 58, 59 (1st Dep't

2005).

As the TR Entities pointed out in their Opening Brief (*see* TR Br. at 22), the

fundamental gravamen of the Amended Petition concerns the issue of ownership of the Trans-

Resources shares and any concomitant right to monetize that ownership interest, whatever it may

have been.  In her prior brief, Dalia acknowledges the relevancy of the determination of

beneficial ownership on her claims when she states:  "It is the very fact that the settlement

'finally and fully resolved' the issues of ownership of the shares with Orly . . . that means that this

Turnover Proceeding seeking the Settlement Proceeds must stand."  (Prior Br. at 17 [copy

attached as Ex. 2 to the May 23, 2018 Affirmation of Judith Bachman]).

It is that acknowledgment that cements dismissal here.  Dalia equates the right to

the Settlement Proceeds to the settlement of the share ownership issue.  If, as Dalia has already

conceded, the settlement of the ownership of the shares issue, "is that very fact that entitle[s] the

---

[16]   In her prior brief, Dalia claimed that it was Orly who "mooted" the Delaware Action because she had already
acknowledged that the TR Entities were the "record and beneficial" owners of the Trans-Resources shares
underlying all these claims. (*See* Prior Br. at 5-6, 20).  But Orly was not even a party to the Delaware Action.
Dalia's recitation would have this Court ignore the fact that it was Dalia, as Trustee, and, subject to her fiduciary
responsibilities to the Trust, who agreed to the Delaware Dismissal.  What is clear is that Dalia, in compliance
with her fiduciary duty to the Trust, would not have agreed to the Delaware Dismissal unless she too agreed that
her claims against the TR Entities, asserting that the Trust was entitled to and/or the beneficial owner of the
Trans-Resources shares, were without merit.

19

Orly Trust to the turnover of the Settlement Proceeds" (*see* Prior Br. at 17), the Delaware

Dismissal, in which Dalia, as trustee, unequivocally settled that ownership issue with the TR

Entities, stipulated that the TR Entities are the owners "beneficially, of record and otherwise" of

all the Trans-Resources shares, and agreed to dismiss with prejudice the Trust's claims that it was

an owner of the shares (*see* Boyle Aff., Ex. F at ¶¶ 2, 4), her actions as trustee stipulating to the

Delaware Dismissal bars the claims here. (*See* TR Br. at 22-23).[17]

      Dalia also does not dispute that when she sought substitution into the New York

Action she did so to assert the very claim she asserts in the Amended Petition: that the

Settlement Proceeds belong to the Trust. (*See* TR Br. at 23; Boyle Aff., Ex. I, at 1). When the

First Department rejected Dalia's challenge to the final dismissal of that action, *Genger v.

Genger*, 144 A.D.3d 581, 581, 41 N.Y.S.3d 414, 415 (1st Dep't 2016), it expressly rejected

Dalia's attempts to bring those claims, yet another basis for *res judicata* preclusion here.

## VI.   EVEN IF NOT DISMISSED THE COURT SHOULD STAY OR DISMISS THIS PROCEEDING AND ALSO DISMISS DALIA'S CROSS-MOTION

      *First*, should this proceeding not be dismissed, it should be stayed pending

resolution of the threshold issue of whether Dalia is a proper trustee of the Trust. *See* CPLR

2201; *see also In re Orly Genger*, No. 2008-0017/B, Decision at 12 (Boyle Aff., Ex. C) (noting

there are "significant issues" as to whether Dalia is proper trustee). And, *second*, Dalia's already

pending cross-petition, in which she asserts identical claims of breach of fiduciary duty and

turnover against Orly concerning the Settlement Proceeds provides yet another reason for the

---

[17]   Further, in addition to making an argument that it is "mystifying" to her as to why the TR Entities are opposing the turnover and injunction claims, Dalia asserts that the TR Entities should not care one way or another because, as Dalia explains, the TR Entities already have a "release from everyone, including the Orly Trust." (Opp'n Br. at 18-19). Dalia's unprompted acknowledgment and judicial admission concedes the very *res judicata* point advanced by the TR Entities: That the Trust has already settled with the TR Entities regarding all claims arising from the transfers and ownership of the TRI shares, which include all the claims asserted in the Amended Petition.

Court to exercise its discretion to dismiss or at a minimum stay any proceedings on this Amended Petition.

And, finally, the Court should reject Dalia's cross-motion to consolidate this proceeding with any other Genger proceedings. As set forth in the TR Entities' Opening Brief and above (*see* TR Br. at 2-4; *supra* at 3), the time for any court to use its discretion to allow the Genger family to wage their personal war in the New York courts must come to an end. Although she offers no argument to support her consolidation request in her current motion, Dalia previously claimed that the goals of judicial economy, unnecessary duplication, the avoidance of unnecessary cost, and the prevention of incongruous decisions will be served by consolidation. Dalia's argument is farcical: Dalia and the other members of the Genger family have spent a generation (and a fortune) in courtroom combat, overburdening the state and federal court here and in Delaware, presenting bewildering arguments, and along the way targeting innocent and ultimately vindicated third parties, such as the TR Entities, in their litigation blitz. The personal animus at the heart of these cases and the hostility under which they are litigated belies any claim of economy or efficiency.

Instead of consolidation, the appropriate discretionary result here is for the Court to dismiss this Amended Petition under CPLR 3211(a)(4) in favor of the pending cross-petition proceeding. Insofar as "'both suits arise out of the same subject matter or series of alleged wrongs,'" a fact on which Dalia effectively agrees (*see* Prior Br. at 16), dismissal of this proceeding is appropriate. *See Syncora Guarantee Inc. v. J.P. Morgan Sec. LLC*, 110 A.D.3d 87, 96, 970 N.Y.S.2d 526, 533 (1st Dep't 2013) (citation omitted).

The Court should also reject Dalia's cross-motion requesting an extension of time to serve the citations or make substituted service, or *nunc pro tunc* service. (*See* Opp'n Br. at

21

20). Dalia offers no factual or legal arguments to support her requests and her motion should be denied on that basis alone.

Even assuming Dalia did present a supporting argument (she has not), her request should still be denied. CPLR 306-b only allows an extension of time for service upon a showing of "good cause" or an "interest of justice." Dalia has not (and cannot) show either. As noted above, it is undisputed that Dalia delayed over 570 days after filing the original Petition to attempt to serve process on the TR Entities. It is also undisputed that nowhere in the 120-day service period did Dalia seek relief from this Court to extend the time for service (or seek to compel issuance of any citation). Indeed, she belatedly sought an extension only after the TR Entities moved to dismiss. Thus, the incontrovertible record establishes that Dalia did nothing in the statutory 120-day period to even attempt to address the service requirements of SCPA 301(a), despite the fact that Dalia has been an active participant before this Court. In fact, Dalia made at least eight filings in this Court in the period between June 2016 and the date she attempted to serve the citations (*see* Dkt. entries filed 7-6-2017, 7-31-2017, 8-23-2017, 9-27-2017, 10-2-2017, 10-17-2017, and 12-13-2017), and sought at least two extensions of Court-ordered deadlines in her own cross-petition proceeding. (*See* Dkt. entries filed 10-2-17 ("Stipulation - Adjourn Motion To 10/17/17") and filed 10-17-17 ("Stipulation To Adjourn From 10-17-17 To 12-8-17")).

Allowing Dalia to seek a retroactive extension in light of her understanding of how to obtain timely extensions from and how to file papers in this Court would allow professional litigants – such as Dalia – to trample on the Court's deadlines and rules with impunity, leaving them the ability to seek a redo by simply claiming "good cause" without a

22

proper showing.[18] In fact, Dalia's dilatory conduct is exactly the type of belated behavior found insufficient to satisfy the good cause or interest of justice standard. *See, e.g., Estate of Jervis v. Teachers Ins. & Annuity Ass'n*, 279 A.D.2d 367, 368, 720 N.Y.S.2d 21, 22 (1st Dep't 2001) (holding that plaintiff's failure to serve process by deadline and her "unacceptably protracted delay measured from the expiration of the 120-day period" to even attempt service, did not establish either good cause or interest of justice to extend the time for service).[19] Tellingly, Dalia offers no evidence of having appeared at the Surrogate's Court before the 120-day statutory period had run out to seek an extension of time to serve the citation, as any diligent litigant would have done.

‘ Notwithstanding Dalia's lack of diligence, it is clear that the interest of justice will not be maintained by granting an extension. As noted in the TR Entities' Opening Brief, the TR Entities have made every effort to extract themselves from the "bitter and seemingly endless battle" that is the "Genger family's litigation saga." Delaware, New York, and Federal courts have all agreed that "the Genger family's internecine feud . . . is not the [TR Entities'] problem."

---

[18] It is Dalia's burden to establish that she has properly served the TR Entities or the merits to any request for an extension of service. *See Stewart v. Volkswagen of Am., Inc.*, 81 N.Y.2d 203, 207, 613 N.E.2d 518, 521 (1993) (reversing and granting motion to dismiss for lack of service noting that "once jurisdiction and service of process are questioned, plaintiffs have the burden of proving satisfaction of statutory and due process prerequisites"). As noted herein, Dalia has not met that burden. In fact, she has not presented any evidence (as she is required to do) to establish why service of the original Petition or the Amended Petition on the TR Entities was effective service or how she satisfies the good cause or interest of justice standards.

[19] *See also Shelkowitz v. Rainess*, 57 A.D.3d 337, 337, 869 N.Y.S.2d 87, 88 (1st Dep't. 2008) (affirming dismissal and denial of "interest of justice" extension where plaintiff did not seek relief until after motion to dismiss was filed and some 20 months after action was commenced); *Okoh v. Bunis*, 48 A.D.3d 357, 357, 854 N.Y.S.2d 336, 336-37 (1st Dep't 2008) (reversing and granting dismissal where plaintiff waited 14 months to seek extension of service and did so only in response to motion to dismiss); *Komanicky v. Contractor*, 146 A.D.3d 1042, 1043-44, 43 N.Y.S.3d 761, 762 (3rd Dep't. 2017) (affirming dismissal and denial of an extension of service because plaintiff lacked diligence in effecting service, requested extension 15 months after the 120-day period had expired and only after motion to dismiss was filed, and plaintiff failed to establish meritorious cause of action); *Brown v. Sanders*, 142 A.D.3d 940, 941, 37 N.Y.S.3d 444, 445 (2nd Dep't. 2016) (affirming dismissal because plaintiff failed to demonstrate good cause or interest of justice where she was not diligent in attempting proper service and failed to establish a meritorious cause of action).

(*See* TR Br. at 3 (citing *TR Investors*, 2010 WL 2901704, at *18)).  This is the Court's opportunity to be added to the list of courts that have agreed with that proposition since 2010. The Court should deny Dalia's motion to extend time to serve the citations and any other manner of discretionary relief she may request.

And, finally, to the extent Dalia may attempt to claim that, despite the fact that she never attempted to serve any of the TR Entities within the 120-day period required under SCPA 301(a), she is nevertheless entitled under SCPA 301(b) to commence a new proceeding, that argument must also be rejected.  Dalia has no recourse to 301(b) because by its terms it only applies to dismissals "for failure to effect proper service."  Imbedded in the statute is the prerequisite that this proceeding must first have been "commenced" within the applicable statute of limitation, which as discussed above (*see supra* at 6-10), it was not.  The protection of 301(b) is only available where a petitioner timely "commenced" the proceeding and then timely – within 120-days as required under SCPA 301(a) – attempted to serve process.[20]  Given Dalia's failure to meet these requirements, SCPA 301(b) offers no relief for Dalia.

## CONCLUSION

For the foregoing reasons and the reasons presented in the TR Entities' Opening Brief, the TR Entities respectfully request that this Court dismiss the Amended Petition and all claims therein as against the TR Entities, and grant the TR Entities such other relief as may be just and proper.

Dated:  New York, New York         Respectfully submitted,
       June 14, 2018

                                          SKADDEN, ARPS, SLATE,

---

[20]   This construction mirrors CPLR 306-b, which mandates dismissal but permits plaintiffs to seek an extension of service provided they establish "good cause" of the "interest of justice."  The same good cause and interest of justice test, which Dalia cannot meet, should also apply to any claim for relief pursuant to SCPA 301(b).

24

MEAGHER & FLOM LLP

John Boyle
Four Times Square
New York, New York 10036
(212) 735-3000
john.boyle@skadden.com

*Attorneys for Glenclova Investment Co.,*
*TR Investors, LLC, New TR Equity I, LLC,*
*New TR Equity II, LLC, and Trans-Resources,*
*LLC*

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK   )
: ss.:
COUNTY OF NEW YORK  )

      Julie M. Thaxton, being duly sworn, deposes and says:

      1. I am not a party to the action, am over 18 years of age and am employed by

Skadden, Arps, Slate, Meagher &  Flom LLP, Four Times Square, New York, NY 10036.

      2. On June 14, 2018 I served a true copy of the

- ***Reply Memorandum of Law in Support of the TR Entities' Motion to Dismiss the Amended Petition for Turnover of Trust Property and Other Relief and in Opposition to Petitioner's Cross-Motion***

by Federal Express, overnight delivery upon:

> Judith Lisa Bachman, Esq.
> 254 S. Main Street, Suite 306
> New City, New York 10956
>
> Kasowitz Benson Torres LLP
> Michael Paul Bowen
> 1633 Broadway
> New York, NY 10019
>
> Kelley Drye & Warren LLP
> John Dellaportas
> 101 Park Avenue
> New York, NY 10178
>
> Mitchell D. Goldberg, Esq.
> The Freyberg Law Group
> 950 Third Avenue
> 32nd Floor
> New York, NY 10022

Leon Friedman
685 Third Avenue, 25th Floor
New York, NY 10017


_____
Julie M. Thaxton

Sworn to before me this
14th day of June 2018.

_____
Richard Gomez
Notary Public, State of New York
No. 01GO6201183
Qualified in Queens County
Certificate Filed in New York County
Commission Expires March 9, 2021